UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 10-CV-2111 (JFB) (ARL)
_____

LISA RINDFLEISCH, TIFFANY MELENDEZ, MICHELLE GENTILE, LAURIE BAKER, AND CHRISTINA NELMES, on behalf of themselves and others similarly situated,

Plaintiffs,

VERSUS

GENTIVA HEALTH SYSTEMS, INC.,

Defendant.

_____

MEMORANDUM AND ORDER
October 8, 2010
_____

JOSEPH F. BIANCO, District Judge:

On May 10, 2010, plaintiffs Lisa Rindfleisch ("Rindfleisch"), Tiffany Melendez ("Melendez"), Michelle Gentile ("Gentile"), Laurie Baker ("Baker"), and Christina Nelmes ("Nelmes") (collectively "plaintiffs") brought the instant action on behalf of themselves, and on behalf of individuals similarly situated, against defendant Gentiva Health Services, Inc. ("Gentiva" or "defendant") for alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), the New York Minimum Wage Act, N.Y. Labor Law §§ 650 to 665, and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §§ 95-25.1 to 95-25.25. Specifically, plaintiffs allege that, in their capacity as visiting health care providers employed by Gentiva, they were improperly compensated under Gentiva's pay-per-visit ("PPV") compensation scheme and were not paid overtime for hours worked in excess of forty hours per week.

Defendants have moved to transfer the venue of this action to the United States District Court for the Northern District of Georgia, Atlanta Division ("Northern District of Georgia"), pursuant to 28 U.S.C. § 1404(a), arguing that the convenience of relevant witnesses and the interests of justice warrant such a transfer. For the reasons stated below, the Court transfers the instant case to the Northern District of Georgia under the authority of 28 U.S.C. § 1404(a).

I. BACKGROUND

The following facts are undisputed for purposes of the motion unless otherwise noted.

Plaintiffs Rindfleisch, Melendez, Gentile, Baker, and Nelmes were formerly employed by Gentiva as registered nurse case managers who provided visiting home health care services. (Compl. ¶¶ 9, 24, 34, 44, 54, 65.) Rindfleisch, Melendez, and Gentile were employed in Gentiva's office in Auburn, New York (*id.* ¶ 16), where they also reside. (August 31, 2010 Declaration of Lisa Rindfleish ("Rindfleisch Decl.") ¶ 2, August 24, 2010 Declaration of Tiffany Melendez ("Melendez Decl.") ¶ 2, August 29, 2010 Declaration of Michele Gentile ("Gentile Decl.") ¶ 2.) Plaintiffs Baker and Nelmes were employed in Gentiva's Kinston, North Carolina office, and were residents of North Carolina during all times relevant to this litigation. (Compl. ¶¶ 16-17.) The Court takes judicial notice of the fact that Auburn, New York is located in the Northern District of New York, and Kinston, North Carolina is located in the Eastern District of North Carolina.

Defendant Gentiva states that it currently maintains its headquarters in Atlanta, Georgia (Def.'s Mem. of Law at 3), where its management and corporate operations staff in a number of relevant departments— Human Resources, Compensation and Benefits, Employee Training and Development, Finance, Legal, Compliance, Tax, Procurement, Sales and Marketing, Operations, and Clinical Care—are primarily based. (Aug. 9, 2010 Declaration of John Karr ("Karr Decl.") ¶ 11.) Gentiva also operates over 300 branch locations (*id.* ¶ 13), as well as two administrative centers, one in Overland Park, Kansas and the other in or around Tampa, Florida (*id.* ¶ 10). Of Gentiva's branch locations, only four are located in the Eastern District of New York (*id.* ¶ 13), and plaintiffs did not work at any of these locations. Plaintiffs claim that the four branch offices in the Eastern District of New York include "major administrative offices" (Pls.' Opp. at 3), but they cite no evidence that supports that assertion.

Although plaintiffs apparently do not dispute that Gentiva has moved some of its operations to Atlanta, they nevertheless challenge Gentiva's assertion that its principal executive offices are in Georgia, and point as evidence to Gentiva's corporate filings with New York and 22 other states, in which Gentiva lists its Melville, New York address as its principal place of business. (Pls.' Opp. at 4.) Defendant acknowledges that Gentiva previously was headquartered in Melville, New York—prior to the company's merger with Atlanta-based Healthfield Home Health, Inc. ("Healthfield")—but defendant states that its move to Atlanta has been completed[1] and

---

[1] There is some confusion as to the date upon which defendant's move was completed. On the one hand, Gentiva asserts that it has been headquartered in Atlanta since 2009, but on the other hand, Gentiva contends that its move was completed as of June 2010. (*Compare* Karr Decl. ¶ 9, *with* Aug. 9, 2010 Declaration of Kathleen Shanahan ¶ 9.) In a declaration submitted with Gentiva's reply brief, Gentiva's Assistant Vice President of Organizational Effectiveness, Teresa Irish, clarified the timeline of Gentiva's move. (*See* Sept. 20, 2010 Declaration of Teresa Irish ("Irish Decl.").) Ms. Irish, who was the person primarily responsible for Gentiva's transition from Melville to Atlanta (*id.* ¶ 4), explained that within a year of Gentiva's merger with Healthfield, the majority of the company's senior executive group was located in Atlanta, Georgia. (*Id.* ¶ 6.) The human resource and human resource compensation functions were relocated to Atlanta by September 2008. (*Id.* ¶ 8.) Thereafter, as of early 2009, Gentiva's headquarters were officially relocated from

that it no longer maintains its headquarters or principal place of business in New York. (Def.'s Mem. of Law at 3.) In support of this assertion, Gentiva cites to, *inter alia*, its United States Securities and Exchange Commission Form 8-K for the period ending July 30, 2009, which clearly lists an address in Atlanta, Georgia as the location of Gentiva's principal executive offices. (*Id.* (citing Def.'s Ex. C).) Additionally, Gentiva explains that the state filings cited by plaintiffs are erroneous—these filings are updated only on an intermittent basis and do not necessarily reflect the most up-to-date information about Gentiva's office address or officers. (Sept. 23, 2010 Declaration of Pamela J. Dunn ("Dunn Decl.") ¶¶ 3, 7-9.) Indeed, plaintiffs have ignored the fact that Gentiva has updated its filings with 20 states to reflect its Atlanta, Georgia address. (*Id.* ¶ 10.) Finally, of the dozen or so[2] employees who still work out of the Melville, New York office—the lease for which expired on August 31, 2010 (Irish Decl. ¶ 10)—Gentiva notes that all hold non-managerial positions, and none have any responsibilities related to Gentiva employee compensation. (Karr Decl. ¶ 8; Irish Decl. ¶ 10.)

---

Melville, New York to Atlanta, Georgia. (*Id.* ¶ 9.) Finally, in May 2010, Gentiva appointed new senior executives in Atlanta to replace their counterparts who had been based in Melville. (*Id.*) In any event, the Court need not determine exactly when Gentiva's move was completed, because, regardless, it is clear as of the current date that Gentiva's operations are based in Atlanta.

[2] John Karr states in his August 9, 2010 declaration that thirteen employees are still working out of the Melville office location. (Karr Decl. ¶ 8.) Teresa Irish, however, states that only eight employees work out of Melville. (Irish Decl. ¶ 10.) In any event, it is clear that a minimal number of employees continue to work at Gentiva's Melville office space.

Plaintiffs further contend, in a conclusory fashion, that the "strategies, research and development regarding the PPV compensation practice . . . were made while Gentiva's principal place of business was recognized as Melville, New York." (Pls.' Opp. at 6.) They also assert that Gentiva used the pay-per-visit compensation scheme prior to its merger with Healthfield while Gentiva was still based in New York. (*Id.* at 2.)

Defendant, however, states that Gentiva switched to a PPV system only after its merger with Healthfield. (Def.'s Mem. of Law at 4.) More important, with respect to potential witnesses, defendant notes that the transition from a salary compensation scheme to a PPV scheme was directed by Gentiva personnel based in Atlanta, Georgia. (*Id.*; Karr Decl. ¶ 20; Shanahan Decl. ¶¶ 15-18.) Although former Gentiva compensation staff in Melville, New York may have been involved in the transition, at least to some degree, they were not involved to the extent of personnel based in Atlanta, where strategic planning for, and the creation of key documents regarding, the transition occurred. (Shanahan Decl. ¶ 16-17.) Thus, defendant contends that it is likely the material witnesses for this lawsuit will reside in or near the Northern District of Georgia. (*See* Def.'s Mem. of Law at 5-9.)

Similarly, the primary location for the coordination of document production for this lawsuit would be Gentiva's office in Atlanta, Georgia. First, any "records relevant to the management of Human Resources . . . [are located] in the Atlanta office in paper format, and are not duplicated elsewhere." (Shanahan Decl. ¶ 14.) The same is true for records related to the management of Gentiva's compensation system. (Karr Decl. ¶ 12.) Second, to the extent that electronic, as opposed to paper, records regarding compensation exist, those

records would not reveal "information about how each type of non-visit clinician activity was compensated." (Karr Decl. ¶ 25; Shanahan Decl. ¶ 24.) Instead, to find this information, Gentiva employees would have to review paper records created at Gentiva's various branch locations. (Karr Decl. ¶ 25; Shanahan Decl. ¶ 24.) The "employees who have the expertise to aggregate and interpret the company's paper records . . . are located at the Atlanta, Georgia headquarters . . . or in its Overland Park, Kansas offices." (Karr Decl. ¶ 26; Shanahan Decl. ¶ 25.) No such employees work at Gentiva's New York locations. (Karr Decl. ¶ 26; Shanahan Decl. ¶ 25.) Thus, defendant states that "[a]ny centralized collection and review of those records would be coordinated through Atlanta." (Def.'s Mem. of Law at 10.) Finally, there is limited access to the software needed to review Gentiva's electronic records regarding patients, billing, visit schedules, visit time, and employee data. (Shanahan Decl. ¶ 26.) Employees with the knowledge and authority necessary to access and interpret these records are located either in Atlanta or in Overland Park, Kansas, but not in New York. (*Id.*)

B. Procedural History

On May 10, 2010, plaintiffs filed their complaint in this action in the Eastern District of New York. The Court held a pre-motion conference on July 8, 2010 and set a briefing schedule for the instant motion to transfer venue. On August 9, 2010, defendant filed its motion to transfer venue to the Northern District of Georgia. Plaintiffs filed their opposition to defendant's motion on September 8, 2010, and defendant filed its reply on September 23, 2010. On October 1, 2010, the Court conducted oral argument on the motion. This motion is fully submitted.

II. DISCUSSION

A. Applicable Law

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Section 1404(a) is intended "to prevent waste of time, energy and money and to protect litigants, witnesses and [the] public against unnecessary inconvenience and expense." *Mastercard Int'l Inc. v. Lexcel Solutions, Inc.*, No. 03 Civ. 7157 (WHP), 2004 WL 1368299, at *5 (S.D.N.Y. June 16, 2004) (internal quotation marks and citation omitted). "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006); *accord Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 116-17 (2d Cir. 1992). In determining whether to transfer venue, courts examine: (1) whether the action could have been brought in the proposed forum, and (2) whether the transfer would "promote the convenience of parties and witnesses and would be in the interests of justice." *Clarendon Nat'l Ins. Co. v. Pascual*, No. 99 Civ. 10840 (JGK) (AJP), 2000 WL 270862, at *2 (S.D.N.Y. Mar. 13, 2000) (quoting *Coker v. Bank of Am.*, 984 F. Supp 757, 764 (S.D.N.Y. 1997)) (additional citations omitted).

The parties do not dispute that this action could have been brought in the Northern District of Georgia. Instead, the parties focus on whether transfer would promote the interests of justice and the convenience of the parties. The Second Circuit has summarized some of the factors that a district court is to consider in the

4

exercise of its discretion, including:

> (1) the plaintiff's choice of forum, (2) the convenience of the witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co., Inc.*, 462 F.3d at 106-07 (quoting *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)). Some courts have identified additional factors, including (1) "the forum's familiarity with governing law," and (2) "trial efficiency and the interest of justice, based on the totality of the circumstances." *Glass v. S&M NuTec, LLC*, 456 F. Supp. 2d 498, 501 (S.D.N.Y. 2006); *accord In re Hanger Orthopedic Group, Inc. Sec. Litig.*, 418 F. Supp. 2d 164, 167-68 (E.D.N.Y. 2006); *see also Dealtime.com Ltd. v. McNulty*, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000) (collecting cases).

There is no strict formula for the application of these factors, and no single factor is determinative. *See, e.g.*, *Hilti Aktiengesellschaft v. Milwaukee Elec. Tool Corp.*, No. 04 Civ. 629 (ARR) (ASC), 2004 WL 1812821, at *4 (E.D.N.Y. July 19, 2004); *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 402 (S.D.N.Y. 2005). Instead, these factors should be applied and weighed in the context of the individualized circumstances of the particular case. The moving party, Gentiva, bears the burden of showing that transfer is warranted in light of these factors. *See O'Hopp v. ContiFinancial Corp.*, 88 F. Supp. 2d 31, 34 (E.D.N.Y. 2000).

B.  Analysis

(1) Plaintiff's Choice of Forum

It is well settled that the plaintiff's choice of forum is "given great weight." *D.H. Blair & Co., Inc.*, 462 F.3d at 107 (citation omitted). Thus, "[a] plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal Ins. Co. of Am. v. United States*, 998 F. Supp. 351, 353 (S.D.N.Y. 1998) (citations omitted). However, courts have noted that the weight given to this factor is diminished where (1) the operative facts have "little or no connection" with the forum chosen by the plaintiff, *Stein v. Microelectronic Packaging, Inc.*, No. 98 Civ. 8952 (MBM), 1999 WL 540443, at *8 (S.D.N.Y. 1999) (citation omitted),[3] or (2) "a plaintiff chooses a forum that is not his residence," *De Jesus v. Nat'l R.R. Passenger Corp.*, 725 F. Supp. 207, 208 (S.D.N.Y. 1989). *See also Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F. Supp. 81, 96 (S.D.N.Y. 1995) ("The deference accorded to plaintiff's choice of forum . . . is diminished substantially where

---

[3] *See also Wagner v. N.Y. Marriott Marquis*, 502 F. Supp. 2d 312, 317 (N.D.N.Y. 2007) ("The presumption favoring plaintiff's choice of forum, however, is not so rigidly applied where, as here, the cause of action arose outside of that forum . . . .") (citation omitted); *Royal Ins. Co. of Am.*, 998 F. Supp. at 353 ("The weight accorded to a plaintiff's choice of venue is significantly diminished, however where the operative facts have no connection to the chosen district."); *Hernandez v. Graebel Van Lines, Inc.*, 761 F. Supp. 983, 990 (E.D.N.Y. 1991) ("[W]here the transactions or facts giving rise to the action have no material relation or significant connection to the plaintiff's chosen forum, then the plaintiff's choice is not accorded the same 'great weight' and in fact is given reduced significance." (citations omitted)).

the forum is neither plaintiff's home district nor the place where the events or transactions underlying the action occurred."); *Thomas Am. Corp. v. Fitzgerald*, No. 94 Civ. 0262 (CBM), 1994 WL 440935, at *5 (S.D.N.Y. Aug. 11, 1994) ("[T]he plaintiff's choice of forum is accorded less weight where the plaintiff's chosen forum is neither plaintiff's home nor the place where the operative facts of the action occurred."). Moreover, "[w]here it appears that the plaintiff was forum shopping and that the selected forum has little or no connection with the parties or the subject matter, plaintiff's choice of forum is entitled to no weight whatever, and the transfer of venue is appropriate." *Pierce v. Coughlin*, 806 F. Supp. 426, 429 (S.D.N.Y. 1992) (internal quotation marks and citation omitted). In addition, a "plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than in an individual action." *Warrick v. Gen. Elec. Co. (In re Warrick)*, 70 F.3d 736, 741 n.7 (2d Cir. 1995).

In the instant case, named plaintiffs reside either in the Northern District of New York or the Eastern District of North Carolina, but not in the Eastern District of New York. Moreover, as discussed *infra*, the operative facts in this lawsuit have no connection to the Eastern District of New York. Finally, as plaintiffs acknowledge, Gentiva operates branch offices in at least 39 states (*see* Pls.' Opp. at 14), which means that members of the class will be situated around the nation. Thus, although plaintiffs have chosen this district as their forum, an analysis of other factors (as detailed below) demonstrates that the balance of factors is strongly in favor of transfer in this case, thus overcoming any deference owed to plaintiffs' choice of forum. Indeed, plaintiffs' choice of forum should be afforded minimal deference here, given that plaintiffs' actions—seeking to try this case in a District in which plaintiffs neither reside nor work—suggest that they may simply be forum shopping. *See Foster v. Nationwide Mut. Ins. Co.*, No. 07-cv-4928 (SI), 2007 WL 4410408, at *3 (N.D. Cal. Dec. 14, 2007) ("[F]orum shopping can be inferred here based on plaintiffs' apparent eagerness to have their case tried in the Northern District rather than in the Eastern District or Arkansas, where the lead plaintiffs reside. Therefore, the Court will accord no deference to plaintiffs' choice of forum.").

(2) Convenience of Witnesses

In deciding whether to disturb a plaintiff's choice of forum, the convenience of the witnesses is generally the most important factor in the transfer analysis. *See, e.g.*, *DLJ Mort. Capital, Inc. v. Cameron Fin. Group, Inc.*, No. 07 Civ. 3746 (LAP), 2007 WL 4325893, at *5 (S.D.N.Y. Dec. 4, 2007) ("[T]he convenience of witnesses is typically the most important factor in a motion pursuant to § 1404(a) . . . ."); *Neil Bros. Ltd v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006) ("The convenience of the witnesses is probably the single most important factor in the transfer analysis."); *Wagner*, 502 F. Supp. 2d at 315 ("[T]he convenience of both party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." (internal quotation marks and citation omitted)); *Viacom Int'l, Inc. v. Melvin Simon Prods., Inc.*, 774 F. Supp. 858, 868 (S.D.N.Y. 1991) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." (citations omitted)). Generally, as defendant has done in the instant case, the moving party submits an affidavit that both

explains why the transferee forum is more convenient and includes "the potential principal witnesses expected to be called and a general statement of the substance of their testimony." *Laumann Mfg. Corp. v. Castings USA Inc.*, 913 F. Supp. 712, 720 (E.D.N.Y. 1996) (internal quotation marks and citation omitted).

Here, defendant has submitted declarations from three Gentiva employees whom the Company believes are likely to be called as witnesses in this action. Specifically, defendant has provided declarations from Kathleen Shanahan, Vice President of Human Resources, and John Karr, Vice President of Compensation and Benefits, both of whom are based in Atlanta, Georgia, as well as Marlene Harrell, a Regional Director for Human Resources who is based in Alabama.[4] Shanahan is Gentiva's senior executive responsible for human resources, a position she has held since 2006, and she has been a Gentiva employee since 1993. (Shanahan Decl. ¶¶ 6-7.) After Gentiva's merger with Healthfield, she personally consulted, from Atlanta, Georgia, with Healthfield personnel "to facilitate Gentiva's implementation of the PPV plan." (*Id.* ¶ 15.) Additionally, she not only "directly participated in creation of the documents and strategic planning for the pay-per-visit plan," but also "directed the education of branch management regarding safeguards in Gentiva's payroll system and legal compliance efforts to ensure that employees are paid for all time worked and all services provided." (*Id.* ¶ 18.) Most important, Shanahan stated that the "[k]ey documents and primary strategic planning relating to the pay-per-visit system were created by Gentiva executives in Atlanta, in Tampa, Florida, and in Overland Park, Kansas." (*Id.* ¶ 16.) However, "[n]o such documents or planning arose from Gentiva's Melville, New York operations." (*Id.*) Furthermore, John Karr, Gentiva's senior executive responsible for employee compensation and benefits (Karr Decl. ¶ 6.), stated that Gentiva's "management and corporate operations personnel are primarily located in Atlanta," including the Human Resources, Compensation and Benefits, Employee Training and Development, Finance, Legal, Compliance, Tax, Procurement, Sales and Marketing, Operations, and Clinical Care departments. (*Id.* ¶ 11.) Thus, given that this lawsuit will focus on defendant's development and implementation of the pay-per-visit system, as well as on defendant's formulation of its compensation practices and policies, most of the relevant witnesses will be located at Gentiva's headquarters in Atlanta, Georgia.[5]

---

[4] In assessing whether to transfer this action, the Court notes the convenience of witnesses located outside of either this District or the Northern District of Georgia should be afforded little, if any, weight. *See, e.g.*, *Elec. Workers Pension Fund, Local 103 v. Nuvelo, Inc.*, Nos. 07-cv-975 (HB), 07-cv-1229 (HB), 07-cv-1777 (HB), 07-cv-1953 (HB), 2007 WL 2068107, at *4 (S.D.N.Y. July 19, 2007) ("Typically . . . district courts have given little, if any, weight to the convenience of witnesses who reside in neither the transferor nor transferee forum.").

[5] Some relevant witnesses may also be located in Kansas, where Gentiva maintains a small administrative center (Karr Decl. ¶ 10) and Gentiva's payroll is processed (Shanahan Decl. ¶ 13). However, as already noted, the convenience of witnesses located outside of either the transferor or transferee district should be afforded minimal weight. Moreover, the fact that some relevant witnesses may reside outside of Atlanta, Georgia does not change the Court's conclusion that the Northern District of Georgia is a convenient forum. The majority of Gentiva's relevant corporate departments and executives are based in Atlanta and, accordingly, the Court concludes that most relevant witnesses also will be located in Atlanta.

7

*See Farrior v. George Weston Bakeries Distrib., Inc.*, No. 08-cv-2705 (JFB) (WDW), 2009 WL 113774, at *4 (E.D.N.Y. Jan. 15, 2009) (where FLSA collective action raised questions about defendant-company's compensation policies and practices, transfer to district where defendant's headquarters were located was warranted because, *inter alia*, substantial aspects of those policies were developed by individuals at corporate headquarters); *Earley v. BJ's Wholesale Club, Inc.*, No. 06-cv-3529 (WHP), 2007 WL 1624757, at *2-3 (S.D.N.Y. June 4, 2007) (transfer of FLSA action to district where defendant's headquarters were located was appropriate where key issue in case was nature and implementation of company-wide overtime policies); *Evancho v. Sanofi-Aventis U.S. Inc.*, No. 07-cv-00098 (SI), 2007 WL 1302985, at *3 (N.D.Cal. May 3, 2007) (in FLSA case seeking unpaid overtime, the court transferred action to the District of New Jersey, on the grounds that "many of the key witnesses [were] located in defendant's New Jersey headquarters, as well as critical documents and other evidence. Defendant state[d] that the key operational and administrative personnel who would testify as to payroll practices and company policies regarding the positions at issue [were] in New Jersey. . . . The majority of these individuals, though not all of them, work[ed] in defendant's Bridgewater, New Jersey headquarters."); *cf. Jones v. Walgreen, Co.*, 463 F. Supp. 2d 267, 276-77 (D. Conn. 2006) (where company-wide policy was basis for complaint, transfer was appropriate to district where defendant-company was headquartered and where "a disproportionate number of managers and corporate employees involved in the development and implementation of . . . [the] decisions and policies" at issue were located).

Plaintiffs, however, provide the names of seven witnesses who purportedly reside in or near the Eastern District of New York and could provide relevant testimony for plaintiffs' case: John Potapchuck ("Potapchuck"), Special Advisor to Gentiva's Chief Financial Officer; Bob Creamer ("Creamer"), former Senior Vice President of Home Health Care Operations; Dan Walker ("Walker"), Vice President for Gentiva's New York, Connecticut, and Massachusetts Region; Michelle Rosenblum ("Rosenblum"), Area Vice President for New York; Sue Ellen Stewart ("Stewart"), former Area Vice President for New York; Sharon Del Favero ("Del Favero"), former Regional Director of Clinic Operations for New York, among other states; Bruce Reardon, Regional Human Resources Director for the region encompassing New York; and Mary Morrisey-Gabriel ("Morrisey-Gabriel"), former Chief Sales and Marketing Officer.[6] (Pls.' Opp. at 9-

---

[6] The Court notes that, of these seven witnesses, four are non-party witnesses. In contrast, each of the witnesses identified by defendant is a party witness. Some courts have stated that "the convenience of non-party witnesses is accorded more weight than that of party witnesses." *AIG Fin. Prods. Corp. v. Pub. Utility Dist. No. 1 of Snohomish Cnty.*, 675 F. Supp. 2d 354, 369 (S.D.N.Y. 2009) (internal quotation marks and citation omitted). Other courts, however, have not distinguished between party and non-party witnesses in evaluating this factor. *See, e.g.*, *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998) ("Convenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." (internal quotation marks and citation omitted)). In any event, the duty of the court is "not merely [to] tally the number of witnesses" on each side and in each forum, but instead is to "qualitatively evaluate the materiality of the testimony that the witnesses may provide." *AIG Fin. Prods. Corp.*, 675 F. Supp. 2d at 369 (internal quotation marks and citations omitted). With this obligation in

13.) As a threshold matter, despite plaintiffs' claims to the contrary, the Court questions whether each of these potential witnesses actually resides in the Eastern District of New York. First, with the exception of John Potapchuck, plaintiffs have not provided home addresses for any of these individuals.[7] In fact, by plaintiffs' own admission, it appears that two witnesses work in upstate New York,[8] thereby undermining plaintiffs' claims that these witnesses reside in this District. *Cf. Waverly Commons LLC v. Shoe Snow, Inc.*, No. 08-cv-10818 (GEL), 2009 WL 1116893, at *1 (S.D.N.Y. Apr. 24, 2009) (transferring venue where, *inter alia*, plaintiff claimed that certain witnesses resided in New York but "plaintiff [did] not provide their actual addresses, and there [was] no evidence in the record that either [witness] reside[d] within this district").

In any event, even if some of plaintiffs' witnesses reside in the Eastern District of New York, the Court is doubtful that these witnesses will provide more material testimony than the witnesses located in the Northern District of Georgia. Courts in the Second Circuit have recognized that "it is the nature of the testimony and not the number of prospective witnesses on each side that is important" when assessing the convenience of potential witnesses. *Elec. Workers Pension Fund, Local 103*, 2007 WL 2068107, at *4 (internal quotation marks and citation omitted); *see also Millenium, L.P. v. Hyland Software, Inc.*, No. 03-cv-3900 (DC), 2003 WL 22928644, at *3 (S.D.N.Y. Dec. 10, 2003) ("When weighing the convenience of the witnesses, courts must consider the materiality, nature, and quality of each witness, not merely the number of witnesses in each district."). Regarding several witnesses, plaintiffs quote the job descriptions that appeared for these individuals in Gentiva's United States Securities and Exchange Commission Form 8-K filed on February 3, 2006 ("Gentiva's Feb. 2006 Form 8-K"), but they fail to connect these descriptions to the relevant testimony that these witnesses would provide. For example, although Gentiva's February 2006 Form 8-K stated that Bob Creamer "oversaw Gentiva's day-to-day home healthcare operations and worked with the field leadership team to ensure that the extensive branch network was moving in the proper strategic direction" (Pls.' Opp. at 9 (citing Gentiva's Feb. 2006 Form 8-K at

---

mind, the Court finds that, even though plaintiff has identified more non-party witnesses than defendant, this factor nonetheless favors transfer for the reasons set forth herein.

[7] Plaintiffs provided the Court with a copy of an Amended Severance Agreement between Gentiva and Potapchuck, effective as of May 13, 2010, that lists a specific address in Rockville Centre, New York for Potapchuck. (See Pls.' Opp. Ex. BB.) Plaintiffs also cite to Gentiva's filings with various departments of state, several of which provide an address for Potapchuck and/or Creamer. (See Pls.' Opp. at 7.) However, these filings do not provide home addresses for either Potapchuck or Creamer, but instead merely list Gentiva's corporate address in Melville, New York. Thus, these filings do not prove that these witnesses live in or near the Eastern District of New York.

[8] Plaintiffs cite Sharon Del Favero's LinkedIn profile (*see* Pls.' Opp. Ex. FF) to demonstrate that she lives in or near the Eastern District of New York. The profile, however, states that Del Favero works in Syracuse, New York, which is located in the Northern District. *See* 28 U.S.C. § 112(a). Similarly, plaintiffs state that Michelle Rosenblum "was based out of the Bronx, New York office—within this District— . . . before being transferred to upstate New York." (Pls.' Opp. at 10.) Plaintiffs' claim that Rosenblum resides in this District is undercut not only because of Rosenblum's transfer to upstate New York, but also because the Bronx, New York is not located in the Eastern District of New York. Instead, Bronx County is located in the Southern District of New York. *See* 28 U.S.C. § 112(b).

9

20)), these job responsibilities do not necessitate the conclusion that Creamer could testify to Gentiva's compensation policies and transition to the pay-per-visit scheme. Similarly, Morrisey-Gabriel's position overseeing sales and marketing initiatives (*id.* at 13), has little, if anything, to do with how Gentiva sets employee compensation. Likewise, although Potapchuck formerly served as Gentiva's Chief Financial Officer (*see* Gentiva's Feb. 2006 Form 8-K at 19), the testimony that plaintiffs claim Potapchuck would give regarding why Gentiva had many more non-salaried than salaried employees (Pls.' Opp. at 9) is not clearly relevant to the issue of Gentiva's compensation practices. Most important, all three of these witnesses have stated in declarations submitted to this Court that they were not involved in the creation, implementation, or administration of Gentiva's pay-per-visit compensation scheme (Sept. 20, 2010 Declaration of John Potapchuk ¶ 3; Sept. 21, 2010 Declaration of Bob Creamer ¶ 8; Sept. 22, 2010 Declaration of Mary Morrisey-Gabriel ¶ 5) and therefore they could not provide relevant testimony on this issue.

The testimony that plaintiffs claim their remaining witnesses would provide mainly concerns either the day-to-day operations of branches in New York State or the implementation of the PPV system within the New York region. (*See* Pls.' Opp. at 9-13.) Plaintiffs' case, however, does not focus on the operations of specific branches within a particular region, but instead is based upon the allegation that defendant Gentiva has a "corporate policy" of paying certain types of workers under an allegedly unlawful pay-per-visit compensation scheme. (Compl. ¶ 3.) Thus, the Court finds that "the testimony [that would be] more critical and extensive is likely to be provided by the parties and witnesses"[9] residing in the Northern District of Georgia, where Gentiva is headquartered and its executives who set company-wide policies are based.[10] *Cf. Elec. Workers Pension Fund, Local 103*, 2007 WL 2068107, at *4 (transferring case where "notwithstanding that some tangentially related witnesses may reside in or near New York, the far greater number of the most material witnesses—i.e. the individual Defendants and [defendant company] employees—are located in [the district where defendant was headquartered]."); *Earley*, 2007 WL 1624757, at *2-3 ("Plaintiff alleges a corporate policy of denying overtime pay to employees throughout the United States.

---

[9] *In re Nematron Corp. Sec. Litig.*, 30 F. Supp. 2d 397, 403 (S.D.N.Y. 1998) (transferring securities class action from plaintiff's home district to district where defendant company had its principal place of business and where company executives responsible for financial statement at issue lived or worked).

[10] Rindfleisch and Gentile also state that Del Favero and/or Walker could corroborate plaintiffs' allegations regarding the hours they worked and tasks they performed. (Rindfleisch Decl. ¶ 14; Gentile Decl. ¶ 14.) As an initial matter, plaintiffs fail to explain why Del Favero or Walker—each of whom was a regional director for a broad geographic region encompassing New York—would have personal knowledge of the hours worked by individual employees in a particular branch office. Moreover, the issues about which these witnesses purportedly would testify are secondary issues to the main question of whether Gentiva had a company-wide policy of paying employees pursuant to an unlawful compensation scheme. Finally, defendants have made clear that any centralized collection and review of time records would be conducted by employees based out of Gentiva's Atlanta office. Therefore, the Court concludes that Del Favero and Walker would not be able to provide more relevant testimony than those witnesses residing in the Northern District of Georgia.

Although there has not yet been any discovery on this issue, it is likely that Defendant's national overtime policies were determined at its headquarters in Massachusetts. Moreover, it is undisputed that many of the documents and executives relevant to discovery are located in Massachusetts. . . . Because Plaintiff's claims focus on the nature and implementation of Defendant's company-wide overtime policies and not those of the Pennsylvania store [where plaintiff worked] in particular, it is likely that most discovery will take place at [Defendant's] headquarters in Massachusetts. Accordingly, this factor weighs in favor of transfer to Massachusetts."); *Waldmer v. SER Solutions, Inc.*, No. 05-cv-2098 (JAR), 2006 WL 314346, at *5 (D. Kan. Feb. 3, 2006) ("Although [defendant] regularly conducts business in Kansas, and a majority of the plaintiffs have done some work for [defendant] in Kansas in the past three years, the logical origin of this dispute is Virginia. It was at the company's headquarters in Virginia that [defendant's] personnel made and implemented the decision to treat plaintiffs as exempt under the FLSA. No company policies were ever established in Kansas.").

Indeed, transfer is particularly appropriate in this case, because, even if witnesses with some relevant knowledge reside here, there is no evidence that any of the operative facts in this case occurred in the Eastern District of New York. In particular, as discussed *infra*, none of the named plaintiffs worked in the Eastern District of New York and the declarations provided by defendant indicate that the PPV compensation scheme was developed and implemented under the direction of employees based in Gentiva's Atlanta, Georgia office. These circumstances weigh in favor of transfer for the reasons discussed herein.

Plaintiffs also oppose defendant's motion to transfer on the ground that Gentiva has represented to various states, including New York, that its principal executive office is in Melville, New York. (*See* Pls.'s Opp. at 1, 4, 14, 17, 21.) The Court finds this argument to be similarly unpersuasive. As an initial matter, defendants note that the lease on the remaining Melville office space expired as of August 31, 2010. (Irish Decl. ¶ 10.) Moreover, not only is there no evidence that key events occurred in Melville, but defendants also note that there are only approximately a dozen employees working in the Melville office, most of whom are "non-managerial staff in the company's Contracts department." (*Id.*; Karr Decl. ¶ 8.) Thus, the mere fact that Gentiva listed its Melville address on certain forms does not make this District convenient for relevant witnesses in this litigation. *See Farrior*, 2009 WL 113774, at *6 n.4 ("The fact that [defendant's] headquarters was in New York in the past . . . does not mean that, where defendants have moved their headquarters and the other relevant factors favor transfer, this link to this District should preclude transfer. Similarly, the current presence of defendants' employees in New York, who are unrelated to the issues in this lawsuit, is also insufficient to override the other factors strongly supporting transfer.").

Finally, although plaintiffs are also seeking to bring this as a "collective action" under the FLSA (*see* Compl. ¶¶ 76-83), which would potentially involve plaintiffs and witnesses all across the country,[11] that potential scenario does not militate against transfer, because this District is no more of a convenient district for these individuals than

---

[11] Defendant acknowledges that the testimony of managers and home health care clinicians from various Gentiva branches may be relevant here. (Def.'s Mem. of Law at 14 n.4.)

the Northern District of Georgia. *See Farrior*, 2007 WL 113774, at *5; *Neil Bros. Ltd.*, 425 F. Supp. 2d at 330 ("On balance, the convenience of the witnesses weighs in favor of transfer [to Tennessee]. Approximately half of the witnesses identified by the parties reside in Tennessee, while none reside in New York. If the case is transferred, [two Tennessee witnesses] will be relieved of traveling entirely. By contrast, if the case is not transferred, the witnesses identified by the plaintiff . . . will still be required to travel . . . . Accordingly, the Court finds that this important factor favors a transfer to Tennessee."). Indeed, plaintiffs acknowledge that because "Gentiva's office locations are scattered across at least 39 states . . . [w]hether witnesses are traveling to the Eastern District of New York or Northern District of Georgia[ ] will be of no real consequence." (Pls.' Opp. at 14.)

In sum, the "convenience of the witnesses" factor clearly favors transfer of this case to the Northern District of Georgia, where Gentiva's headquarters are located and most of the material witnesses reside.

(3) Location of Documents

With respect to the location of documents, records related to the management of both human resources and compensation are available in paper format only and are stored at Gentiva's Atlanta location. (Shanahan Decl. ¶ 14; Karr Decl. ¶ 12.) Additionally, both Vice President Shanahan and Vice President Karr noted that "any centralized collection and review of Gentiva['s] time records would need to be coordinated through the Atlanta, Georgia office." (Shanahan Decl. ¶ 25; Karr Decl. ¶ 26.) Moreover, plaintiffs estimate that the size of the class they seek to represent may be as large as several thousand individuals (Compl. ¶ 79), which may make the documentary evidence about compensation "so voluminous that their transport is a major undertaking." *Lauer v. Saybolt LP*, No. 09-cv-3442 (ILG), 2010 WL 1992008, at *5 (E.D.N.Y. May 17, 2010) (internal quotation marks and citation omitted) (finding factor weighed in favor of transfer where, in putative class action seeking unpaid overtime, plaintiff sought to represent class of approximately 100 employees, thus rendering "documentary evidence of times and locations worked" for class members over eight-year period difficult to transport due to volume). Accordingly, the Court finds that this factor favors transfer. *Cf. Earley*, 2007 WL 1624757, at *3 ("While a nationwide class action invariably involves voluminous document discovery in numerous locales, the single most likely source of relevant documents is Defendant's headquarters in Massachusetts, because that is where Defendant's corporate policies are determined. This fact weighs in favor of transfer to the District of Massachusetts, albeit marginally.").

Nevertheless, the Court does not view this factor as particularly significant given the technological age in which we live, where there is widespread use of, among other things, electronic document production. *See, e.g.*, *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."); *DiStefano v. Carozzi N. Am., Inc.*, No. 98 Civ. 7137 (SJ), 2002 WL 31640476, at *4 (E.D.N.Y. Nov. 16, 2002) ("Although the location of relevant documents is entitled to some weight when determining whether a case should be transferred, modern photocopying technology deprives this issue of practical or legal weight." (internal citations omitted)).

(4) Convenience of the Parties

In terms of the convenience of the parties, the Court recognizes that "'[w]here transfer would merely shift the inconvenience from one party to the other,' the Court should leave plaintiff's choice of venue undisturbed." *See Wagner*, 502 F. Supp. 2d at 316 (quoting *Wilshire Credit Corp. v. Barrett Capital Mgmt. Corp.*, 976 F. Supp. 174, 182 (W.D.N.Y. 1997)); *accord Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F. Supp. 1314, 1322 (S.D.N.Y. 1989). However, "transfer of venue may be appropriate where inconvenience for the party moving for transfer could be completely eliminated without substantially adding to the non-moving party's inconvenience." *Frame v. Whole Foods Mkt., Inc.*, No. 06 Civ. 7058 (DAB), 2007 WL 2815613, at *6 (S.D.N.Y. Sept. 24, 2007).

In the instant case, transfer of the case would not shift the inconvenience to the plaintiffs; rather, transfer will result in little, if any, additional inconvenience to plaintiffs, while at the same time making the forum substantially more convenient for defendants.[12] More specifically, the Court concludes that this factor weighs heavily in favor of transfer because, as noted *supra* in connection with the analysis of potential witnesses, defendant's headquarters is in the Northern District of Georgia, and, thus, that district is clearly a substantially more convenient forum for them. In contrast, plaintiffs, who reside in either the Northern District of New York or in North Carolina, will be required to travel regardless of the transfer. In other words, this District is not convenient for plaintiffs, and a transfer will impose no additional burden on them. *See, e.g.*, *Frame*, 2007 WL 2815613, at *6 ("Transferring this case to the Western District of Texas would obviously eliminate inconvenience for Defendant since its corporate headquarters are located within that District. As for Plaintiff, she would be only slightly more inconvenienced, if at all, by a transfer of the case to Texas since she will have to travel outside of North Carolina regardless."); *Neil Brothers Ltd.*, 425 F. Supp. 2d at 328 ("[I]f the action remains in New York, all . . . parties will be required to travel. World Wide will be relieved of this burden if the action is transferred to Tennessee. Accordingly, this factor weighs in favor of transferring this action to the Western District of Tennessee.").

Plaintiffs Rindfleisch, Melendez, and Gentile argue, however, that the Eastern District of New York is a more convenient location for them than the Northern District of Georgia. Specifically, these plaintiffs claim that they can either drive to this District within three and one-half hours or fly within 45 minutes, and that either such mode of transportation would avoid "subject[ing] [plaintiffs] to flight delays that could require more than one overnight stay in Atlanta, Georgia." (Rindfleish Decl. ¶ 18; Melendez Decl. ¶ 18; Gentile Decl. ¶ 17.) As an initial matter, the Court disagrees that plaintiffs would be able to drive from Auburn, New York to Central Islip, New York in approximately three and one-half hours. The Court takes judicial notice of the fact that Auburn is approximately 300 miles away from Central Islip, and that the estimated driving time from Auburn to Central Islip is approximately five and one-half hours.[13]

---

[12] Counsel for Gentiva noted at oral argument that they would take plaintiffs' depositions in the districts in which plaintiffs reside, thus further eliminating any potential inconvenience a transfer might impose on plaintiffs.

[13] The distance and estimated driving time listed here were calculated using Google Maps. *See* http://maps.google.com/. Federal Rule of

Moreover, the difference in flight times from the Syracuse, New York airport—located just over 30 miles from Auburn, New York—to Atlanta, Georgia versus from Syracuse to the Eastern District of New York is insignificant. To the extent that plaintiffs are concerned about flight delays, such concerns exist regardless of whether plaintiffs are flying to New York or to Atlanta. In any event, even if there was a material increase in the travel burden on plaintiffs, that additional burden is substantially outweighed by the inconvenience to defendant that exists in requiring defendant to litigate this case in this District.

Therefore, in the instant case, the "convenience of the party" factor weighs strongly in favor of transfer.

### (5) Locus of Operative Facts

There is no evidence that any of the facts relevant to this action are connected to this District. As an initial matter, it is undisputed that none of the named plaintiffs worked in the Eastern District of New York.

Accordingly, plaintiffs' relevant conduct, including the alleged overtime that was worked, did not occur in this District.

Moreover, other than plaintiffs' conclusory allegations, there is no evidence that defendant's relevant conduct—namely, the formulation of Gentiva's pay-per-visit compensation scheme—occurred in this District. Instead, the evidence persuasively outlined by defendant demonstrates that "the Company's Human Relations leadership in Atlanta, including current Gentiva Vice President for Human Resources Kathleen Shanahan, was largely responsible for directing Gentiva's transition to a pay-per-visit compensation plan." (Karr Decl. ¶ 20.) Shanahan explained that "[k]ey documents and primary strategic planning relating to the pay-per-visit system were created by Gentiva executives in Atlanta, in Tampa, Florida, and in Overland Park, Kansas," and that "[n]o such documents or planning arose from Gentiva's Melville, New York operations." (Shanahan Decl. ¶ 16.)[14]

Therefore, this factor favors transfer because none of the operative facts regarding plaintiffs' conduct occurred in this District, and at least some of the operative facts concerning defendant's corporate decision-making took place in Atlanta, Georgia. Accordingly, comparing the Northern District of Georgia against the

---

Evidence 201 permits courts to take judicial notice of generally known facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. R. 201(b). Courts commonly use internet mapping tools to take judicial notice of distance and geography. *See, e.g.*, *Citizens for Peace in Space v. City of Colo. Springs*, 477 F.3d 1212, 1219 n.2 (10th Cir. 2007) (taking judicial notice of distance calculated using Google Maps); *Dynka v. Norfolk S. Ry. Corp.*, No. 09-cv-4854, 2010 WL 2490683, at *1 n.2 (E.D. Pa. June 15, 2010) (same); *Maynard v. Harrah's Entm't, Inc.*, No. 09-cv-3128 (FB) (SMG), 2010 WL 1930263, at *5 n.6 (E.D.N.Y. May 11, 2010) (same); *United States v. Stewart*, No. 3:07-cr-51 (REP), 2007 WL 2437514, at *1 n.2 (E.D. Va. Aug. 22, 2007) (same).

[14] Plaintiffs argue that the references to the Melville, New York address in various corporate filings is an indication that some operative facts in the case relate to New York. The Court finds this argument unpersuasive, however, because not only did all of plaintiffs' work occur outside of the Eastern District of New York, but also, as of the date that complaint was filed, defendant had submitted a Form 8-K with the United States Securities and Exchange Commission clearly listing Atlanta, Georgia as its principal place of business. (*See* Def.'s Mem. of Law Ex. C.)

14

current forum, the "location of operative facts" favors transfer.

### (6) Availability of Process to Compel the Attendance of Unwilling Witnesses

Rules 45(b)(2) and 45(c)(3)(A)(ii) of the Federal Rules of Civil Procedure prohibit a subpoena from directing a witness to travel more than 100 miles. *See* Fed. R. Civ. P. 45. There is no indication that any non-party witnesses would refuse to appear, and, thus, this factor is neutral.

### (7) Relative Means of the Parties

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800-Flowers, Inc. v. Intercont'l Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994); *see also Dwyer v. Gen. Motors Corp.*, 853 F. Supp. 690, 693-94 (S.D.N.Y. 1994) (denying transfer where, *inter alia*, "[p]laintiffs are individuals who are suing a large corporation which possesses considerably greater financial assets").

In the instant case, the Court finds that the "relative means of the parties" factor is not especially significant. Other than conclusory allegations in the declarations of plaintiffs Rindfleisch, Melendez, and Gentile, plaintiffs have not produced documentation showing that litigating the case in Georgia—as compared to New York—would be prohibitively expensive. *Cf. Quan v. Computer Scis. Corp.*, Nos. CV 06-3927 (CBA) (JO), CV 06-5100 (CBA) (JO), 2008 WL 89679, at *7 (E.D.N.Y. Jan. 7, 2008) ("Absent any information demonstrating that the plaintiffs would be financially prejudiced by having to litigate in California, this factor adds nothing to my analysis."); *Neil Bros. Ltd.*, 425 F. Supp. 2d at 331 ("'A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances.'" (quoting *Federman Assocs. v. Paradigm Med. Indus., Inc.*, No. 96 Civ. 8545, 1997 WL 811539, at *4 (S.D.N.Y. Apr. 8, 1997))). Moreover, it is unlikely that plaintiffs would need to travel to Georgia if the case were transferred except to attend or testify at trial. Thus, although the relative means of plaintiffs in contrast to a national company clearly favors plaintiffs, the Court does not view this factor as having significant weight in this particular case because plaintiffs have been unable to demonstrate a substantial hardship (financial or otherwise) caused by the transfer.

### (8) Familiarity with the Governing Law

With respect to the forum's familiarity with the governing law, the Court finds that this factor weighs marginally in favor of plaintiffs' choice of forum. As an initial matter, the Court assumes that this District and the Northern District of Georgia are equally familiar with, and capable of applying, the legal principles necessary to adjudicate plaintiffs' federal FLSA claims. *See Farrior*, 2009 WL 113774, at *8 n.6 (noting that either federal district court in question had necessary expertise to evaluate federal FLSA claim); *Earley*, 2007 WL 1624757, at *3 ("[A]ny district would be presumed to have expertise in adjudicating Plaintiff's FLSA claims."); *cf. Neil Brothers Ltd.*, 425 F. Supp. 2d at 333 ("Where, as here, the law to be applied is federal patent law, the factor is neutral."). Accordingly, to the extent that plaintiffs' case is based upon the FLSA, this factor is neutral.

Plaintiffs, however, also assert claims pursuant to New York Labor Law.

Generally, when state law questions are raised, "the forum's familiarity with governing law supports retention of the action." *ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 551 (S.D.N.Y. 2008) (internal quotation marks omitted). Nevertheless, this factor "is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the substantive law of other states," *Prudential Sec. Inc. v. Norcom Dev., Inc.*, No. 97 Civ. 6308 (DC), 1998 WL 397889, at *6 (S.D.N.Y. July 16, 1998), particularly "where no complex questions of foreign law are involved." *JP Morgan Chase Bank, N.A. v. Coleman-Toll Ltd. P'ship*, Nos. 08 Civ. 10571 (RJS), 08 Civ. 10572 (RJS), 08 Civ. 10573 (RJS), 08 Civ. 10574 (RJS), 08 Civ. 10582 (RJS), 08 Civ. 10583 (RJS), 2009 WL 1457158, at *9 n.6 (S.D.N.Y. May 26, 2009) (internal quotation marks omitted); *see also Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004) ("A forum's familiarity with the governing law . . . is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved."). Indeed, "[p]laintiffs fail to recognize that federal courts commonly apply state substantive law, which may not be the law of the state in which the federal court sits." *Kwik Goal, Ltd. v. Youth Sports Publ'g, Inc.*, No. 06 Civ.395 (HB), 2006 WL 1517598, at *4 (S.D.N.Y. May 31, 2006) (affording factor little weight and holding factor was "at best" neutral, even though plaintiffs asserted two state law claims). Insofar as plaintiffs' labor law claims do not raise any novel or complex issues of state law, the Court does not view this factor as significant.[15]

(9) Remaining Factors

With respect to the relative docket conditions of the two districts in question, the Court does not view this factor as significant in this case. The Court is fully capable of adjudicating plaintiffs' claims in a timely manner, and there is no indication that the situation in the Northern District of Georgia would be any different.

Similarly, the Court does not find any basis to conclude that "the interests of justice" factor—a separate component of the § 1404(a) analysis—weighs against transfer. Instead, the Court finds that such interests support transfer under the totality of circumstances outlined herein.

In sum, the deference that typically would be owed to plaintiffs' choice of forum is significantly diminished in this case because plaintiffs do not reside in this District and this District has little or no connection to the operative facts in this case. Moreover, any deference owed to plaintiffs' choice of forum is substantially outweighed by the other factors favoring transfer, including the fact that the witnesses who can provide the most material testimony in this case reside in the Northern District of Georgia. Thus, considering all of the § 1404(a) factors as applied to this case, defendants have met their burden and transfer is appropriate.

This Court's conclusion is consistent with a number of other courts who have concluded in potential collective or class action FLSA cases that transfer to another district was appropriate where the current plaintiffs or operative facts had little connection to the transferor district. *See, e.g.*, *Earley,* 2007 WL 1624757, at *3-4

---

[15] Plaintiffs' assertion of North Carolina state law claims does not impact the Court's conclusion, because neither district in question has more expertise than the other in applying North Carolina law.

(transferring FLSA lawsuit to District of Massachusetts, which was the location of defendant's corporate headquarters); *Freeman v. Hoffmann-La Roche Inc.*, No. 06 Civ. 13497 (RMB) (RLE), 2007 WL 895282, at *4 (S.D.N.Y. March 21, 2007) (transferring FLSA lawsuit to District of New Jersey where plaintiffs did not reside in New York, operative facts and events did not occur in New York, and "the center of gravity" of the litigation was New Jersey) (internal quotation marks and citation omitted); *Montgomery v. Tap Enters., Inc.*, No. 06 Civ. 5799 (HB), 2007 WL 576128, at *5 (S.D.N.Y. Feb. 26, 2007), (transferring FLSA lawsuit to Western District of Missouri where, among other things, "Plaintiffs have chosen a foreign forum, and the lawsuit bears little relation to New York").

Accordingly, after carefully considering the parties' submissions and the applicable law, the Court concludes in its discretion that the defendant has met its burden and demonstrated that the above-referenced factors, as well as the totality of the circumstances and the interests of justice, warrant transfer of this action to the Northern District of Georgia.

### III. CONCLUSION

For the reasons set forth above, defendant's motion to transfer is granted. The Clerk of this Court shall transfer this case to the United States District Court for the Northern District of Georgia, pursuant to 28 U.S.C. § 1404(a).

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: October 8, 2010
       Central Islip, New York

\* \* \*

The attorneys for plaintiffs are Christine E. Webber, Cohen Milstein Sellers & Toll, PLLC, 110 New York Avenue, NW, Suite 500, Washington, DC 20005; and H. Forest Horne, Jr. and Gilda A. Hernandez, Martin & Jones, PLLC, 410 Glenwood Avenue, Suite 200, Raleigh, North Carolina 27603.

The attorneys for defendant are A. Michael Weber, Sara Danielle Sheinkin, and Amy S. Donovan Littler Mendelson, PC, 900 Third Avenue, New York, New York 10022.