IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LISA RINDFLEISCH, TIFFANY MELENDEZ, MICHELLE GENTILE, LAURIE BAKER and CHRISTINA NELMES, on behalf of themselves and others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>      Defendant. | CIVIL ACTION NO.<br><br><br>1:10-CV-03288-JEC |

## DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY CERTIFICATION AS COLLECTIVE ACTION AND ISSUANCE OF NOTICE

# TABLE OF CONTENTS

PAGE

I.    INTRODUCTION ..............................................................................1

II.   STATEMENT OF FACTS ................................................................2

    A.   Overview of Gentiva's Home Health Operations ...............................2

    B.   Gentiva's Acquisition History During the Class Period.....................3

    C.   Pay Practices Also Vary Among Branches & Clinicians Due to
        Managerial Autonomy & Market Conditions .....................................4

    D.   Clinicians Are Compensated by Different Compensation
        Methods ...............................................................................................4

        1.   Salaried Clinicians .................................................................5

        2.   Clinicians Paid a Flat Rate for Visit & for Non-Visit
             Work ........................................................................................6

             a.   Compensation for Visit-Related Work ...........................6

             b.   Compensation for Non-Visit Related Work ...................8

        3.   PPV Clinicians Paid Minimum Guaranteed Salaries ...............9

        4.   "Per Diem" Clinicians...........................................................10

        5.   Clinicians Classified as Non-Exempt ...................................11

    E.   Gentiva Continues to Pay Clinicians under Varying Plans ..............12

III.  LAW AND ARGUMENT ................................................................13

    A.   The Plaintiffs and Their Evidence ...................................................13

    B.   Plaintiffs Fail to Demonstrate That They Are Similarly Situated
        to the Broad Class They Propose to Represent .................................14

# TABLE OF CONTENTS

PAGE

1. Plaintiffs Offer No Evidence of a Common Policy, Plan or Scheme That Results in a Violation of the FLSA ..............15

    a. Plaintiffs Are Not Similarly Situated Because They Claim That They Were Paid by the Hour .....................16

    b. Plaintiffs Are Not Similarly Situated Because They Claim They Were Not Compensated for Certain Tasks..........................................................................18

2. Plaintiffs Cannot Establish Any Factual Nexus Between Their Claims and the Claims of the Putative Class ................20

    a. Plaintiffs Incorrectly Assert That All Clinicians Are Paid Using the Same Compensation Method.........20

    b. Gentiva Maintains Various Methods to Pay Clinicians ....................................................................22

    c. Gentiva's Localized Practices Make Collective Treatment Unmanageable ...........................................27

C. Plaintiffs Cannot Establish the Requisite Interest Necessary for the Broad Class They Seek .............................................29

D. This Court Should Reject Plaintiffs' Proposed Notice.....................32

IV. CONCLUSION.........................................................................34

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Adair v. Wisconsin Bell, Inc.*,
No. 08-C-280, 2008 U.S. Dist. LEXIS 68942
(E.D. Wis. Sept. 11, 2008) ......................................................................19, 20

*Barron v. Henry County Sch. System*,
242 F. Supp. 2d 1096 (M.D. Ala. 2003) ........................................................14

*Brooks v. A Rainaldi Plumbing, Inc.*,
No. 6:06-cv-631, 2006 U.S. Dist. LEXIS 89417
(M.D. Fla. Dec. 8, 2006) ...............................................................................26

*Dybach v. State of Fla. Dep't of Corrs.*,
942 F. 2d 1562 (11th Cir. 1991) .............................................................. 29-30

*England v. New Century Financial Corporation*, 370 F. Supp. 2d 504
(M.D. La. 2005) ..............................................................................................29

*Harper v. Lovett's Buffet, Inc.*,
185 F.R.D. 358 (M.D. Ala. 1999) .............................................................30, 31

*Harrison v. Enterprise Rent-A-Car, Co.*,
No. 98-233-CIV-T-24(a), 1998 U.S. Dist. LEXIS 13131
(M.D. Fla. Jul. 1, 1998)..............................................................................14, 20

*Haynes v. Singer Co.*,
696 F.2d 884 (11th Cir. 1983).......................................................................30

*Heath v. Hard Rock Café Int'l, Inc.*,
No. 6:10-CV-344-ORL-28KRS, 2010 U.S. Dist. LEXIS 107440
(M.D. Fla. Aug. 31, 2010)..............................................................................29

*Hinojos v. Home Depot, Inc.*,
No. 2:06-CV-00108, 2006 U.S. Dist. LEXIS 95434
(D. Nev. Dec. 1, 2006) ...................................................................................18

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE

*Hipp v. Liberty National Life Ins. Co.*,
    252 F.3d 1208 (11th Cir. 2001) ....................................................14

*Horne v. United Servs. Auto Assn.*,
    279 F. Supp. 2d 1231 (M.D. Ala. 2003) ...................................20, 30

*Howard v. Orange Lake Country Club, Inc*.,
    No. 6:08-CV-400-PCF, 2008 U.S. Dist. LEXIS 112044
    (M.D. Fla. Dec. 17, 2008) ...............................................................34

*In re Application of Operadora DB Mexico*,
    *S.A.*, No. 6:09-cv-383-Orl-22GJK, 2009 U.S. Dist. LEXIS 68078
    (M.D. Fla. May 28, 2009) ...............................................................14

*King v. CVS/Caremark Corp*.,
    No. 07-21824, 2007 U.S. Dist. LEXIS 99023
    (S.D. Fla. Dec. 12, 2007) ......................................................... 31-32

*King v. West Corporation*,
    No. 8:04CV318, 2006 U.S. Dist. LEXIS 3926
    (D. Neb. Jan. 13, 2006) ...................................................................29

*Lewis v. ASAP Land Express, Inc*.,
    No. 07-2226-KHV, 2008 U.S. Dist. LEXIS 40768
    (D. Kan. May 20, 2008) ...................................................................33

*Lightsey v. Potter*, No. 1:04-CV-3110-ODE, 2006 U.S. Dist. LEXIS
    76617 (N.D. Ga. Oct. 12, 2006) ................................................ 33-34

*Mackenzie v. Kindred Hosp.*,
    276 F. Supp. 2d 1211(M.D. Fla. 2003)....................................30, 32

*Mooney v. Advanced Disposal Servs*.,
    No. 3:07-CV-1018, 2008 U.S. Dist. LEXIS 62400
    (M.D. Ala. Aug. 14, 2008) ..............................................................32

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Powers v. Auto. Computer Servs.*,
    No. 09-0556-WS-C, 2010 U.S. Dist. LEXIS 19780
    (S.D. Ala. Mar. 4, 2010) ................................................................33

*Renfro v. Spartan Computer Servs.*,
    243 F.R.D. 431 (D. Kan. 2007) ....................................................33

*Riddle v. SunTrust Bank*,
    No. 1:08-CV-1411-RWS, 2009 U.S. Dist. LEXIS 89955
    (N.D. Ga. Sept. 29, 2009)..............................................................34

*Rodgers v. CVS Pharm., Inc.*,
    No. 8:05-CV-770-T-27MSS, 2006 U.S. Dist. LEXIS 23272, at
    **13-14 (M.D. Fla. Mar. 22, 2006) ..............................................32

*Scott v. Heartland Home Fin., Inc.*,
    No. 1:05-CV-2812, 2006 U.S. Dist. LEXIS 28839
    (N.D. Ga. May 3, 2006) ................................................................34

*Sheffield v. Orius Corp.*,
    211 F.R.D. 411 (D. Or. 2002) ......................................................29

*Tucker v. Labor Leasing, Inc.*,
    872 F. Supp. 941 (M.D. Fla. 1994) ........................................26, 29

*Tussing v. Quality Res., Inc.*, No. 8:09-CV-1833-T-26AEP, 2009 U.S.
    Dist. LEXIS 110190 (M.D. Fla. Nov. 25, 2009)............................23

*Tyler v. Payless Shoe Source, Inc.*,
    No. 2:05-cv-33-F, 2005 U.S. Dist. LEXIS 31682
    (M.D. Ala. Nov. 23, 2005) ...........................................................23

*Wombles v. Title Max of Alabama, Inc.*,
    No. 3:03CV1158-C, 2005 U.S. Dist. LEXIS 34733
    (M.D. Ala. Dec. 7, 2005) .............................................................23

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

**Statutes**

Fair Labor Standards Act ("FLSA"),
    29 U.S.C. § 201, *et seq.*...........................................................................passim

**Regulations**

29 C.F.R. §§ 541.602, 541.604 ...........................................................................22

## I.     INTRODUCTION

Plaintiffs' Counsel has solicited other current and former "visiting health care providers" around the country to join this litigation, and to date approximately 40 have done so.   These "Opt-in Plaintiffs" have very different claims, and in many cases, no cognizable claims at all.   Nonetheless, Plaintiffs assert that this group is representative of a proposed collective action class that would include approximately 10,000[1] current and former Gentiva Health Services, Inc. ("Gentiva" or "Defendant") employees in over 390 branches in 39 states who reported to hundreds of different managers who have compensated these employees in a variety of ways.   The significant variation in the proposed class is evidenced by the variation in the compensation structure of the named and opt-in Plaintiffs, some of whom were paid on a salary basis, others on a fee basis, and still others classified as non-exempt and paid overtime.

Plaintiffs cannot establish that they are similarly situated to the proposed class.   Plaintiffs' sole theory in support of conditional certification is that all putative class members were paid pursuant to a single unlawful compensation structure.   However, Plaintiffs fail to identify a <u>common</u> policy or plan that

---

[1] This is a preliminary estimate based upon current information and belief.

1

resulted in pay practices in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), as Defendant's policies, training materials, and procedures specifically prohibit those exact pay practices Plaintiffs claim they experienced. This fact is further evidenced by the 38 declarations provided by Defendant from: (i) other putative class members affirmatively establishing that they were not subject to the same pay practices Plaintiffs allege, and (ii) members of Gentiva's management confirming a consistent communication to putative class members prohibiting the exact same pay practices Plaintiffs allege.  Attached to these declarations are Gentiva policies, training materials, and other documents that expressly prohibit the exact same pay practices to which Plaintiffs claim to have been subject.  As such, even if Plaintiffs were compensated in the manner they claim, they have only established that, by definition, they are not similarly situated to other putative class members who affirm that they were compensated in a lawful manner that conforms to Gentiva's established policies and practices.

## II.    STATEMENT OF FACTS[2]

### A.    Overview of Gentiva's Home Health Operations

Gentiva's home health care division currently operates more than 300

---

[2] References to exhibits herein correspond to documents listed in Defendant's Exhibit List to Defendant's Opposition to Plaintiffs' Motion and Memorandum in Support of Motion for Preliminary Certification as Collective Action and Issuance of Notice ("Plaintiffs' Motion," Doc. 57).

branch locations in 39 U.S. states. (Ex. A, ¶ 19.) Gentiva's visiting clinicians provide in-home care to patients recovering from surgery or other medical conditions. Each patient's plan of care may include in-home treatment by registered nurses, physical therapists, occupational therapists, speech therapists, medical social workers, and non-exempt care providers (collectively, "Clinicians"). The Clinicians' primary job responsibility is completing patient care visits, and they spend the vast majority of their working time with patients. (*See* Ex. B, ¶ 2.) Plaintiffs do not dispute that their job duties qualify them for the professional exemption under the FLSA.[3]

### B.    Gentiva's Acquisition History During the Class Period

Gentiva merged with The Healthfield Group, Inc. ("Healthfield") in February 2006. Since then, Gentiva has acquired approximately 19 home health and hospice agencies. (*See* Ex. C, ¶ 3.) Like Healthfield, all of the entities acquired had pay practices and policies that were completely separate from those of Gentiva. (*See* Ex. B, ¶ 5; Ex. D, ¶¶ 4-5.) Some of the branches associated with these acquired agencies have transitioned to Gentiva's pay practices on varying schedules; whereas, others have maintained the pay practices that existed prior to the acquisitions. (*See* Ex. B, ¶ 7; Ex. D, ¶¶ 5-8.)

---

[3] *See, e.g.,* Doc. 67, §§ 1(c), 10; *see also,* Doc. 1, ¶ 2, *et al.*

**C.     Pay Practices Also Vary Among Branches & Clinicians Due to Managerial Autonomy & Market Conditions**

Qualified home care clinicians are in great demand.  For recruiting and operational purposes, Gentiva branch directors historically have had the discretion to negotiate compensation structures with Clinicians, including whether to compensate them by salary, by the visit, or on an alternative pay plan.  (Ex. B, ¶ 9; Ex. A¶ 3.)  Gentiva's payroll practices are complicated by the four or more systems by which Clinicians report their time, including handwritten visit notes, paperless medical records, and legacy systems from acquired agencies. *(See* Ex. B, ¶ 8; Ex. D, ¶ 8.)  During the putative class period, Gentiva has launched several initiatives designed to achieve more standardized compensation practices, but this process is ongoing and still in its infancy. (Ex. B, ¶ 10; Ex. A, ¶ 4.)  Gentiva's branch managers still retain a great deal of autonomy to pay Clinicians according to market conditions, pre-acquisition practices at the location, negotiated employment terms, and their judgment of operational needs. (Ex. B, ¶ 10; Ex. A, ¶ 3; Ex. E, ¶¶ 8, 17; Ex. F, ¶¶ 5, 16; Ex. G, ¶ 7.)

**D.     Clinicians Are Compensated by Different Compensation Methods**

Acquisitions and local autonomy have given branches flexibility to compensate Clinicians in several different ways. Gentiva has distributed a Pay Practices Manual to its regional, area, and branch managers since at least

September 1997 that outlines the various compensation methods available to pay Clinicians. (Ex. B, ¶ 12.)  The manual, which is reviewed and updated periodically to ensure it remains in compliance with the law, specifically addresses the requirements of the FLSA and provides detailed instructions for properly compensating exempt and non-exempt Clinicians. (*See* Ex. B, ¶13; Ex. A, ¶ 6 (attaching excerpts from Pay Practices Manual).)   These instructions include a statement, made in five separate places throughout the manual, that exempt Clinicians paid on a fee basis must be paid a flat rate for all working time and cannot be paid an hourly rate.  (Ex. A, ¶ 6.)  The manual also requires Clinicians to report all working time, and defines which activities are included in the visit rate paid to Clinicians. (Ex. A, ¶ 6.)  Gentiva provides new-hire and ongoing training to branch management and Clinicians regarding its lawful compensation methods. (Ex. B, ¶ 23; Ex. D, ¶ 10; Ex. H, ¶¶ 3, 5-18; Ex. G, ¶¶ 15-16, 18-19; Ex. E, ¶ 18-19; Ex. I, ¶¶ 18-19; Ex. J, ¶¶ 10, 13; Ex. K, ¶ 12; Ex. L, ¶ 10, 17.)

### 1.    Salaried Clinicians

Gentiva has paid and continues to pay some Clinicians on a salaried basis. Clinicians who are paid a salary, including registered nurses, are paid bi-weekly, and their salary is not docked or reduced for partial days of work or disciplinary

reasons. (Ex. A, ¶ 8, 18.)[4]  They are expected to work full-time (*i.e.*, 40 hours a work week), unless they negotiate a different arrangement.  (*See, e.g.,* Ex. J, ¶¶ 19-20; Ex. M, ¶ 35; Ex. N, Supp. ¶ 8; Ex. G, ¶ 11.)

### 2.    Clinicians Paid a Flat Rate for Visit & for Non-Visit Work

#### a.    Compensation for Visit-Related Work

Gentiva's current primary compensation plan for full-time Clinicians compensates Clinicians on a fee basis for their professional services of completing patient visits, and on a flat-rate basis for additional isolated work that is not visit-related. (*See* Ex. A, ¶ 5 (attaching excerpts from Pay Practices Manual); Ex. B, ¶ 11.)  The time spent on non-visit related work and the corresponding flat rate payments are minimal. (*See, e.g.,* Ex. O, ¶ 19 ("less than 5% of my time"); Ex. P, ¶ 20 ("makes up 5-10% of my working time at most"); Ex. Q, ¶ 18 ("infrequent and does not occur in every week").)

Full-time Clinicians paid on a per-visit basis are known as pay-per-visit ("PPV") Clinicians.  PPV Clinicians have a target productivity level measured in units (or "visits"). (Ex. A, ¶ 10.)  The target number of units to complete each week ranges based on geographic territory, types of visits, manager discretion, Clinician skills, negotiation with the Clinician, and other factors. (*See* Ex. D, ¶ 11.)

---

[4] Full-time Clinicians are paid allowances for mileage and mobile phone expenses, whether they are paid a salary or by another plan discussed below.  Ex. A, ¶ 9.

PPV Clinicians are expected to be available for visits eight hours each weekday, unless they negotiate another schedule with the branch management. (Ex. A, ¶ 10.)

A 30-unit productivity target anticipates that a Clinician will earn on average six units a day, through a combination of different visit values. (Ex. A, ¶ 10.) A follow-up visit with a patient is most often assigned one unit, while a visit to start care for a patient (a "start-of-care visit," which requires in-depth patient evaluation) may be assigned 1.5 or 2 units, depending on the branch. (Ex. A, ¶ 11.)[5] Recertification visits for another series of treatments are now often assigned 1.75 units. (Ex. A, ¶ 11.) Rates paid to each Clinician for a unit vary with the Clinician's market, experience, skill, position, and other factors such as holiday or weekend availability. (Ex. A, ¶ 12.) The flat rate amounts paid to each Clinician also vary by type of visit, and the flat rate amount may not always correspond with the number of units credited to the Clinician.  (Ex. A, ¶ 13.) For example, a Clinician may receive a flat rate of $40 for a follow-up visit and receive at flat rate of $70 for a start-of-care visit. (Ex. D, ¶ 21; Ex. A, ¶ 14; *see also, e.g.,* Ex. R, ¶ 13 (follow-up visit $53.80, but start-of-care visit $84.80-$104.80); Ex. S, ¶ 11 (follow-up visit $59.10, but start-of-care visit $78.80).) The flat rate amount paid

---

[5] This is according to the most common measure applied today. In the past, Clinicians have been paid varying rates for a start-of-care visit, such as one unit plus $10.00. *See* Ex. A, ¶ 14.

for each visit type is decided by local branch management. (Ex. A, ¶ 15.)   All exempt Clinicians are paid a flat rate for a particular visit regardless of the actual length of the visit or visit-related activities. (Ex. A, ¶ 15; *see also, e.g.,* Ex. T, ¶ 29; Ex. U, ¶ 12; Ex. I, ¶ 17.)

### b.    Compensation for Non-Visit Related Work

While the vast majority of a PPV Clinician's work time is directly related to patient visits, Gentiva compensates PPV Clinicians for additional tasks that enhance clinical skills and patient care but are not related to a specific visit.  Many Clinicians attend a weekly interdisciplinary meeting in which they discuss ongoing patient care. (*See* Ex. G, ¶ 18; Ex. B, ¶ 14.)  The branches occasionally schedule training or "in-service" workshops (such as CPR recertifications).  Each meeting or session is different. (*See* Ex. G, ¶ 18; Ex. B, ¶ 14.)  This work is paid on a flat rate designed to compensate Clinicians for the lost productivity associated with not conducting field visits during this time.  (*See* Ex. A, ¶ 16; Ex. D, ¶¶ 13-14; Ex. G, ¶ 13; *see also, e.g.,* Ex. Q, ¶ 18; Ex. V, ¶¶ 23-24; Ex. W, ¶ 21; Ex. X, ¶ 23.)

The flat rate is calculated according to this schedule:

| | |
|---|---|
| 0.5-1.5 hr = 1 visit unit | 5.25-6 hr = 4 visit units |
| 1.75-3 hr = 2 visit units | 6.25-7 hr = 5 visit units |
| 3.25-4 hr = 3 visit units | 7.25-8 hr = 6 visit units |
| 4.25-5 hr = 3.5 visit units | |

This chart is task-based so that under Gentiva's compensation plan, a Clinician

who attends a weekly team meeting for 30 minutes followed by a one-hour CPR training class should be paid two units—one for each of those tasks—rather than one unit for 1.5 hours in the office. Clinicians are also paid a flat rate for certain work, such as completing orientation modules, that has no relation to the time required to complete the work. (*See* Ex. G, ¶ 19; Ex. B, ¶ 15; Ex. Y, ¶ 27.)  Non-exempt Clinicians document all hours worked, and are paid overtime for all hours over 40 in workweek, or as required by state law. (*See* Ex. Z, ¶¶ 5-6.)

Gentiva practice and policy prohibits paying exempt Clinicians by the hour.[6] (*See* Ex. B, ¶ 23; Ex. A, ¶¶ 6-7; Ex. D, ¶ 16.)  Branch management and payroll employees are trained not to compensate exempt Clinicians on an hourly basis. (*See* Ex. B, ¶ 23; Ex. A, ¶ 7; Ex. D, ¶ 16.)

### 3. PPV Clinicians Paid Minimum Guaranteed Salaries

Some Clinicians, including putative opt-in plaintiffs, Ankur Desai, Rina Pandya, Henrique Morata, and Koreen Sonnevil are paid on a PPV model and also receive guaranteed minimum salaries.  For example, during the relevant period, some Clinicians have received a guaranteed salary ensuring that they would be paid for 25-30 units in each week they worked. (*See, e.g.,* Ex. F, ¶¶ 10-11; Ex. E,

---

[6] If an hourly billing code is inadvertently entered for an exempt Clinician on a particular week, the Company's payroll system is designed to pay overtime for all hours reported by the Clinician for that week, even though the Clinician is classified as an exempt employee.  *See* Ex. B, ¶ 23; Ex. Z, ¶ 4.

¶¶ 5-8; Ex. L, ¶ 15; Ex. Q, ¶¶ 11-12; Ex. Y, ¶¶ 15-17.)   If the Clinician on a guaranteed minimum salary does not reach the targeted number of units by the end of the week, the Clinician would be paid supplementary compensation required to meet the Clinician's prorated guaranteed minimum salary for that week. (*See, e.g.,* Ex. L, ¶ 15; Ex. Q, ¶ 12; Ex. Y, ¶ 15.)   The amount of the supplemental compensation paid will depend on how much additional compensation is necessary to meet the minimum prorated salary.   In weeks where the Clinician completes enough visits to earn the minimum prorated salary, no supplemental compensation is paid.   In weeks where the Clinician completes more visits than necessary to earn the minimum prorated salary, the Clinician receives extra compensation in addition to the minimum prorated salary. (*See* Ex. F, ¶ 6; Ex. G, ¶ 8; Ex. E, ¶¶ 5-9.)   The Clinicians' minimum guaranteed salaries are significantly higher than $455 a week.   (*See*, *e.g*., Ex. L, ¶¶ 15-16; Ex. Y, ¶¶ 15-16; Ex. E, ¶ 7.)

### 4.    "Per Diem" Clinicians

Gentiva's varied operations require flexible compensation and work schedule options to recruit Clinicians.   Since some Clinicians do not want to work full time or may hold another job concurrently, Gentiva has a substantial number of employees who are not on a full-time schedule.   These "per diem" ("PDM") Clinicians are paid by the visit, like a PPV Clinician, but typically do not work 40

hours a week. (*See* Ex. B, ¶ 18; Ex. A, ¶ 17.)  PDM Clinicians also frequently have little or no participation in the non-visit related tasks for which full-time PPV Clinicians earn additional compensation at a flat rate of pay. (*See* Ex. G, ¶ 5; Ex. B, ¶ 5.)  Thus, the vast majority of PDM Clinicians do not work 40 hours a week and many are paid exclusively or nearly exclusively on visit rates. (*See* Ex. A, ¶ 17.)

For various reasons, Clinicians frequently transition in and out of PDM status; almost half of the named Plaintiffs and putative Opt-In Plaintiffs have been on a PDM status at some point since May 2007.  (*See* Ex. B, ¶ 19.)  PDM Clinicians vary widely in the amount of work performed.  For example, named Plaintiff Rindfleisch was on PDM status in the Gentiva payroll system for four months in 2009 but performed a total of only three visits during that time; other PDM employees complete only a few visits per week or only work weekends. (*See* Ex. B, ¶ 19; *see also, e.g.,* Ex. AA, ¶¶ 9-10, 12.)  In addition, certain PDM Clinicians may receive a guaranteed minimum salary depending on the practices of the local branch. (*See, e.g.,* Ex. Q, ¶¶ 11-12.)

### 5.   Clinicians Classified as Non-Exempt

Several Clinicians who hold the same positions as the named Plaintiffs are classified as non-exempt and paid overtime.  For example, Clinicians working in California, who are included in the putative class definition (*see* Doc. 57, pp. 18-

19), have been classified as non-exempt and paid overtime over the entire class period. (*See* Ex. Z, ¶ 2.) These Clinicians include registered nurses, physical therapists, occupational therapists, speech therapists, and medical social workers. (*See* Ex. Z, ¶ 2.)  Similarly, all of Gentiva's licensed practical nurses ("LPNs"), including two LPNs who seek to opt-in to this case and claim to be classified as exempt (Todd and Escamilla), have been classified as non-exempt and received overtime throughout the putative class period.  (*See* Ex. Z, ¶ 6.)

### E.   Gentiva Continues to Pay Clinicians under Varying Plans

Prior to the Healthfield merger in February 2006, Gentiva's full-time Clinicians in the relevant job titles were almost all salaried Clinicians. (*See* Ex. B, ¶ 20.)   Gentiva slowly began transitioning some of the Clinicians at certain branches to PPV compensation in 2006.   (*See* Ex. B, ¶¶ 5-7.) However, that transition is incomplete, and salaried Clinicians continue to move to the PPV compensation model.[7]   For example, branch locations in Greensboro and Mooresville, North Carolina transitioned several Clinicians from salaried to PPV as recently as September and October 2010, respectively. (*See* Ex. G, ¶ 14; Ex. B, ¶ 20.)  Gentiva still employs hundreds of Clinicians who are paid on a salaried basis. (*See* Ex. A, ¶ 18; Ex. N, Supp. ¶ 8; Ex. J, ¶¶ 19-20; Ex. BB, ¶ 8; Ex. CC, ¶ 10.)

---

[7] Some Clinicians also move from PPV compensation to salaried compensation. *See, e.g.,* Ex. N, ¶ 14, & Supp. ¶ 8; Ex. M, ¶¶ 17, 35; Ex. E, ¶ 4(a-b, d).

### III.   LAW AND ARGUMENT

#### A.   The Plaintiffs and Their Evidence

The named Plaintiffs worked as registered nurses in two branches, Auburn, New York and Pollocksville, North Carolina.   Four of the named Plaintiffs and several putative Opt-in Plaintiffs have submitted boilerplate declarations asserting the same allegations that Gentiva:  (i) paid them by the hour for certain tasks not associated with a particular visit, and (ii) did not pay them at all for certain visit-related tasks. (*See* Doc. 57, Pls.' Exs. 1-17.[8])  Plaintiffs also incorrectly allege that Gentiva pays all exempt Clinicians by the hour for non-visit related tasks, in the same manner as they claim to have been paid.

These allegations are patently false and disproved by the Plaintiffs' declarants' payroll records.   However, Gentiva recognizes that this Court will not consider merits-based arguments when deciding conditional certification.   Thus, Defendant will assume, *arguendo*, that Plaintiffs' claims are true.    As fully illustrated below, even under Plaintiffs' incorrect assumption, those allegations affirmatively establish that the Plaintiffs' declarants cannot be similarly situated to the proposed class as a matter of law.[9]

---

[8] Named Plaintiff Gentile did not submit a declaration with Plaintiffs' Motion.

[9] Given the contrast between Plaintiffs' allegations regarding their pay structure and Gentiva's documented policies, training, and practices as well as the testimony

**B.     Plaintiffs Fail to Demonstrate That They Are Similarly Situated to the Broad Class They Propose to Represent**

A plaintiff must demonstrate there is a reasonable basis to conclude that she and other members of the proposed class have been treated in a similarly illegal manner. *Hipp v. Liberty National Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001). A plaintiff can meet this burden of proof by demonstrating a common unlawful policy, plan, or scheme that creates a pattern of alleged violations. *Barron v. Henry County Sch. System*, 242 F. Supp. 2d 1096, 1103 (M.D. Ala. 2003). In the absence of a policy or plan, a plaintiff "must come forward with some identifiable factual nexus which binds the named plaintiffs and potential class members together." *Harrison v. Enterprise Rent-A-Car Co.*, No. 98-233-CIV-T-24(a), 1998 U.S. Dist. LEXIS 13131, at *7 (M.D. Fla. Jul. 1, 1998); *see also Barron*, 242 F. Supp. 2d at 1104. Plaintiffs cannot establish that they are similarly situated to the putative class under either standard.

---

of its other Clinicians and managers, Defendant anticipates that Plaintiffs may assert new theories in a reply brief. Defendant requests that the Court not consider any new theories, as first-impression arguments in a reply are generally not considered. *See, e.g., In re Application of Operadora DB Mexico, S.A.*, No. 6:09-cv-383-Orl-22GJK, 2009 U.S. Dist. LEXIS 68078, at **32-33 (M.D. Fla. May 28, 2009) (overruled on other grounds). However, if the Court elects to consider new theories raised in a reply, Defendant will seek leave to file a sur-reply.

### 1.    Plaintiffs Offer No Evidence of a Common Policy, Plan or Scheme That Results in a Violation of the FLSA

Plaintiffs cannot establish an unlawful common policy, plan or scheme because Defendant widely disseminates and publicizes policies and materials that <u>specifically</u> <u>prohibit</u> the unlawful pay practices Plaintiffs claim to have been subjected to.  Plaintiffs allege that Gentiva "has maintained a corporate policy of paying its Visiting Healthcare Providers pursuant to an unlawful hybrid compensation claim [sic] which includes 'per visit' payment for some work and an hourly rate basis for other work." (Doc. 57,  p. 4.)  Plaintiffs concede their primary job duties are those of exempt professionals, consistent with FLSA §213(a)(1), but argue this purported additional "hourly compensation" destroys their exempt status.  (*See* n. 3, *supra*.)  Plaintiffs also claim they have not been compensated for certain visit-related activities such as travel between patient homes, contacting physicians, and completing patient-related paperwork.  (Doc. 57, pp. 14-15.)

Gentiva's policies specifically prohibit paying exempt Clinicians by the hour and expressly state the visit rate paid to Clinicians compensates them for all travel time, physician calls, patient-related paperwork, and other visit-related activities. (*See* II.D.2.a, *supra*.)   Therefore, far from maintaining an unlawful common policy, Gentiva maintains common policies that expressly refute Plaintiffs' claims.

### a.   Plaintiffs Are Not Similarly Situated Because They Claim That They Were Paid by the Hour

Plaintiffs claim they were paid using an "hourly rate . . . to pay for in-service education or training, conference time, and weekly company meetings." (Doc. 57, Pls.' Exs. 1 (¶ 5, Rindfleisch), 2 (¶ 5, Melendez), 3 (¶ 5, Baker, also referring to "peer reviews" and "conference time spent with an RN manager"), 4 (¶ 5, Nelmes, also referring to "in-office paperwork").)  Plaintiffs cannot point to any Gentiva policy directing that they be paid by the hour.  Rather, Plaintiffs are asserting that, by allegedly paying them by the hour, the branches where they worked chose to violate Gentiva's policies, which expressly state that exempt Clinicians <u>cannot</u> be paid on an hourly basis for any work.  (*See* II.D.2.b, *supra*.)  In fact, Gentiva's Pay Practices Manual repeatedly states "exempt employees are <u>not paid based on hours worked</u>." (emphasis added)  (*See* Ex. A, ¶¶ 5-6, attaching Pay Practices Manual (Ex. 2) at pp. 5-6, 8-9.)  In addition, this Manual provides that exempt Clinicians who are compensated on flat rates per visit are "paid a predetermined amount per visit regardless of the number of hours worked during the pay period." (Ex. A, ¶¶ 5-6, attaching Ex. 2, at p. 6.)  Moreover, Gentiva's policies establish that exempt PPV Clinicians must be paid a flat fee and <u>not</u> an hourly rate for certain non-visit related activities such as orientation, attending in-services or case conferences, or for "in-office" time. (Ex. A, ¶¶ 5-6, attaching Ex. 2, at pp. 8-9.)

Gentiva consistently provides training to local branch management and Clinicians regarding its lawful methods of compensation, including explicit instructions that exempt Clinicians must not be paid by the hour for working time. (*See, e.g.,* Ex. D, ¶ 16; Ex. E, ¶¶ 5, 19; Ex. H, ¶¶ 5-8, 11-12, 15; Ex. G, ¶ 20.) Gentiva has also provided a variety of training materials to its managers and Clinicians, including PowerPoint presentations, a Pay-Per-Visit Toolkit document, instructional emails, and other guidance, which repeatedly and consistently have explained (over the entire statutory period) that exempt Clinicians cannot to be paid on an hourly basis. (*See, e.g.,* Ex. A, ¶ 7 and attached Exhibits 1-3; Ex. D, ¶ 16 (attaching relevant excerpts of PPV Review PowerPoint presentation used for training, at Decl. Ex. A, p. 4.) Both Gentiva managers and Clinicians understand that exempt Clinicians are not paid by the hour. (*See, e.g.*, Ex. S, ¶¶ 14, 25; Ex. E, ¶ 5; Ex. H, ¶¶ 5-8, 11-12, 15; *see also,* Defendant's declarants' testimony.[10])

Clearly, even if Plaintiffs were paid by the hour as they allege, they have only established that they were paid in a manner that was:  (i) in violation of Gentiva's policies and practices, and (ii) inconsistent with the way other Clinicians

---

[10]   Ex. Q, ¶ 14; Ex. O, ¶¶ 19, 24-25; Ex. M, ¶¶ 25-26, 31; Ex. L, ¶ 22; Ex. K, ¶¶ 24-25; Ex. V, ¶¶ 19, 24; Ex. W, ¶¶ 12, 21, 24; Ex. U, ¶¶ 24, 30; Ex. T, ¶¶ 33-34; Ex. R, ¶¶ 16-17, 23; Ex. N, ¶ 23; Ex. AA, ¶ 13; Ex.J, ¶ 15; Ex. DD, ¶ 13; Ex. Y, ¶ 19; Ex. EE, ¶¶ 14, 18; Ex. FF, ¶ 20; Ex. S, ¶¶ 14, 20, 25; Ex.  GG, ¶ 15; Ex. P, ¶ 15; Ex. HH, ¶ 19; Ex. II, ¶¶ 13, 23; Ex. I, ¶ 24.

within the putative class were paid.  Consequently, they cannot establish that they are similarly situated to the Clinicians they seek to represent.  *See Hinojos v. Home Depot, Inc.,* No. 2:06-CV-00108, 2006 U.S. Dist. LEXIS 95434, at **7-8 (D. Nev. Dec. 1, 2006) (where employer's policy and declarations of other employees contradict named plaintiffs' testimony, individualized determinations would require "separate mini-trials to resolve each individual's claim.  Such a result is the antithesis of collective action treatment").

> **b.**   **Plaintiffs Are Not Similarly Situated Because They Claim They Were Not Compensated for Certain Tasks**

Plaintiffs also claim that "Gentiva failed to compensate" them for tasks required to complete a patient visit, such as travel time, time spent finishing paperwork for each patient, and time spent contacting physicians. (Doc. 57, Pls.' Exs. 1 (¶ 8, Rindfleisch), 2 (¶ 7, Melendez), 3 (¶ 7, Baker), 4 (¶ 7, Nelmes)). Gentiva's policies and practices also refute this claim.  Notably, Gentiva's Pay Practices manual <u>explicitly</u> provides that "visit time" includes not only "time spent caring for the client," but also "travel time," "charting time," "telephone time," and "client [and case] conferences." (Ex. A, ¶ 6 (attaching Ex. 2, p. 7).)  Thus, the visit rate paid to Clinicians compensates for these activities.  This is also communicated to managers and Clinicians in training materials and other documents, and is

understood by Clinicians.  (*See, e.g.,* Ex. A, ¶ 7 and attached Exs. 1-3; Ex. E, ¶¶ 18-19; Ex. D, ¶ 10 and relevant excerpts of PPV toolkit, attached thereto as Decl. Ex. B, p. 35; *see also,* Defendants' declarants' testimony.[11])

Thus, Plaintiffs' bare allegation that they <u>incorrectly believed</u> they were not paid for certain tasks is in direct conflict with Gentiva's documented policies and practices, and directly contrary to managers' and other Clinicians' detailed testimony.  Therefore, Plaintiffs are not similarly situated to the proposed class. *See, e.g., Adair v. Wisconsin Bell, Inc.*, No. 08-C-280, 2008 U.S. Dist. LEXIS 68942, at **14-15 (E.D. Wis. Sept. 11, 2008) (finding a misunderstanding regarding company policy was insufficient evidence of a common policy or practice and that plaintiffs' misunderstanding would have to be "far more widespread" to "merit the kind of collective action plaintiffs seek to bring.").  At best, Plaintiffs have established they held a belief about how they were paid that

---

[11] Ex. L, ¶ 18 (instructed by putative Opt-ins Desai and Pandya "that the per-visit rates I am paid include all of this visit-related time"); Ex. DD, ¶¶ 14-15 ("To me it's pretty straightforward: ... If a task is related to that visit, that's included in your rate."); Ex. Q, ¶¶ 9, 15-16, 20; Ex. O, ¶¶ 20-21 ("common sense says that all visit-related activities are included in the visit rates"); Ex. JJ, ¶ 24; Ex. M, ¶¶ 20, 23-24, 30; Ex. KK, ¶¶ 14-15; Ex. LL, ¶¶ 14-15, 17, 19; Ex. K, ¶¶ 12, 16; Ex. V, ¶¶ 15, 20-22, 25; Ex. W, ¶¶ 10-11; Ex. U, ¶¶ 22, 25-26, 31; Ex. T, ¶ 31; Ex. R, ¶¶ 18-20, 24; Ex. N, ¶¶ 16, 18; Ex. AA, ¶¶ 14-15; Ex. X, ¶ 21; Ex. J, ¶¶ 10, 13; Ex. Y, ¶¶ 20-21, 26; Ex. EE, ¶¶ 13-14, 16; Ex. FF, ¶ 14; Ex. S, ¶¶ 12-13; Ex. GG, ¶¶ 17-19, 22; Ex. P, ¶¶ 11, 13-14; Ex. HH, ¶¶ 13-15; Ex. II, ¶¶ 11-12; Ex. I, ¶¶ 17-19.

was inconsistent with Gentiva's policies and the understanding of other Clinicians in the putative class. Certification of a class would necessarily require the Court to engage in individualized inquiries with respect to each Clinician's understanding of what activities were included in the visit rates paid and whether the Clinician was aware of Gentiva's policies. Given this fact, it is doubtful that the granting of conditional certification would further the interests of judicial economy.

### 2.   Plaintiffs Cannot Establish Any Factual Nexus Between Their Claims and the Claims of the Putative Class

If unable to establish a common policy, plan or scheme, Plaintiffs "must come forward with some identifiable factual nexus which binds the named plaintiffs and potential class members together." *Harrison*, 1998 U.S. Dist. LEXIS 13131, at *7. "A plaintiff must make some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class, beyond the mere facts of job duties and pay provisions[.]" *Horne v. United Servs. Auto Assn.*, 279 F. Supp. 2d 1231, 1234 (M.D. Ala. 2003). Moreover, "[c]onclusory allegations... are simply not sufficient to make even the modest factual showing required." *Adair*, 2008 U.S. Dist. LEXIS 68942, at *17.

### a.   Plaintiffs Incorrectly Assert That All Clinicians Are Paid Using the Same Compensation Method

Plaintiffs attempt to establish a factual nexus between themselves and the

20

potential class members by falsely claiming that <u>all</u> exempt Clinicians were paid using the same "hybrid" compensation plan of a "fee" plus "hourly" combination of pay that Plaintiffs claim to have experienced.[12]   As illustrated above, the "hybrid" compensation plan (or PPV Plan) Plaintiffs reference prohibits paying exempt Clinicians by the hour for any work.   However, putting aside whether certain exempt Clinicians were paid by the hour or on a flat rate for all work, Gentiva utilizes several different pay models for Clinicians that are not implicated by Plaintiffs' "hybrid" compensation theory.   Plaintiffs' theory solely relies on limitations to the way exempt Clinicians may be paid using the "fee basis" method of pay.   (*See* Doc. 57, pp. 4-7, 13-17.)   Plaintiffs assert that any exempt Clinician paid on a fee basis (*i.e.*, using visit rates) cannot be paid a "fee" (flat visit rate) for specific tasks and an additional hourly rate of pay for other tasks.   (*See* Doc. 57, p. 17.)[13]   However, it is undisputable that the same limitations do not apply to Clinicians paid on a "salary basis."   Employers who pay exempt employees on a "salary basis" (*i.e.*, a predetermined amount on a weekly or less frequent basis of at

---

[12] Plaintiffs' conclusory statements as to how "other clinicians" are paid are of no evidentiary value, particularly because Plaintiffs fail to explain how they would have personal knowledge of pay practices at more than 390 of Gentiva's other offices (at which they never worked). *See* Doc. 57, Pls.' Exs. 1-5, 7-17 (¶ 8, citing unspecified conversations with unidentified "other employees"), Ex. 6 (¶ 7, *id.*).

[13] Defendant asserts that Clinicians compensated by the model Plaintiffs challenge are paid on a flat rate for all work-related tasks.

least $455 each week, per FLSA § 213(a)(1)) may also pay these exempt employees additional compensation based on hours worked (or any other basis) without affecting exempt status. *See* 29 C.F.R. §§ 541.602, 541.604. Likewise, Plaintiffs' hybrid compensation basis theory cannot apply to any exempt Clinician paid exclusively on a fee basis or to non-exempt Clinicians paid overtime. Since Gentiva pays many Clinicians on a salary, exclusive fee, or non-exempt basis, these individuals cannot be "similarly situated" to Plaintiffs as a matter of law.

### b.   Gentiva Maintains Various Methods to Pay Clinicians

Many of the Clinicians Plaintiffs seek to include in the class definition are paid in a manner that is <u>not challenged</u> by Plaintiffs. Some of these Clinicians have actually submitted declarations in support of Plaintiffs' Motion or consents to join the case. For example, putative opt-in plaintiff Lawrence was exclusively paid on a salaried basis, while putative opt-in plaintiffs Ankur Desai, Rina Pandya, and Henrique Morata were paid minimum guaranteed salaries. (*See* Ex. F ¶¶ 10 (a) – (c); Ex. B, ¶ 21; Ex. A, ¶ 2.) During the relevant period, at least 12 other named and putative Opt-In Plaintiffs were paid a salary during part or all of the relevant statutory period. (*See* Ex. B, ¶ 22; Ex. A, ¶ 2.)

Other putative Opt-in Plaintiffs were exclusively non-exempt employees who were paid overtime. (*See* II.D.5, *supra*.) Therefore, they cannot be similarly

situated to the named Plaintiffs.  *See, e.g., Wombles v. Title Max of Alabama, Inc.*, No. 3:03CV1158-C, 2005 U.S. Dist. LEXIS 34733, at **10-11 (M.D. Ala. Dec. 7, 2005) (proposed class could not be "similarly situated" if some members were classified as exempt and others were non-exempt); *Tussing v. Quality Res., Inc.*, No. 8:09-CV-1833-T-26AEP, 2009 U.S. Dist. LEXIS 110190, at **9-10 (M.D. Fla. Nov. 25, 2009) (same); *Tyler v. Payless Shoe Source, Inc.*, No. 2:05-cv-33-F, 2005 U.S. Dist. LEXIS 31682, at **17-20 (M.D. Ala. Nov. 23, 2005) (same).  For example, Melissa Todd (a/k/a Dixon), a non-exempt LPN who is paid overtime for working more than 40 hours in a workweek, incorrectly asserts in a sworn statement that she is "not compensated for hours in excess of forty (40)."[14] *Compare* Doc. 57, Pls.' Ex. 8, ¶ 3; *with* Ex. Z, ¶ 6 (attaching examples of overtime payments to Todd).)  Indeed, Defendant has classified every Clinician located in California as non-exempt and paid them overtime, consistent with state law.  (*See* Ex. Z, ¶ 2.)  Defendant has not paid California Clinicians as exempt employees during the statutory period, though they hold the same job titles as the named Plaintiffs and certain putative class members. (*See* Ex. Z, ¶ 2.)

---

[14] Plaintiffs' Counsel state that they do not intend to seek certification of a class consisting of non-exempt Clinicians. Nonetheless, they have submitted consent-to-join forms and declarations from non-exempt Clinicians and currently have a class definition that would include thousands of non-exempt Clinicians.  Defendant must respond to Plaintiffs' arguments and evidence presented, and does so here.

Other Clinicians, including putative opt-in plaintiffs, who appear in Gentiva's payroll systems to be paid visit rates on a fee basis are actually paid on a salary basis because they are provided with minimum guaranteed salaries. (*See, e.g.,* Ex. F ¶¶ 10 (a) – (c); Ex. G, ¶ 7; Ex. E, ¶¶ 5-8; Ex. HH, ¶¶ 19-22.)  Minimum salary guarantees occur for various reasons, including:  (i) if the Clinician has negotiated (or been offered) the salary guarantee at hire; (ii) during the orientation period (lasting up to 120 days); (iii) if the branch converts from a salaried to a PPV plan and wants to permit a transition period with minimum weekly compensation; or (iv) if a Clinician is asked to move to another branch or experiences a change in working conditions and wants assurance work will be sufficient to meet targeted compensation levels.   (*See* Ex. B, ¶ 16; Ex. F, ¶¶ 4-5; Ex. E, ¶ 8.)  Because Clinicians on minimum salary guarantees are paid on a salary basis, Plaintiffs' allegations concerning unlawful "hybrid" compensation are not applicable.

Importantly, individualized inquiry would be needed as to the compensation made/used for each Clinician because there are no central records of all the PPV (or "PDM") Clinicians who receive minimum salary guarantees.  (*See* Ex. B, ¶ 17; Ex. E, ¶¶ 8-9.)  These arrangements are negotiated at the branch level and may be evidenced by only a verbal arrangement.  (*See* Ex. B, ¶ 17; Ex. G, ¶ 10; Ex. F, ¶ 7.)  When necessary, "true up" or supplementary payments made to meet minimum

salary guarantees may be made using one of several pay codes or rates that do not appear consistently in electronic payroll data. (*See* Ex. B, ¶ 17.) Therefore, salary guarantee arrangements often cannot be identified absent interviews with branch managers. (*See* Ex. B, ¶ 17; Ex. G, ¶ 10; Ex. F, ¶ 12.) As such, an individualized inquiry would be necessary as to each Clinician seeking to join this case.

Still other Clinicians were paid on a pure "fee" basis, never attended inter-disciplinary meetings or training, and never performed tasks unrelated to "visits." (*See, e.g.,* Ex. AA, ¶ 13.) Plaintiffs do not challenge the legality of a pure fee-basis compensation system or of many of Gentiva's other compensation methods. Therefore, Clinicians paid by these methods are not similarly situated to Plaintiffs.

Further, because the method of compensation has changed between a fee and salary basis for most Clinicians at different times within the statutory period, each Clinician would have a different statute of limitations period. The Court would be forced to conduct a series of individual inquiries including a determination for each Clinician whether he or she was paid a salary, on an exclusive fee basis (visit rates only), on a fee basis with additional flat rate compensation, on a fee basis with additional hourly compensation, on a fee basis with a minimum salary guarantee, per diem, or as a non-exempt Clinician paid overtime. Once the Court sorted out which Clinicians could even bring a claim under Plaintiffs' theory, it would need

to determine the applicable period of potential liability for each of those Clinicians.

Finally, the Court would have to examine the weekly pay history of each Clinician with a potentially viable claim to determine whether the Clinician was paid separately for non-visit tasks. If so, the Court would have to examine whether those payments were based on a flat or hourly rate, and whether the Clinician was paid for the visit-related tasks for which Plaintiffs claim not to have been paid.[15]

Because different Clinicians in the putative class are all paid in substantially different ways, all of which require their own legal analysis, their claims cannot be analyzed collectively. If conditional certification is granted, mini-trials will ensue. This fact alone prevents conditional certification because the class cannot, by definition, be "similarly situated." *Tucker v. Labor Leasing, Inc.*, 872 F. Supp. 941, 948 (M.D. Fla. 1994) (holding even where clerical positions may be similar to plaintiffs' in responsibilities and tasks performed, lack of evidence showing clerical positions are similarly situated with respect to pay provisions "does not entitle them to similarly situated status"); *Brooks v. A Rainaldi Plumbing, Inc.*, No. 6:06-cv-631, 2006 U.S. Dist. LEXIS 89417, at **6-7 (M.D. Fla. Dec. 8, 2006) (denying conditional certification in part because some employees were paid

---

[15] The inquiry also requires a determination of whether each Clinician understood Gentiva's policy that these tasks were included in the visit rate they were paid.

hourly, some by commission, and some by both methods, and "it [would be] difficult to ascertain a group of individuals that would be [more] dissimilar.").

### c.   Gentiva's Localized Practices Make Collective Treatment Unmanageable

Defendant anticipates that Plaintiffs will offer to re-define the proposed class in an effort to make collective treatment more manageable.  However, there is no class definition that will result in a class of similarly situated individuals, because each Clinician's compensation structure is truly unique.  In addition to the different compensation methods under which Clinicians were paid, Gentiva facilities' localized practices differ significantly.   Indeed, specific managers at certain facilities have negotiated "side deals" with some Clinicians, but not others, for minimum salary guarantees, higher fees for certain clinical services, and different travel rates. (*See* Ex. E, ¶¶ 13-15; Ex. B, ¶ 17; Ex.  F, ¶ 16.)  It is not uncommon to find two Clinicians working in the same job title at the same location with one receiving a minimum salary guarantee while the other does not. (*See* Ex. E, ¶ 9; Ex. B, ¶ 17; *compare* Ex. GG, ¶ 16 (hired on guaranteed salary), *with* Ex. X, ¶ 14 (in same title, without guarantee at same time).)  Given the significant variations in pay, it is impossible for a group of Clinicians to adequately represent other Clinicians with dissimilar and unique work experiences.

Various branches also had different timekeeping systems that impact

27

Plaintiffs' claims and proof of the same.  (*See* Ex. B, ¶ 8; Ex. D, ¶ 8.)  Moreover, individuals who observed work at different branches noted practices varied widely based on the specific branch. (*See, e.g.,* Ex. W, ¶¶ 26-27; Ex. D, ¶ 8.)   And, because Gentiva has grown by acquiring competitors' facilities, many Clinicians work at branches that were previously owned by other agencies, resulting in unique pay practices.  (*See* Ex. D, ¶¶ 6-7; Ex. C, ¶¶ 4-7; Ex. B, ¶¶ 5-7.); *compare* Ex. E, ¶¶ 11, 17, 18, 21 (even after Gentiva acquired the Kalamazoo branch, compensation "side deals" and "arrangements" applied to Clinicians differently).)

Further, Gentiva has been in an active acquisition phase and did not own or operate all of the branches it does today throughout the putative class period. Since May 2007, Gentiva has purchased home health branches in 10 states that were owned and managed by 10 or more distinct corporate entities who were competitors of Gentiva. (*See* Ex. C, ¶ 5.)  These agencies, which were acquired from July 2007 through March 2010, operated independently of Gentiva and utilized different timekeeping systems and policies prior to their acquisition by Gentiva, and within the statutory period.[16]  (*See* Ex. C, ¶¶ 4-7; Ex. B, ¶ 5.)

Such localized pay practices resulting from:  (i) the practice of a specific

---

[16] Clinicians working for entities not owned by Gentiva for the entire statutory period may have a truncated statute of limitations period for that reason.

manager; (ii) varied timekeeping systems; (iii) unique branch practices; and (iv) whether a branch was acquired with a competitor's unique pay scheme in place, militate against conditional certification. *See, e.g., King v. West Corporation*, No. 8:04CV318, 2006 U.S. Dist. LEXIS 3926, at *16 (D. Neb. Jan. 13, 2006) (relying upon *England v. New Century Financial Corporation*, 370 F. Supp. 2d 504, 511 (M.D. La. 2005)) (holding opt-in plaintiffs "subject to different job actions with various decisions by different supervisors made on a decentralized employee-by-employee or team-by-team basis" cannot be certified as collective class); *see also, Heath v. Hard Rock Café Int'l, Inc.*, No. 6:10-CV-344-ORL-28KRS, 2010 U.S. Dist. LEXIS 107440, at **14-16 (M.D. Fla. Aug. 31, 2010) (denying certification where decentralized pay decisions were made by managers at each location); *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 415-17 (D. Or. 2002) (denying conditional certification of FLSA collective action where putative class members were employed by different companies later acquired by the defendant corporation); *Tucker*, 872 F. Supp. at 948 (holding clerical positions not similarly situated when compensation determined by department heads versus managers).

### C.   Plaintiffs Cannot Establish the Requisite Interest Necessary for the Broad Class They Seek

In the Eleventh Circuit, a plaintiff has the burden of proving that others actually desire to opt in to the lawsuit <u>before</u> notice is authorized. *See Dybach v.*

*State of Fla. Dep't of Corrs.*, 942 F. 2d 1562, 1567-68 (11th Cir. 1991).  Plaintiffs cannot rest this case on the argument of counsel (*see Haynes v. Singer Co.,* 696 F.2d 884, 887 (11th Cir. 1983)), nor can they simply testify to their belief that other employees may be interested in joining his lawsuit.  *See Horne*, 279 F. Supp. 2d at 1236-37.  Importantly, conditional certification and notice to potential class members is not appropriate to determine whether there are others who wish to join the lawsuit.  *See Mackenzie v. Kindred Hosp.*, 276 F. Supp. 2d 1211, 1220-21 (M.D. Fla. 2003) (rejecting argument that notice must be provided to determine whether there are others who may desire to join the case).

In this case, the named Plaintiffs seek to represent a class of approximately 10,000 current and former employees employed at more than 390 active and closed locations in 39 states.  Yet, Plaintiffs point to only 40 consents from current and former employees in 20 locations as evidence that this significant number of Gentiva employees "actually desire" to join this litigation.  While these consents show that some of these individuals may wish to participate in this action, they do nothing to show that a broader nationwide class wishes to join the case.  *See, e.g., Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 362-63 (M.D. Ala. 1999).[17]

---

[17] Defendant questions whether these are all informed consents to join, given that at least three opt-in Plaintiffs were non-exempt employees.  *See* Ex. Z, ¶ 6.

In the more than six months since Plaintiffs filed their complaint, their counsel has engaged in aggressive campaign, including solicitations that "pop up" if Gentiva is listed as the employer on a Facebook page and pop-ups on recruiting sites for clinicians. (*See* Ex. B, ¶ 24.)  Plaintiffs' counsel has posted several notices of the lawsuit on at least three websites and encouraged current and former Gentiva employees to join.[18]  To date, despite these efforts, less than one half of one percent of the putative class has filed consent-to-join forms.  As illustrated above, many of the individuals who have filed consent forms have a fundamental misunderstanding concerning their pay structure and are not likely to remain in the case, even if a class is certified.  Further, no declarants even allege that other individuals are interested in joining this action.  (*See* Doc. 57, Pls.' Exs. 1 - 17.)

The putative Opt-ins' consents are insufficient to carry Plaintiffs' burden of proof as to justify nationwide notice to approximately 10,000 current and former employees at more than 390 locations. *See, e.g., Harper*, 185 F.R.D. at 362-63 (affidavits by employees from one location were sufficient only for notice to employees at that location); *King v. CVS/Caremark Corp.*, No. 07-21824, 2007

---

[18] *See* (1) www.martinandjones.com/gentiva-lawsuit; (2) www.martinandjones. com/gentiva-health-wage-hour-class-action; (3) law29.com/pages/practice- areas/overtime-wage-rights/gentiva-wage-case.php; (4) classactionlawsuits inthenews.com/class-action-lawsuits/gentiva-health-services-inc-overtime-wage- hour-class-action-lawsuit-collective-action-filed-on-behalf-of-visiting-nurses.

U.S. Dist. LEXIS 99023, at **25-26 (S.D. Fla. Dec. 12, 2007) (refusing to grant nationwide notice and limiting notice to one geographic region).

Additionally, the fact that a number of current employees have voluntarily provided testimony and rejected Plaintiffs' theory of liability renders this case inappropriate for judicial notice. *See Mackenzie*, 276 F. Supp. 2d at 1220 (evidence that plaintiff's co-workers were not interested in participating in lawsuit supports refusal to facilitate judicial notice); *Rodgers v. CVS Pharm., Inc.,* No. 8:05-CV-770-T-27MSS, 2006 U.S. Dist. LEXIS 23272, at **13-14 (M.D. Fla. Mar. 22, 2006) (same); *see also Mooney v. Advanced Disposal Servs*., No. 3:07-CV-1018, 2008 U.S. Dist. LEXIS 62400, at **8-9 (M.D. Ala. Aug. 14, 2008) (weighing employer's submitted employee affidavits against plaintiffs' evidence).

### D.   This Court Should Reject Plaintiffs' Proposed Notice

If the Court denies Plaintiffs' Motion, then Plaintiffs' corresponding request for the Court to authorize notice should be denied as moot. If, notwithstanding Gentiva's opposition, this Court grants Plaintiffs' Motion and permits Plaintiffs to send Notice of this action to some group of putative class members, the Court should not approve Plaintiffs' proposed Notice of Pending Lawsuit because it lacks the balance, neutrality, and clarity required for a notice from the Court. Indeed, Plaintiffs' proposed Notice is fraught with defects.

For example, with regard to individuals who have not yet joined this action, the maximum possible reach of the limitations period (even for a willful violation of the FLSA under § 255(a)) would extend back only three years from the date of the Court's order—not three years from the date on which Plaintiffs filed their complaint, as Plaintiffs have requested.  The temporal scope of Plaintiffs' request is overly broad. *See, e.g., Lewis v. ASAP Land Express, Inc.*, No. 07-2226-KHV, 2008 U.S. Dist. LEXIS 40768, at **5-6 (D. Kan. May 20, 2008) (limiting notice to those employed within three years of order, rejecting request to extend notice to those employed three years before complaint was filed); *Renfro v. Spartan Computer Servs.*, 243 F.R.D. 431 n.5 (D. Kan. 2007) (same).

In addition, Plaintiffs seek the disclosure of highly private and confidential information about present and former Gentiva employees without their consent, and without any evidence that Plaintiffs need these requested Social Security numbers, dates and locations of employment, and dates of birth of each potential class member in order to facilitate notice.  To the extent any information regarding Gentiva's workforce is relevant to the issues raised by the pleadings, discovery should be limited to names and addresses only. *See, e.g., Powers v. Auto. Computer Servs.*, No. 09-0556-WS-C, 2010 U.S. Dist. LEXIS 19780 n. 5 (S.D. Ala. Mar. 4, 2010) (citing *Lightsey v. Potter*, No. 1:04-CV-3110-ODE, 2006 U.S.

Dist. LEXIS 76617 (N.D. Ga. Oct. 12, 2006) (Social Security numbers need not be provided in discovery in the absence of an explanation of relevance and how such relevance outweighs privacy interests of affected persons)); *Riddle v. SunTrust Bank*, No. 1:08-CV-1411-RWS, 2009 U.S. Dist. LEXIS 89955, at *14 (N.D. Ga. Sept. 29, 2009) (requiring only production of names and last known addresses); *Howard v. Orange Lake Country Club, Inc.*, No. 6:08-CV-400-PCF, 2008 U.S. Dist. LEXIS 112044, at *7 (M.D. Fla. Dec. 17, 2008) (same).  These objections are by no means exhaustive of the defects in Plaintiffs' proposed Notice.

Gentiva opposes Plaintiffs' proposed Notice and respectfully requests the opportunity to be heard with respect to the content of such Notice if the Court elects to conditionally certify a class.[19]

## IV.   CONCLUSION

For the foregoing reasons, Defendant respectfully request that Plaintiffs' Motion and Memorandum in Support of Motion for Preliminary Certification as Collective Action and Issuance of Notice be denied in its entirety.

---

[19] In the interest of judicial economy and efficiency, if the Court grants Plaintiffs' Motion, Gentiva requests the Court direct the Parties to confer regarding the proper content of the Notice as the Parties may resolve or narrow their disputes without Court intervention.  *See, e.g., Scott v. Heartland Home Fin., Inc.*, No. 1:05-CV-2812, 2006 U.S. Dist. LEXIS 28839, at **15-16 (N.D. Ga. May 3, 2006) (noting deficiencies in plaintiff's proposed notice; directing parties to agree on proposed notice within 30 days or submit alternative versions for court consideration).

Respectfully submitted, this 29th day of November, 2010.


s/ Angelo Spinola
Angelo Spinola
Email:  aspinola@littler.com
Georgia Bar No. 672191
s/ Lisa A. Schreter
Georgia Bar No. 629852
Email:  lschreter@littler.com
s/ SoRelle B. Brown
Georgia Bar No. 152450
Email:  sbbrown@littler.com
LITTLER MENDELSON, P.C.
3344 Peachtree Rd., NE, Suite 1500
Atlanta, GA 30326-4803
T : (404) 233-0330
F : (404) 233-2361
Email:  mweber@littler.com

s/ A. Michael Weber
New York Bar No. 1024181
Email: mweber@littler.com
LITTLER MENDELSON, P.C.
900 Third Avenue, 8th Floor
New York, NY  10022
T: (212) 583-9600
F: (212) 832-2719

ATTORNEYS FOR DEFENDANT

# CERTIFICATION

I do hereby certify that this document has been prepared in Times Roman font, 14 point, in compliance with LR 5.1(C) of this Court.

/s/ Angelo Spinola
Angelo Spinola
Georgia Bar No. 672191

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LISA RINDFLEISCH, TIFFANY MELENDEZ, MICHELLE GENTILE, LAURIE BAKER and CHRISTINA NELMES, on behalf of themselves and others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>        Defendant. | CIVIL ACTION NO. 1:10-CV-03288-JEC |

## CERTIFICATE OF SERVICE

I hereby certify that on November 29, 2010, the foregoing **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY CERTIFICATION AS COLLECTIVE ACTION AND ISSUANCE OF NOTICE** was filed electronically through the ECF system, is available for viewing and downloading from the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filings, including Plaintiffs' Counsel of record as follows:

37

Samuel L. Starks
Martin & Jones, PLLC
Atlanta Financial Center
3353 Peachtree Rd., NE, Suite 510
Atlanta, GA 30326

Christine E. Webber
Cohen, Milstein, Sellers & Toll, PLLC
1100 New York Ave., NW,
Suite 500
Washington, DC 20005

Gilda A. Hernandez
H. Forest Horne, Jr.
Martin & Jones, PLLC
410 Glenwood Avenue, Suite 200
Raleigh, NC 27603


/s/ Angelo Spinola
Angelo Spinola
Georgia Bar No. 672191

Firmwide:98756635.1 039495.1018

38