UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LISA RINDFLEISCH, TIFFANY MELENDEZ, MICHAEL GENTILE, LAURIE BAKER, and CHRISTINA NELMES, on behalf of themselves and others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 1:10-cv-3288-SCJ |
| v. | ) ) | |
| GENTIVA HEALTH SERVICES, INC., | ) ) | |
| Defendant. | ) ) | |

## ORDER

THIS MATTER is before the Court on Plaintiffs' Motion and Memorandum in Support of Motion for Preliminary Certification as Collective Action and Issuance of Notice [Doc. No. 57], Defendant's Motion to File Sur-reply [Doc. No. 110], and Defendant's Motion for Oral Argument [Doc. No. 115]. For the reasons given below, Plaintiffs' motion is **GRANTED** and Defendant's motions are **DENIED**.

## BACKGROUND

Plaintiffs bring this action against their former employer, Gentiva Health Services, Inc. ("Gentiva"), and now seek conditional certification to proceed as a

class under 29 U.S.C. § 216(b) of the Fair Labor Standards Act (the "FLSA").

Gentiva provides home healthcare services to patients in thirty-nine states. To provide these services, Gentiva employees registered nurses, physical therapists, and occupational therapists (the "Clinicians") whose duties include "taking care of patients in their home, traveling from one patient's home to the next, charting and coding in the office, and spending several hours a day at home documenting and charting the observation of patients' vitals, medication, education, and recertification based on attending physicians' orders."  (Pl. Mem., Doc. No. 57, at 5-6.)

Gentiva formerly employed Plaintiffs as Clinicians.  In addition to Plaintiffs, roughly forty current and former Clinicians have filed their consent to join as plaintiffs in this action.  In all, Plaintiffs and the consenting Clinicians have worked for Gentiva in at least 12 states.  Plantiffs' and some of these individuals submitted declarations in support of this Motion stating, *inter alia*, that they (a) worked more than 40 hours per week; (b) provided home patient care; (c) worked in their own homes documenting, charting, and coding their observations; (d) received a fee for patient visits; (e) received an hourly rate for activities such as training, and (f) knew other employees who were paid on both a fee basis and hourly basis.

Gentiva pays the majority of its Clinicians, including Plaintiffs, using a pay per-visit plan (the "PPV Plan").  Under the PPV Plan, Clinicians receive a "visit fee"

for each visit to a patient's home.  In order to calculate the visit fees, Gentiva devised a "visit rate" system based upon a "visit unit," whereby a visit unit is worth a preset dollar amount, and each patient visit is worth a defined number of units based on the care provided.  For example, a Clinician's visit rate could be $50.00 per visit unit, and an initial patient visit could be worth 1.5 visit units.  For "non-visit" work — such as conferences, training time, staff meetings, and orientations — the Clinicians receive a "flat rate."  The flat rate is itself a function of visit units and the amount of time dedicated to the non-visit work.  For example, 0.5 - 1.5 hours of training equals 1 visit unit, and 1.75 - 3 hours of training equals 2 visit units.

Gentiva does not pay an overtime premium to its Clinicians, and the Company states that its Clinicians are professional employees who are exempt from the FLSA's overtime compensation requirements.

The crux of Plaintiffs' FLSA claim, and their alleged basis for class certification, is that the PPV Plan abrogates their professional exemption; therefore, Gentiva owes overtime back-wages to Plaintiffs and a class of Clinicians.  Under the FLSA, an employer can pay an exempt professional employee on a "fee basis" without compromising the exemption; however, the exemption is abrogated if an employer pays that employee on both a fee basis and an hourly basis.  29 C.F.R. § 541.605.  Plaintiffs allege that under the PPV Plan, Clinicians are paid on both a fee

basis and hourly basis, which results in an unlawful hybrid plan that abrogates the Clinicians' professional exemption.

Gentiva also uses compensation plans—other than the PPV Plan—to pay a minority of its Clinicians.

**DISCUSSION**

**I.   Conditional Certification of an FLSA Collective Action**

Under 29 U.S.C. § 216(b) of the FLSA, employees can bring a collective action against an employer to recover unpaid overtime wages. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). A collective action is particularly appropriate when it permits the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Unlike collective actions under Federal Rule of Civil Procedure 23, "[p]articipants in a § 216(b) collective action must affirmatively opt into the suit." *Morgan,* 551 F.3d at 1258-59.

In the Eleventh Circuit, district courts use a two-stage process when deciding whether to certify a collective action under § 216(b), and the decision to certify is left to a district court's discretion. *Id.* at 1260. The first stage is the "conditional certification stage" or the "notice stage," during which a plaintiff must show a reasonable basis for his claim that there are similarly situated employees who

should be notified.  *Id.* at 1260-61.   A reasonable basis exists when (1) other employees wish to opt-in, and (2) the potential opt-ins are "similarly situated" with regard to their job requirements and pay provisions.  *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).   During the initial stage, a court need not determine the merits of a plaintiff's complaint or resolve the parties' factual disputes.  *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1099 n.17; *Garner v. G.D. Searle Pharm. & Co.*, 802 F. Supp. 418, 423 n.3, 4 (M.D. Ala. 1991) ("The court is not required, nor would it be well-advised, to adjudicate this case on its merits before resolving the issue of class notification. A primary purpose of notification is to locate other similarly situated employees who may wish to bring their claims to the court's attention before this litigation is resolved."); *Scott v. Heartland Home Fin., Inc.*, No. 1:05-CV-2812, 2006 WL 1209813, at *3 (N.D. Ga. May 3, 2006) (declining to "resolve factual issues or make credibility determinations" at the notice stage).

The Eleventh Circuit describes "the standard for determining similarity, at this initial stage, as 'not particularly stringent,' 'fairly lenient,' 'flexib[le],' 'not heavy,' and 'less stringent than that for joinder under Rule 20(a) or for separate trials under 42(b).'"  *Morgan*, 551 F.3d at 1260 (quoting *Hipp*, 252 F.3d 1208).  "The district court's broad discretion at the notice stage is thus constrained, to some extent, by the leniency of the standard for the exercise of that discretion."  *Morgan*, 551 F.3d at

5

1261.  A court usually looks only to the pleadings and affidavits when deciding whether to conditionally certify an FLSA class.  *Hipp*, at 252 F.3d at 1218.

Upon showing a reasonable basis, the court conditionally certifies a class that can then receive notice of the action.  *Id.* at 1261 n.40.  The second stage occurs towards the close of discovery, and is generally precipitated by an employer's motion for decertification.  *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2008).

### A.   Other Clinicians Wish to Opt-in

There exists a reasonable basis for Plaintiffs' claim that current and former Clinicians would wish to participate in this action: at least forty-three Clinicians, who have worked in at least twelve states, have consented to join this action; and between Plaintiffs and the would-be opt-ins, nearly twenty Clinicians have submitted declarations in support of Plaintiffs' motion.  While case law does not provide a bright line regarding the requisite level of opt-in interest to warrant certification, courts have conditionally certified nationwide classes based on far fewer opt-ins who worked in far fewer states.  *See, e.g., Pendlebury v. Starbucks Coffee Co.*, No. 04-CV-80521, 2005 WL 84500, at *3 (S.D. Fla. Jan. 3, 2005) (finding sufficient interest for a nationwide class based on affidavits by five employees who, between them, worked in four states); *Vaccaro v. Candidates on Demand Group, Inc.*, No.

07-81013-CIV, 2008 WL 1711536, at *7-8 (S.D. Fla. Apr. 10, 2008) (certifying a conditional nationwide class based on three employee declarations and ten opt-ins); *see also Riddle v. SunTrust Bank*, No. 1:08-CV-1411, 2009 WL 3148768, at *3 (N.D. Ga. Sept. 29, 2009) (certifying a conditional class in the Southeastern United States based on three opt-ins).

Gentiva makes two primary counter-arguments, which both lack sufficient basis in law.  First, Gentiva argues, "The putative Opt-ins' consents are insufficient to carry Plaintiffs' burden of proof as to justify nationwide notice to approximately 10,000 current and former employees at more than 390 locations." (Def. Mem., Doc. No. 84, at 31-32.)  Gentiva bases its argument on two cases: *Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358  (M.D. Ala. 1999) and *King v. CVS/Caremark Corp.*, No. 07-21824, 2007 WL 5910244  (S.D. Fla. Dec. 14, 2007).  In *Harper* and *King*, however, the courts limited the class notice to one restaurant location and one district, respectively, because all the opt-ins and plaintiffs worked in that one restaurant or one district; moreover, the plaintiffs in both actions did not present evidence of interested employees beyond the single respective locations.  *Harper,* 185 F.R.D. at 363, 365; *King*, 2007 WL at *24-25.

Gentiva next argues that certification is inappropriate because a number of its current employees attest that they are properly compensated.  However, in the cases

Gentiva cites to support is contention, the pro-employer declarations were in no way dispositive.  (Def. Mem., Doc. No. 84, at 32 (citing *Mackenzie v. Kindred Hosps. E.*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003) (declining to authorize notice because "the plaintiff . . . failed to present evidence of any individual's interest in joining [the] lawsuit. To the contrary, the plaintiff [admitted] that he [did] not know of anyone who wants to join this lawsuit."); *Mooney v. Advanced Disposal Servs.*, No. 3:07-CV-1018, 2008 U.S. Dist. LEXIS 62400, at *5-6 (M.D. Ala. Aug. 14, 2008) (holding that plaintiffs failed to meet the first prong of the notice stage because there were no opt-ins and the plaintiffs did not adequately articulate a FLSA violation); *Rodgers v. CVS Pharm., Inc.*, No. 8:05-CV-770, 2006 U.S. Dist. LEXIS 23272 (M.D. Fla. Mar. 22, 2006) (holding that a plaintiff seeking to represent a class of 250,000 individuals provided insufficient evidence of opt-in interest when only two-opt ins had filed consents and the plaintiff "failed to identify any other employees who desire to join or who have expressed an interest in joining [the] action").)

### B.     Plaintiffs Are Similarly Situated to the Class

Plaintiffs and the Class are similarly situated with respect to their job requirements and pay provisions.

#### 1.     Job Requirements

Plaintiffs have sufficiently alleged and declared that they provide home health

care services and are thus similarly situated with respect to their job requirements; indeed, Gentiva does not argue otherwise in its opposition memorandum, and the company seemingly cedes this point.

### 2.   Pay Provisions

Plaintiffs and the Class are similarly situated with respect to Gentiva's common pay policy: the PPV Plan.  A plaintiff can meet the similarly situated requirement by alleging and declaring that he was subject to a common policy or plan that violated the FLSA.  *Hipp*, at 252 F.3d at 1218-19.

Here, Plaintiffs allege and declare that they were subject to an "illegal hybrid compensation plan" that (a) paid Plaintiffs a flat-fee *and* an hourly-rate, and (b) failed to pay Plaintiffs overtime.  While Plaintiffs' Complaint and declarations do not mention the PPV Plan by name, it is clear to the Court that Plaintiffs refer to the PPV Plan; thus, Plaintiffs have substantially alleged and declared that they were subject to a common illegal policy.

### 3.   Gentiva's Counter-arguments

Gentiva makes a series of counter-arguments, none of which militate against conditional certification—particularly given the "fairly lenient standard" during this initial stage.

Gentiva's first argument is that "Plaintiffs cannot establish an unlawful common policy."  (Def. Mem., Doc. No. 84, at 15.)  This argument is premised on the company's fundamental misunderstanding of Plaintiffs' allegations.  Gentiva argues that its PPV Plan pays a non-hourly rate and compensates employees for all hours worked; therefore, when Plaintiffs allege that they were paid by the hour and were not paid for all their work, Plaintiffs must refer to an ad hoc pay practice rather than the PPV Plan.  Gentiva then contends that Plaintiffs are the only employees subject to such an ad hoc pay practice, and thus Plaintiffs are not similarly situated to the Class.

Gentiva's argument is not convincing.  The compensation plan described in the Complaint and declarations is clearly the common PPV Plan.  The Complaint states:

> Gentiva has maintained a corporate policy of paying its Registered Nurses ("RNs"), Physical Therapists, and Occupational Therapists (collectively, "visiting health care providers") pursuant to an unlawful hybrid compensation plan which includes "per visit" payments for some work and an hourly rate basis for other work. Gentiva used Plaintiffs' "per visit" rate as the hourly rate for paying Plaintiffs their time spent in conferences with their department Manager (also known as a clinician manager), staff meetings, training time, and orientation time.

(Complaint ¶ 3.)  Gentiva, in turn, describes the PPV as the "current primary compensation plan for full-time Clinicians[, which] compensates Clinicians on a fee

basis for their professional services of completing patients visits, and on a flat-rate basis for additional isolated work that is not visit related."  Gentiva admits that the "non-visit" "flat rate" is based upon the number of non-visit *hours worked*; this "flat rate" is what Plaintiffs refer to when they describe the "hourly rate" they receive for non-visit work.   (Def. Mem., Doc. No. 84, at 6, 8.)

Gentiva next argues that if Plaintiffs are "unable to establish a common policy, plan or scheme, Plaintiffs 'must come forward with some identifiable factual nexus which binds the named plaintiffs and potential class members.'"  (Def. Mem., Doc. No. 84, at 20 (citing *Harrison v. Enter. Rent-A-Car, Co.*, No. 98-233-CIV-T-24(a), 1998 U.S. Dist. LEXIS 107440 (M.D. Fla. Aug 31, 2010).)  As described above, Plaintiffs have established a common policy—the PPV Plan—which is the factual nexus between Plaintiffs and the Class. Gentiva does, however, rightly point out that some of its Clinicians are not paid through the PPV Plan, but this fact does not support denying class certification; instead, to the extent that some Clinicians have not been paid under the PPV Plan, those Clinicians will not be part of the Class.

## II.   **The Class and the Notice**

Although Plaintiffs cede to Gentiva's request that the Class be limited to people employed during the period three years prior to the date of this Order through the date of judgment in this action, the Court finds the proposed Class

remains over-broad.  Plaintiffs seek to include Gentiva's speech therapists and medical social workers in the Class.  The Complaint does not, however, mention such workers, and therefore they will not be included in the Class.  Plaintiffs must re-amend their Notice to reflect the limitations as to time and job description discussed in this paragraph.

In order to facilitate notice, Plaintiffs ask that Gentiva be ordered to produce the following within ten days of this order:

> A list, in electronic and importable format, of all persons employed by Gentiva in the United States as visiting healthcare providers or in substantially similar position from three years prior to the date of the commencement of this action to the present, including their first and last name, last-known address, dates of employment, location of employment, social security number and date of birth.

(Pl. Mem., Doc. No. 57, at 19.)  As discussed in reference to the Class, the list cannot reach beyond people employed three years prior to the date of this Order.  In regards to the social security numbers, the Court is concerned with the Class's privacy; therefore, Gentiva may disclose only the last four digits.  Plaintiffs must destroy the portion of the list containing the last four digits after this case is closed and all appeals have been exhausted.  *See Clincy v. Galardi S. Enters.*, No. 1:09-CV-2082, 2010 U.S. Dist. Lexis 22796, at *12 (N.D. Ga. Mar. 12, 2010).  In all other respects, Gentiva must provide the list as requested.

**CONCLUSION**

For the reasons given above, Plaintiffs' Motion and Memorandum in Support of Motion for Preliminary Certification as Collective Action and Issuance of Notice [Doc. No. 57] is **GRANTED**. The court hereby **CONDITIONALLY CERTIFIES** the § 216(b) Class of Clinicians, with the limitations as to time and job description described above. Plaintiffs may notify Gentiva's employees of this action. Gentiva must produce a list of relevant employees within ten days of this order, as described above.

Defendants Motion to File Sur-Reply [Doc. No. 110] and Motion for Oral Argument [Doc. No. 115] are **DENIED** as moot.

**IT IS SO ORDERED,** this 13th day of April, 2011.

s/Steve C. Jones
STEVE C. JONES
UNITED STATES DISTRICT JUDGE