IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LISA RINDFLEISCH, TIFFANY MELENDEZ, MICHAEL GENTILE, LAURIE BAKER, and CHRISTINA NELMES, on behalf of themselves and others similarly situated, | )<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) No. 1:10-cv-3288-SCJ |
| v. | )<br>) |
| GENTIVA HEALTH SERVICES, INC., | )<br>) |
| Defendant. | )<br>) |

### ORDER

THIS MATTER is before the Court on Plaintiffs' Expedited Motion to Quash Defendant's Subpoena *Dueces Tecum* and for Protective Order to Prevent Defendant from Obtaining Plaintiffs' Minor Children's School Records [Doc. No. 141] and Plaintiffs and Defendant's Second Joint Motion for Discovery Conference [Doc. 173]. For reasons giving below, Plaintiffs' Motion for to Quash and for Protective Order [Doc. No. 141] is **MOOT** as to the motion to quash, but **GRANTED** as to the protective order; the Court will, however, revisit the issues raised therein if this action proceeds to the second phase of litigation. As for the parties' Joint Motion, the Court's decision follows below.

1

**BACKGROUND**

Plaintiffs bring this action against their former employer, Gentiva Health Services, Inc. ("Gentiva"). (Compl. ¶ 1.) This action has been conditionally certified as a collective action under Section 16(b) of the Fair Labor Standards Act (the "FLSA"), as such, the five name plaintiffs represent a class of opt-in plaintiffs (collectively "Plaintiffs"). (Order [Doc. No. 167] at 1.) Gentiva provides home healthcare services to patients in thirty-nine states. (Compl. ¶ 20.) Plaintiffs are current and former Gentiva registered nurses, physical therapists, and occupational therapists (the "Clinicians") who provided the home healthcare services. (*See, e.g., id.* at ¶ 24-75.) The Clinicians duties included taking care of patients in their home, traveling from one patient's home to the next, charting and coding in the office, and spending several hours a day at home documenting and charting the observation of patients' vitals, medication, education, and recertification based on attending physicians' orders. (*See, e.g., id.* at ¶ 24-75.)

Gentiva pays the majority of its Clinicians, including Plaintiffs, using a pay per-visit plan (the "PPV Plan"). (2d Joint Mot. for Discovery Conference [Doc. No. 173] ("J. Mot.") 11-12.) Under the PPV Plan, Clinicians receive a "visit fee" for each visit to a patient's home. (*Id.* at 14.) In order to calculate the visit fees, Gentiva devised a "visit rate" system based upon a "visit unit," whereby a visit unit is worth

a preset dollar amount, and each patient visit is worth a defined number of units based on the care provided. (*Id.*) For "non-visit" work—such as conferences, training time, staff meetings, and orientations—the Clinicians receive a "flat rate." (*Id.*) The flat rate is itself a function of visit units and the amount of time dedicated to the non-visit work. (*Id.*)

Gentiva does not pay an overtime premium to its Clinicians, and the Company states that its Clinicians are professional employees who are exempt from the FLSA's overtime compensation requirements. (*Id.* at 13-14.)

The crux of Plaintiffs' FLSA claim is that the PPV Plan abrogates their professional overtime exemption; therefore, Gentiva owes overtime back-wages to Plaintiffs and a class of Clinicians. (*Id.*) Under the FLSA, an employer can pay an exempt professional employee on a "fee basis" without compromising the exemption; however, the exemption is abrogated if an employer pays that employee on both a fee basis and an hourly basis. 29 C.F.R. § 541.605. Plaintiffs allege that under the PPV Plan, Clinicians are paid on both a fee basis and hourly basis, which results in an unlawful hybrid plan that abrogates the Clinicians' professional exemption. (J. Mot. 13-14.) Gentiva also uses compensation plans—other than the PPV Plan—to pay a minority of its Clinicians. (*Id.* at 24.)

The parties are engaged in discovery, which has been a source of contention. First, the parties cannot agree on the scope of discovery relating to the Opt-in Plaintiffs, including (a) the number of Opt-ins subject to oral and written discovery; (b) the length of the depositions; (c) the method of selecting Opt-ins for written discovery; and (d) and the number of interrogatories, document requests, and admissions per Opt-in. (J. Mot. 3-4.) Defendant also asks leave to move the Court to compel and sanction individual plaintiffs who fail to respond to written discovery; and if such measures fail, Defendant wishes to substitute unresponsive Opt-ins with new Opt-ins. (*Id.* at 4.) The parties' respective positions are detailed below:

| **Plaintiffs' Proposals** | **Defendant's Proposals** |
|---|---|
| Depose 1%-2% of Opt-ins; 15 person cap. Parties already agreed to 10 depositions; thus, 25 total depositions. | Depose a minimum of 50% of Opt-ins, or 50 Opt-ins; whichever is greater; 100 person cap. |
| 3 hour depositions, on the record. | 6 hour depositions, on the record. |
| Written discovery of 2%-3% of Opt-ins; 50 person cap. | Written discovery of at least 50 Opt-ins; 100 person cap. |
| Written discovery based on random selection of Opt-ins. | Written discovery of Opt-ins selected by Defendant. |
| 10 interrogatories, document requests, and admissions per Opt-in. | 15 interrogatories, document requests, and admissions per Opt-in. |

(*Id.* at 3-4.)

Second, Defendant has served Plaintiffs with document requests seeking Plaintiffs' tax returns and other financial information, including records or documents relating to charge, debit card, checking, or credit activity, and all cash receipts that are stamped with a time and a date. (*Id.* at 42-44.) Defendant argues that the returns, records, receipts are relevant to the number of hours Plaintiffs worked. (*Id.* at 55.) Plaintiffs have objected to these requests. (*Id.* at 42-44.)

Third, Defendant seeks Plaintiffs' children's school records. (*Id.* at 59.) Defendant argues that the records can help Defendant reconstruct Plaintiffs' work schedules. (*Id.* at 69-70.) Defendant has requested these records from Plaintiffs, (*id.* at 61), and from Plaintiffs' children's schools, by way of third party subpoenas issued through the United States District Court for the Northern District of New York, (Def. Resp. [Doc. No. 168] Ex. A, at 3, 6, 9.) Plaintiffs object to the requests made upon them.(J. Mot. 61.) Plaintiffs also moved the Court (a) to quash the subpoenas served upon the children's schools, and (b) to issue a protective order perverting Defendant from obtaining the school records. (*Id.* at 63.)

**DISCUSSION**

**I.    Bifurcating the Case**

Before resolving the parties' discovery disputes, the Court must ascertain the universe of relevant information subject to discovery: in this case, Plaintiffs wish to

shrink that universe, and Defendant wish to expand it. The Court can itself limit that universe by bifurcating the case, and leaving some issues and some discovery for another day.

Rule 42(b) of the Federal Rules of Civil Procedure allows a court to bifurcate a trial and discovery: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues." Fed. R. Civ. P. 42(b); *Kimberly-Clark Corp. v. James River Corp. of Va.*, 131 F.R.D. 607, 608 (N.D. Ga. 1989). The decision to bifurcate is within the discretion of the court. *Kimberly-Clark Corp.*, 131 F.R.D. at 608. In the context of FLSA actions, courts have bifurcated trials and discovery into a liability phase and a damages phase. *See, e.g. Moreau v. Klevenhagen*, 956 F.2d 516, 522 (5th Cir. 1992) (discussing bifurcation of a case into liability and damages phases); *Harris v. Dorothy L. Sims Registry*, 2001 WL 78448, *1 n.2 (N.D. Ill. 2001) (during the liability phase, limiting discovery to the lawfulness of an exemption under the FLSA). The liability phase of a trial can test whether a defendant's compensation model violated the FLSA, and the damages phase can test whether the plaintiffs "were actually deprived of overtime compensation" because of an unlawful policy. *See Moreau*, 956 F.2d at 522-23.

The Court will bifurcate this matter into a liability phase and damages phase. The liability phase of this case will determine whether the PPV Plan is unlawful

under the FLSA. The damages phase, if necessary, will address whether Plaintiffs were actually deprived of overtime compensation.

The Court notes that this matter has been conditionally certified to proceed as a collective action. Conditional certification was the first of two-stages for determining whether the name Plaintiffs are similarly situated and able to represent the Opt-in Plaintiffs. The second stage generally occurs at the close of discovery, and is precipitated by a defendant's motion to decertify the class. Because the parties are presumably working towards the second stage, they must pursue a course of discovery that will allow the Court to determine whether Plaintiffs are indeed similarly situated. The focus during this second stage is whether the name and Opt-in Plaintiffs were subject to the PPV Plan. The parties may not delve into issues of damages, such as the number of hours Plaintiffs worked.

**II.   A Court's Authority Over the Scope of Discovery**

The issues before the Court stem from the parties' discovery disputes and their request that the Court define the scope discovery. Parties to a suit are generally entitled to "discovery regarding any non-privileged matter that is relevant to any claim or defense." Fed. R. Civ. P. 26(b)(1). While Rule 26(b)(1) seemingly allows for limitless discovery, Rule 26's subsequent provisions provide a district court with broad discretion to curtail a party's access to relevant information. A court must

"limit the frequency or extent of discovery otherwise allowed" under Rule 26 if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). Rule 26 also allows a court to issue a protective order:

> [A] court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery; . . . (C) prescribing a discovery method other than the one selected by the party seeking discovery; [and] . . . (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters.

Fed. R. Civ. P. 26(c)(1). Finally, a court has the power to limit the amount and length of depositions and written discovery. Fed. R. Civ. P. 26(b)(2)(A), 30(a), 30(d)(1); *Geer v. Challenge Fin. Investors Corp.*, 2007 WL 1341774, *4 (D. Kan. May 4, 2007) (describing the burden and expense of depositions, and a court's power to limit the number and length of depositions).

## III. Scope of Opt-in Discovery

The parties could not agree on most aspects relating to Opt-in discovery, and thus leave the Court to decide the number of individuals subject to oral and written discovery, the length of the depositions, the method for selecting the individuals

subject to written discovery, and the amount of written discovery. Defendant also asks this Court to define a procedure for compelling, sanctioning, and substituting Opt-ins who refuse written discovery.

While the Court will consider the parties' proposals for resolving the discovery disputes, the Court's decision to bifurcate has changed the landscape of this case, and the range of discoverable matter during the first phase has been significantly limited. Regarding the first phase of discovery and trial, the main issues will be (1) whether Plaintiffs were subject to the PPV Plan, and (2) whether the PPV Plan violates the FLSA. The first issue is essentially binary: a given plaintiff either participated in the PPV Plan, or not. The second issue is a question of law, and the Court's decision will largely turn on the details of the PPV Plan. In contrast, the second phase, which deals with damages, may require a fact intensive and individualized inquiry into the numbers of hours worked by each individual plaintiff.

There is room to debate the appropriate degree of individualized discovery during each phase, but the parties' joint motion makes several things clear: Defendant has the ability to obtain Plaintiffs' payroll records from the local Gentiva branches, Defendant has a detailed understanding of the branches' pay practices, and Defendant believes that Plaintiffs have a limited understanding of those

practices. Defendant, therefore, can internally generate much of the information it will need to litigate the first phase.

### A. Number of Opt-ins Subject to Oral and Written Discovery

The Court will decide the number of Opt-ins subject to discovery after the close of the opt-in period on or around August 8, 2011. Plaintiffs are ordered to provide this Court with the definitive number of Opt-ins by August 12, 2011. In order to offset the delay in discovery, the discovery period is extended 90 days.

### B. Length of Depositions

Before the case was bifurcated, Plaintiffs requested a three-hour limit for Opt-in depositions, whereas Defendant asked for six. For the purposes of the liability phase, Defendant is allowed four-hours per Opt-in deposition.

### C. Sampling Method for Opt-in Written Discovery

Plaintiffs would like the Opt-in deponents to be randomly selected, while Defendant would like to chose the deponents. The Court orders the parties to randomly select half the deponents, and Defendant shall select the other half. *See Pendlebury v. Starbucks Coffee Co.*, No. 9:04-CV-80521, at *4-5 (S.D. Fl. Jan. 13, 2006) (allowing partially random sampling of opt-in deponents). The Court is aware that there are a number of available random sampling methods, and the Court does not

wish to choose among them. The Court is confident the parties can work together to select an appropriate sampling method.

### D. Amount of Written Discovery

Plaintiffs seek a per Opt-in limit of ten interrogatories, document requests, and admissions; Defendant asks for fifteen. The written discovery Defendant seeks is potentially less burdensome than oral discovery, and fifteen each should not over burden Plaintiffs.

### E. Availability of Sanctions

Defendant asks the Court to set up a framework to compel, sanction, and substitute Opt-ins who refuse to respond to written discovery. In the event an Opt-in fails to respond to written discovery, the parties must consult the Court before Defendant will be allowed file a motion to compel and/or seek sanctions. Depending on the circumstances, it might be appropriate to substitute unresponsive Opt-ins.

## IV. Defendant's Request for Tax Returns, Financial Records, and School Records

At this time, Defendant cannot seek discovery into Plaintiffs' tax returns and other financial records, and Plaintiff's children's school records; such information

is irrelevant to the liability phase of this litigation.[1] The Court, however, will revisit this issue if the parties proceed to the second phase.

"The scope of discovery is governed by Rule 26, which allows 'discovery regarding any matter, not privileged, which is relevant to the subject matter of the pending litigation.'" *Auto-Owners Ins. Co. v. S.E. Floating Docks, Inc.*, 231 F.R.D. 426, 430 (M.D. Fla. 2005) (quoting Fed. R. Civ. P. 26(b)(1)). Information is relevant when it relates to "the subject matter of the pending litigation." Fed. R. Civ. P. 26(b)(1). Relevancy is "to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that bears on, any issue that is or may be in the case.'" *Auto-Owners Ins. Co.*, 231 F.R.D. at 430 (quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)). Information is irrelevant if it is "'not reasonably calculated to lead to discovery of admissible evidence.'" *Auto-Owners Ins. Co.*, 231 F.R.D. at 430 (quoting *Oppenheimer Fund*, 437 U.S. at 351).

Whereas the tax, financial, and school records relate to Plaintiffs' work hours and damages, the records bear little to no relationship to the two issues presented in the first phase of this litigation: whether Plaintiffs were subject to the PPV Plan,

---

[1] Regarding the school records, Plaintiffs seek either a protective order or an order quashing the third party school subpoenas. Because the Court can issue a protective order to prevent Defendant from obtaining the children's school records, the Court will not delve into Plaintiffs' motion to quash. Plaintiffs "clearly have standing to move for a protective order if the subpoenas seek irrelevant information." *Auto-Owners Ins. Co. v. S.E. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005)

and whether the PPV Plan is unlawful. Moreover, if Defendant files a motion to decertify class, the main issue before the Court will be whether the name and Opt-in Plaintiffs were subject to the PPV Plan. The requested records are therefore irrelevant and not subject to discovery during this first phase. Further, regarding the first phase, even if the records are minimally relevant, the value of the records is outweighed by the burden and expense of producing and or sorting through the records. *See* Fed. R. Civ. P. 26(c)(1).

## CONCLUSION

For the reasons given above, (1) this matter is **BIFURCATED** into a liability phase and damages phase; (2) the Court will not yet decide the number of Opt-in Plaintiffs from whom Defendant can obtain discovery; (3) Defendant can depose the Opt-in Plaintiffs for a maximum of four-hours; (4) Defendant can select half the Opt-ins from whom it will obtain written discovery, and the other half shall be randomly selected; (5) Defendant can issue, fifteen interrogatories, requests for documents, and requests for admissions; (6) Defendant must seek leave from the Court before filing a motion to compel and/or for sanctions, and before substituting an unresponsive Opt-in; and Defendant, at this time, cannot seek discovery into Plaintiffs' tax, financial, and children's school records. Plaintiffs' Motion to Quash [Doc. No. 141]

is **DENIED**, but the Motion for Protective Order [Doc. No. 141] is **GRANTED**.

Finally, the discovery period is **EXTENDED** 90 days.

    **IT IS SO ORDERED**, this 26th day of May, 2011.


                        s/Steve C. Jones
                        STEVE C. JONES
                        UNITED STATES DISTRICT JUDGE