ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

JAN 2 0 2012

JAMES N. HATTEN, Clerk
By _____ Deputy Clerk

|  |  |  |
|---|---|---|
| LISA RINDFLEISCH, TIFFANY MELENDEZ, MICHELLE GENTILE, LAURIE BAKER and CHRISTINA NELMES on behalf of himself and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION** |
| vs. | ) ) | |
| GENTIVA HEALTH SERVICES, INC., | ) ) ) | |
| Defendant. | | |

TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 4

      a.  The North Carolina Parties .......................................................... 4

      b.  All Full-Time Gentiva Clinicians Are Classified As Exempt ........................ 5

      c.  Nearly All Full-Time Gentiva Clinicians Are Paid Pursuant to The
          Challenged, Company-wide PPV Policy ....................................................... 6

III.  ARGUMENT ........................................................................................... 11

      A. Substantive Background:  Professional Exemption Under Federal Law ...... 11

      B. Pursuant to § 95-25.6 of the NCWHA, All Employees Must Be Paid
         Their Earned and Accrued Wages on Their Regular Pay Day .................... 13

      C. This Court Should Grant Class Certification of Plaintiffs' North
         Carolina State Law Claims Under Fed. R. Civ. P. 23 ................................... 15

      1. The Class Meets The Criteria of Fed. R. Civ. P. 23(a)(1)-(4) ...................... 16

         a.  _The Class Members Are So Numerous That Joinder Is
             Impracticable ..................................................................................... 17

         b.  There Are Common Questions of Law or Fact ....................................... 18

         c.  The Claims of the Named Plaintiffs Are Typical of a Class ................... 21

         d.  North Carolina Plaintiffs and Their Counsel Will Fairly and
             Adequately Protect the Interests of the Proposed Class .......................... 22

      2. The Proposed Class Meets Fed. R. Civ. P. 23(b)(3) Criteria ...................... 24

         a.  The Predominance Prong of Rule 23(b)(3) Is Satisfied Here ................ 24

         b.  Superiority Prong of Rule 23(b)(3) Is Satisfied ..................................... 30

             i. Interest In The Case .......................................................................... 32

　　　　ii This Court Is a Desirable Forum.........................................................33

　　　　iii Manageability.....................................................................................34

IV.　CONCLUSION .............................................................................................38

# TABLE OF AUTHORITIES

**Cases**

*Allapattah Servs. v. Exxon Corp.,*
  333 F.3d 1248 (11th Cir. 2003) ................................................................29

*Amchem Products, Inc. v. Windsor,*
  521 U.S. 591 (1997).................................................................... 15, 24

*Anderson v. Mt. Clemens Pottery Co.,*
  328 U.S. 680 (1946).................................................................. 34, 35, 36

*Anderson v. Sara Lee Corp.,*
  508 F.3d 181 (4th Cir. 2007)....................................................................2

*Babineau v. Fed. Express Corp.,*
  576 F.3d 1183 (11th Cir. 2009) ........................................................... 24,25

*Bouaphakeo v. Tyson Foods, Inc.,*
  2011 U.S. Dist. LEXIS 95814, at *5, 11 (N.D. Iowa Aug. 25, 2011) ........................28

*Broussard v. Meineke Discount Muffler Shops, Inc.,*
  155 F.3d 331 (4th Cir. 1998)..................................................................22

*Busby v. JRHVW Reality, Inc.,*
  513 F.3d 1314 (11th Cir. 2008) ...............................................................21

*Cannon v. Cherry Hill Toyota,*
  184 F.R.D. 540 (D.N.J. 1998) ................................................................32

*Chiang v. Venman,*
  213 F.R.D. 256 (D. VI. 2003) .................................................................37

*Cox v. American Cast Iron Pipe Co.,*
  784 F.2d 1546 (11th Cir. 1986)...............................................................17

*Creely v. HCR ManorCare, Inc.,*
  2011 U.S. Dist. LEXIS 77170, at *4-5 (N.D. Ohio July 1, 2011)..............................28

*DeLeon-Granados v. Eller & Sons Trees, Inc.,*
  497 F.3d 1214 (11th Cir. 2007)..................................................................2

*Donovan v. Bel-Loc Diner,*
  780 F.2d 1113 (4th Cir. 1985).................................................................35

*Eisen v. Carlisle & Jacquelin,*
   391 F.2d 555 (2nd Cir. 1968), *vacated on other grounds,*
   417 U.S. 156 (1974)..................................................................................15,23

*General Telephone Company of the Southwest v. Falcon,*
   457 U.S. 147 (1982)........................................................................................18

*Guerrero v. Pro Klean, Inc.,*
   No. 09 CVS 29529 (Mecklenburg Co. Super. Ct.)....................................30

*Gulf Oil Co. v. Bernard,*
   452 U.S. 89 (1981) .......................................................................................34

*Hanlon v. Chrysler Corp.,*
   150 F.3d 1011 (9th Cir. 1998).......................................................................32

*Harris v. Smithfield Packing Co. Inc.,*
   4:09-CV-41-H, 2010 WL 4877144 (E.D.N.C. Nov. 24, 2010)...............14,22,23,28,31

*Haywood v. Barnes,*
   109 F.R.D. 568 (E.D.N.C. 1986).....................................................................22

*Horne v. Smithfield Packing Co. Inc.,*
   5:09-CV-42-H 1, 2011 WL 4443034 (E.D.N.C. Sept. 23, 2011)............13,22,23,28,31

*In Re Piedmont Office Trust Sec. Litig.,*
   264 F.R.D. 693 (N.D. Ga. 2010) ....................................................................29

*In Re Prudential Ins. Co. of America Sales Practices Litigation,*
   962 F. Supp. 450 (D.N.J. 1997), *aff'd,* 148 F.3d 283 (3rd Cir. 1998),
   cert. denied, 525 U.S. 1114 (1999)..............................................................16,32

*In Re Towers Financial Corp. Noteholders Litig.,*
   177 F.R.D. 167 (S.D.N.Y. 1997).....................................................................32

*Kilgo v. Bowman Transp., Inc.,*
   789 F.2d 859 (11th Cir. 1986).......................................................................17

*Kirkpatrick v. J.C. Bradford & Co.,*
   827 F.2d 718 (11th Cir. 1987).........................................................................23

*Klay v. Humana, Inc.,*
   382 F.3d 1241 (11th Cir. 2004).............................................................24,29,30

*Klinghoffer Bros. Realty Corp.,*
   285 F.2d 487 (1960) .................................................................................14

*Kornberg v. Carnival Cruise Lines, Inc.,*
   741 F.2d 1332 (11th Cir. 1984)..............................................................22

*Lessard v. Metrop. Life Ins .Co.,*
   103 F.R.D. 608 (D. Me. 1984) ...............................................................16

*Martinez-Hernandez v. Butterball, Inc.,*
   578 F.Supp.2d 816 (E.D.N.C. Sept. 2, 2008)..........................................14

*Martinez-Hernandez v. Butterball, Inc.,*
   No.: 5:07-CV-174, 2008 WL 8658452 (E.D.N.C. Nov. 14, 2008) ...........14

*McLaurin v. Prestage Foods, Inc.,*
   271 F.R.D. 465 (E.D.N.C. 2010)......................................................*passim*

*Messner v. Northshore Univ. Health System,*
   No. 10-2514 (7th Cir. Jan. 13, 2012) ......................................................16

*Mitchell v. Smithfield Packing Co. Inc.,*
   4:08-CV-182-H, 2010 WL 4877054 (E.D.N.C. Nov. 24, 2010)..........13,22,23,28,31

*Murray v. Auslander,*
   244 F.3d 807 (11th Cir. 2001) ................................................................19

*Nobles v. State Farm Mut. Auto. Ins. Co.,*
   2011 U.S. Dist. LEXIS 95379, at *13 (W.D. Mo. Aug. 25, 2011) ...........28

*Phillips Petroleum v. Shutts,*
   472 U.S. 797 (1985).................................................................................30

*Piazza v. Ebsco, Indus., Inc.,*
   273 F.3d 1341 (11th Cir. 2001)...............................................................21

*Ramos v. SimplexGrinnell, LP,*
   2011 U.S. Dist. LEXIS 65593, at *15-17 (E.D.N.Y. June 21, 2011).........28

*Reich v. IBP, Inc.,*
   820 F.Supp. 1315 (D. Kan. 1993), *aff'd.* 38 F.3d 1123 (10th Cir. 1994) ..................35

*Reich v. Waldbaum, Inc.,*
   833 F.Supp. 1037 (S.D.N.Y. 1993), *aff'd.* 52 F.3d 35 (2d Cir.1995)........35

*Reiter v. Sonontone Corp.*,
    442 U.S. 330 (1979)..................................................................................15

*Romero v. Mountaire Farms, Inc.*,
    796 F.Supp.2d 700 (E.D.N.C. 2011) ......................................*passim*

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Services, Inc.*,
    601 F.3d 1159 (11th Cir. 2010)................................................................30

*Scientific-Atlanta, Inc. Secs. Litig.*,
    571 F.Supp. 2d 1315 (N.D. Ga. 2007)....................................................29

*Scott v. Aetna Services*,
    210 F.R.D. 261 (D. Sonn. 2002)..............................................................37

*Shaw v. Toshiba*,
    91 F.Supp.2d 942 (E.D. Tex. 2000)........................................................37

*Stewart v. Winter*,
    669 F.2d 328 (5th Cir. 1982)...................................................................18

*Troy v. Kehe Food Distributors, Inc.*,
    No. C09-0785JLR, 2011 WL 4480172, *10 (W.D. Wash. Sept. 26, 2011) ...............29

*United States Parole Commission v. Geraghty*,
    445 U.S. 388 (1980)................................................................................16

*Upshaw v. Georgia Catalog Sales, Inc.*,
    206 F.R.D. 694 (N.D. Ga. 2002) ............................................................37

*Vega v. T-Mobile USA, Inc.*,
    564 F.3d 1256 (11th Cir. 2009)............................................... 15,16,19,21

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (U.S. 2011)................................................19,20,26,27,28

*Walsh v. Pittsburgh Press Co.*,
    160 F.R.D. 527 (W.D. Pa. 1994)............................................................16

*Warnell v. Ford Motor Co.*,
    189 F.R.D. 383 (N.D. Ill. 1999) ............................................................37

*Williams v. Mohawk Indus., Inc.*,
    568 F.3d 1350 (11th Cir. 2009)..............................................................18

*Wilson v. United Int'l Investigative Services 401(k) Sav. Plan,*
  CIV.A. 01-CV-6126, 2002 WL 734339 (E.D. Pa. Apr. 23, 2002)............................37

*Youngblood v. Family Dollar Stores, Inc.,*
  No. 09 Civ. 3176 (RMB), 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011).....................28

**Statutes**
29 C.F.R. § 541.300......................................................................................12

29 C.F.R. § 541.605......................................................................................12

29 U.S.C. § 201 ...........................................................................................1

29 U.S.C. § 207(a)(1) ...................................................................................12

29 U.S.C. § 213(a)(1) ...................................................................................12

29 U.S.C. § 218(a)........................................................................................14

13 NCAC 12.0103 ........................................................................................35

N.C. Gen. Stat. §95-25.1................................................................................1

N.C. Gen. Stat. § 95-25.22(a1).........................................................................20

N.C. Gen. Stat. § 95-25.14(b)(4)......................................................................12

N.C. Gen. Stat. § 95-25.6.........................................................................*passim*

**Other Authorities**
Advisory Committee Notes to 1966 amendments to Rule 23, 39 F.R.D. 69 (1966) ........33

**Rules**
Fed. R. Civ. P. 23 ................................................................................*passim*

## I.   INTRODUCTION

Named Plaintiffs are Registered Nurses who were classified by Defendant Gentiva as exempt from overtime payment under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*  Plaintiffs allege that they, and similarly situated employees, were mis-classified by Gentiva in violation of the FLSA, and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. 95-25.1, *et seq.*  This Court previously granted Plaintiffs' Conditional Certification to proceed with their FLSA claims as a collective action under Section 216(b) of the FLSA. (Order dated April 13, 2011, Dkt. No. 167).

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs now move for certification of a North Carolina class to pursue wage and hour claims under the NCWHA.  Plaintiffs also request that the Court authorize Notice to all putative class members who are North Carolina residents of the pending NCWHA action, so that those current and former North Carolina employees will have the opportunity to exercise their rights under the NCWHA by remaining class

members or opting out of the North Carolina class action.[1]  Class certification is

warranted in this case because the North Carolina named Plaintiffs and other North

Carolina Registered Nurses, Physical Therapists, and Occupational Therapists,

(collectively "Clinicians") have been uniformly classified as exempt from overtime

and paid pursuant to a compensation practice that abrogates such exemption.[2]

These individuals were subject to the same unlawful compensation policy that

failed to pay them for all of their accrued wages on their regular pay day, including

their regular rate and overtime wages for work performed in excess of forty (40)

hours per week. (*See* Compl. ¶ 13.)  Specifically, by misclassifying Clinicians as

exempt from overtime under the FLSA, Defendant has failed to pay its North

Carolina Clinicians for all of their wages due on their regular pay day pursuant to

---

[1] It is well-established that the FLSA does not preempt the North Carolina claims made here, and courts will exercise supplemental jurisdiction and certify hybrid actions that include both an opt-in FLSA collective claim and an opt-out wage and hour Rule 23 class action, such as the lawsuit before this Court.  *See DeLeon-Granados v. Eller & Sons Trees, Inc.*, 497 F.3d 1214 (11th Cir. 2007); *see also Romero v. Mountaire Farms, Inc.,* 796 F.Supp.2d 700 (E.D.N.C. June 9, 2011) ("[A]s such, these claims are not preempted by the FLSA.) (citing *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 194 (4th Cir. 2007); *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465 (E.D.N.C. Nov. 2010) ("[m]any other courts, including ones in this district have exercised supplemental jurisdiction over state wage claims in actions involving FLSA claims.")

[2] See Ex. 1, Plaintiffs' Proposed Notice to North Carolina Rule 23 Proposed Class Members.

N.C. Gen. Stat. § 95-25.6.   Plaintiffs seek certification of the following North Carolina class:

> All Registered Nurses, Physical Therapists, or Occupational Therapists who were, are or will be employed by Defendant Gentiva Health Services in the state of North Carolina from two years prior to the date of commencement of this action through the date of judgment in this action, who were paid pursuant to the PPV policy and neither properly compensated for all of their hours worked nor paid time and one-half for hours in excess of forty on their regular pay day.

*See* Plaintiffs' Complaint, ¶ 13.

While Defendant may dispute Plaintiffs and putative class members' claim that its compensation practice violates the FLSA and the NCWHA, Defendant cannot dispute that its uniform classification of Clinicians and common compensation practice which affects all North Carolina Clinicians paid under the PPV system renders this matter naturally suitable for class action treatment because Plaintiffs' claims can be resolved on a class-wide basis. Therefore, for the reasons set forth in the argument below, this Court should certify this matter as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

## II.    **FACTUAL BACKGROUND**

### a. **The North Carolina Parties**

Defendant Gentiva operates a home health care business providing services to patients in 39 states, including North Carolina.[3]  Gentiva has 32 branch locations in the state of North Carolina.[4]  All Gentiva branches in North Carolina are part of the "Carolinas" region and operate under the leadership of the same regional operations managers.[5]

Named Plaintiff Laurie Baker worked for Defendant Gentiva until November 2009 as an RN Case Manager or Clinician in Pollocksville, North Carolina.[6]  Named Plaintiff Christina Nelmes worked for Defendant Gentiva until

---

[3] Compl. (Dkt. No. 1) ¶ 20; Baker Decl. at ¶¶ 2-3 (Dkt. No. 57, Ex. 3); ) Nelmes Decl. ¶¶ 2-3 (Dkt. No. 57, Ex. 4); Callahan Decl. ¶¶ 2-3 (Dkt. No. 57, Ex. 6); Curtis Decl. ¶¶ 2-3 (Dkt. No. 57, Ex. 7);  Vargas Decl. ¶¶ 2-3 (Dkt. No. 57, Ex. 17); *see also* Dkt Nos. 14, 46, 196, 198, 199, 201, 208, 209, 210, 213, 215, 216, 218, 221, 225, 227, 228, 229, 233, and 237.

[4]    *See* Gentiva Resp. to Plaintiffs' Second Set of Interrogatories, Attachment A (attached as Ex. 2).

[5]    *See* Gentiva Resp. to Plaintiffs' Second Set of Interrogatories, Attachment A (attached ex Ex. 2).

[6] Compl. ¶ 54; *see also* (Dkt. No. 57, Ex. 3) Baker Decl. ¶ 3.

February 2010, as an RN Case Manager or Clinician in Pollocksville, North Carolina.[7]

Approximately 1,130 individuals worked full-time as Clinicians in North Carolina and were paid pursuant to the same Pay Per Visit ("PPV") compensation practice during the three (3) years prior to conditional certification of the FLSA class in April 2011.[8]

### b. All Full-Time Gentiva Clinicians Are Classified As Exempt

Gentiva classifies all of its full-time Registered Nurses, Occupational Therapists, and Physical Therapists, including those in North Carolina, as exempt from the FLSA's overtime requirements.[9]  Gentiva does not evaluate whether such clinicians are exempt at the individual, branch, or regional level; rather, it classifies all Gentiva clinicians in these positions as exempt based on a single, centralized decision.[10]  As explained in the Gentiva guide "Pay Practices of Gentiva Health Services," whether a position is exempt is determined by "[t]he Compensation

---

[7] Compl. ¶ 65; *see also* (Dkt. No. 57, Ex. 4) Nelmes Decl. ¶ 3.

[8] *See* Notice List produced in Response to April 13, 2011 Order (attached as Ex. 3).

[9] *See* Deposition of Kevin Marrazzo ("Marrazzo Dep.") at 21:12-24:14 (attached as Ex. 4).

[10] *See Id.*

Department and Central Support Melville."[11]   Gentiva's in-house counsel Kevin Marrazzo testified that Gentiva's Human Resources, Compensation, and Legal departments are the Central Support departments responsible for the exemption decision.[12]

### c. Nearly All Full-Time Gentiva Clinicians Are Paid Pursuant To The Challenged, Company-wide PPV Policy

Plaintiffs Baker and Nelmes were compensated by Defendant Gentiva in accordance with a company-wide practice that does not comport with either the salary basis or the fee basis requirements of the FLSA.[13]   As described by Gentiva's Vice President of Compensation, the company maintains a corporate policy of paying its Clinicians pursuant to a "primary compensation plan" that compensates clinicians on a flat visit rate for completing patient visits, and on a separate "flat rate" basis for additional isolated work that is not visit-related." (Declaration of John Karr ("Karr Decl."), attached hereto as Ex. 5, at ¶ 5.)[14]

---

[11]   Marrazzo Dep., Ex. 4 at 34:22-35:5.

[12]   Marrazzo Dep., at 34:21-35:24.

[13]   *See* Baker Decl. ¶ 5 (Dkt. No. 57, Ex. 3) (describing pay practice); Nelmes Decl. ¶ 3 (Dkt. No. 57, Ex. 4) (same).

[14]   *See* Deposition of John Karr ("Karr Dep.") at 29:21-30:3, attached hereto as Ex. 5.

This compensation practice which is known as Pay-Per-Visit ("PPV"), is Gentiva's primary compensation plan and is used to compensate the vast majority of Gentiva Clinicians around the country, including Clinicians working in North Carolina branch offices.[15]   Indeed, in July 2010, Gentiva's CEO Tony Strange told shareholders that approximately 88% of clinicians were paid on a per visit basis, and that the percentage of clinicians paid on this basis one year earlier was in the "high 70's, low 80's."[16]   Further, according to the list of potential class members provided by Gentiva for Notice purposes in May 2011, 1,130 Clinicians who worked in Gentiva's North Carolina locations were paid pursuant to the PPV practice during the previous three years. *See supra.*

The PPV compensation policy is set forth in Gentiva's company manuals and guidebooks.  Gentiva maintains a Pay Practices Manual, which describes only a single method of payment for exempt Registered Nurses, Occupational

---

[15]   *See* Compl. ¶ 20; Baker Decl. at ¶¶ 2-3 (Dkt. No. 57, Ex. 3); Nelmes Decl. at ¶¶ 2-3 (Dkt. No. 57, Ex. 4); Callahan Decl. at ¶¶ 2-3 (Dkt. No. 57, Ex. 6; Curtis Decl. at ¶¶ 2-3 (Dkt. No. 57, Ex. 7); Vargas Decl. ¶¶ 2-3 (Dkt. No. 57, Ex. 17);

[16]   *See* Dkt. No. Ex. 93 ("Earnings Conference Call") at p. 11 to Plaintiffs' Reply Brief      in      Support      of      Preliminary      Certification; http://files.shareholder.com/downloads/GTIV

Therapists, and Physical Therapists:  the pay per visit method.[17]  The manual "provides detailed instructions for properly compensating exempt clinicians,"[18] and does not provide any discretion to branches to pay Clinicians in a manner other than PPV.[19]  Rather, branch managers would have to request an exception from HR to deviate from the practice.[20]  The PPV policy is also described in greater detail in a document titled "Pay Per Visit Program:  A Recruitment and Retention Toolkit" ("Toolkit").  (Ex. 10 to Marrazzo Dep.)  The Toolkit was "designed to provide all the information" managers "need to successfully implement the [PPV] Program," *id.* at 4, and has been provided as instruction material to Gentiva branches along with similar materials since at least May 2007.[21]

As described in the Toolkit and confirmed in Gentiva's other documents and the testimony of its Rule 30(b)(6) designees, the PPV Plan, though characterized as

---

[17]  *See* Karr Decl., at ¶ 5, Ex. 6; *see also* Marrazzo Dep. at 36:5-37:3 (confirming that Gentiva's Pay Practice manual does not describe any other methods of compensating exempt caregivers).

[18]  Karr Decl. at ¶ 6.

[19]  Marrazzo Dep. at 52:10-53:17.

[20]  Marrazzo Dep. at 52:10-53:17.

[21]  Karr Decl. at ¶ 7; Marrazzo Dep. at 138:8-14.

a "fee basis" plan, in fact compensates Clinicians based on actual or estimated time worked.[22]

Gentiva uses Plaintiffs' "routine" visit rate(s) as a proxy for their hourly rate to pay Clinicians for various types of patient-related visits. The Toolkit explains that routine visit rates are set by dividing a Clinicians' targeted annual salary by 52 weeks, and then by dividing by the 30 units of work a Full-Time Clinician is expected to complete in a forty hour week. (Toolkit at 16-17). Visit types such as Start of Care visits that require more work, also referred to as "modified units." (Toolkit at 18.) These modified unit multiples correspond to the average number of hours required to complete a visit of each type.[23]   Second, Gentiva utilizes Plaintiffs' "routine" visit rate as a proxy for an hourly rate in paying Plaintiffs for their time spent engaged in conferences with their department manager, staff meetings, training time, and orientation time.[24]   Gentiva compensates PPV

---

[22] *See* Karr Dep. at 99:4-12; *see also* Ex. 7, Modified Units Document; *see also* Ex. 8, "Salary v. Pay Per Visit" Document.

[23] *See* Ex. 7, Modified Units Doc.; *see also* Ex. 9, Memo: Standardized Pay Practices.

[24] *See* Karr Dep. at 82:5-23; *see also* Deposition of Terry Blevins ("Blevins Dep."), at 184:16-187:4, attached hereto as Ex. 10; *see also* Declaration of Kathleen Shanahan ("Shanahan Decl.") attached hereto as Ex. 11 at ¶ 14-15; *see also*

Clinicians for these tasks on a flat-rate designed to compensate Clinicians for their lost productivity associated with not conducting field visits. Karr Decl. at ¶ 17, where the "flat rate" is set solely "based on the time associated with the non-visit related activity." Toolkit at 18. Specifically, the flat rate is calculated according to the following schedule:

| | |
|---|---|
| 0.5 – 1.5 hr. | = 1 visit unit |
| 1.75 – 3 hrs. | = 2 visit units |
| 3.25 – 4 hrs. | = 3 visit units |
| 4.45 – 5 hrs. | = 3.5 visit units |
| 5.25 - 6 hrs. | = 4 visit units |
| 6.24 - 7 hrs. | = 5 visit units |
| 7.25 – 8 hrs. | = 6 visit units |

*Id.* at 8.[25]

Because Gentiva's PPV practice compensates Clinicians based on actual or estimated time worked, the practice abrogates the professional exemption under the FLSA and Clinicians who are paid pursuant to the PPV Plan are therefore entitled to overtime for hours worked over forty per week under both the FLSA as part of their unpaid wages under the NCWHA.

---

Declaration of Marlene Harrell ("Harrell Decl.") attached hereto as Ex. 12 at ¶ 13-14.

[25] *See also* Karr Dep. at 78:14-80:18; *see also* Shanahan Decl. at ¶ 15.

Gentiva uniformly classifies its Registered Nurses, Occupational Therapists, and Physical Therapists, including those in North Carolina, as exempt and pays them pursuant to this incompatible PPV practice.  All North Carolina Clinicians paid on a per visit basis have thus incurred damages for lost wages, including but not limited to, lost overtime wages and regular-rate wages, and will continue to suffer damages by not being compensated.  *See* Compl. ¶¶ 12; 93-103; 121-130.  Plaintiffs' North Carolina class claims seek to recover wages for that uncompensated time.  *Id.*   Accordingly, based upon the foregoing facts and the legal arguments set forth below, this Court should certify a Rule 23 class in this matter.

## III.   ARGUMENT

### A. Substantive Background:  Professional Exemption Under Federal Law.

The principle issue on the merits in the case is whether Gentiva's Clinicians are exempt from federal overtime under the professional exemption.  Although the Court need not and should not attempt to resolve this issue now in the context of this Motion for Class Certification, the Court's consideration of this Motion may be assisted by a brief overview of this exemption.  The FLSA generally requires

employees to be paid at time and one-half their regular-rate of pay for all hours worked over forty (40) in a week. 29 U.S.C. § 207(a)(1). There are limited exceptions to this rule. The relevant exception here is the professional exemption, which exempts from overtime requirements individuals employed who meet a duties test and a compensation test. 29 U.S.C. § 213(a)(1). To qualify for this exemption under a compensation test, an employee must be compensated on either a salary basis or a "fee basis." 29 C.F.R. §§ 541.300 and 541.605. Under § 541.605, the C.F.R. states the following:

> Administrative and professional employees may be paid on a fee basis, rather than on a salary basis. An employee will be considered to be paid on a "fee basis" within the meaning of these regulations if the employee is paid an agreed sum for a single job *regardless of the time required for its completion. . .payments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis*.

*Id.* The NCWHA expressly incorporates the FLSA's exemptions. Therefore, no separate legal analysis under North Carolina law is necessary. *See* § 95-25.14(b)(4).

**B. Pursuant to § 95-25.6 of the NCWHA, All Employees Must Be Paid Their Earned And Accrued Wages on Their Regular Pay Day.**

The NCWHA "pay day" statute § 95-25.6 provides a mechanism for the recovery of unpaid wages other *than* unpaid *minimum* wages. N.C. Gen. Stat. § 95-25.6 provides that:

> "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday. Pay periods may be daily, weekly, bi-weekly, semi-monthly, or monthly. Wages based upon bonuses, commissions, or other forms of calculations may be paid as infrequently as annually if prescribed in advance."

*Id.* Under this section, employees may recover any unpaid hours worked as well as unpaid regular-rate and overtime wages of one and one-half times the regular rate for hours worked over forty (40) that have not been paid on their regular pay day. *See Romero*, 796 F.Supp.2d 700, 710 (E.D.N.C June 9, 2011);[26] *McLaurin*, 271 F.R.D. at 472; *Mitchell v. Smithfield Packing Company Inc.*, No.: 4:08-CV-182-H, slip op. at 6 (E.D.N.C. Sept. 23, 2011); *Horne v. Smithfield Packing Company*, Inc., No.: 4:09-CV-42(H), slip op. at 6 (E.D.N.C. Sept. 23, 2011);

---

[26] Martin & Jones - Co-Counsel for the Plaintiffs' in the instant case, also represent plaintiffs in *Romero*, *McLaurin*, *Mitchell*, *Horne*, and *Harris* where the courts have certified plaintiffs' state law claims for both unpaid hours worked, regular-rate and overtime wages not paid on their regular pay day, in addition to their FLSA claims.

*Harris v. Smithfield Packing Company, Inc.*, No.: 4:09-CV-41(H) slip op. at 6 (E.D.N.C. at Sept. 23, 2011); *see Martinez-Hernandez v. Butterball, Inc.,* 578 F.Supp.2d 816 (E.D.N.C. Sept. 2, 2008); *see also Martinez-Hernandez v. Butterball, Inc.,* No.: 5:07-CV-174, 2008 WL 8658452 (E.D.N.C. Nov. 14, 2008).

On the other hand, the FLSA, while it provides a general rule that overtime wages should be paid on an employees' regular pay day, it provides an exception. This provision states the following:

> When the correct amount of overtime compensation cannot be determined until sometime after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable.

Because there is no such applicable exception for the *time of payment* for overtime wages under the NCWHA, and there is no provision with respect to the mandatory payment of regular-rate wages, (other than in overtime workweeks under the FLSA)[27], the NCWHA provides more stringent protections to its North Carolina employees.  Therefore, these claims under the NCWHA are separate, distinct, and are not preempted by the FLSA.[28]

---

[27] *See U.S. v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487(1960)

[28] 29 U.S.C. §218(a) of the FLSA states:  No provisions of the chapter or of any order thereunder shall excuse noncompliance with any federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage

**C.   This Court Should Grant Class Certification Of Plaintiffs' North Carolina State Law Claims Under Fed. R. Civ. P. 23.**

In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court observed that the drafters of Rule 23 had predominately in mind the vindication of rights in groups of people who individually would be without effective strength to bring their opponent into court. *Amchem*, U.S. at 617.   Courts have broad discretion in determining whether the elements of Rule 23(a) have been satisfied. *See Reiter v. Sonotone Corp.*, 442 U.S. 330 (1979) (holding that district courts are vested with broad power and discretion in matters of certification and management of class action.

To fulfill the requirements for class certification, plaintiffs must first show compliance with Rule 23(a) of the Federal Rules of Civil Procedure.   Plaintiffs must therefore provide the court with sufficient information to assess numerosity, commonality, typicality, and adequacy of representation. *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009).   Once plaintiffs have met the requirements of Rule 23(a), they must show that class certification is proper under one of the subdivisions of Rule 23(b). *Amchem Prods.*, 521 U.S. at 591; *Eisen*,

---

established under this chapter or a maximum work week lower than the maximum work week established under this chapter.....

417 U.S. at 161; *Vega*, 564 F.3d at 1265. Plaintiffs need not prove that all class members have been damages or have suffered uniform damages in order to certify a class. *See Messner v. Northshore Univ. HealthSystem*, No. 10-2514 (7th Cir. Jan. 13, 2012).

Once the Court is satisfied that the requirements are met, certification is a matter of right. *United States Parole Commission v. Geraghty*, 445 U.S. 388, 403 (1980).

### 1. The Class Meets The Criteria of Fed. R. Civ. P. 23(a)(1)-(4).[29]

Plaintiffs' proposed class of North Carolina Clinicians satisfies each of the elements of Rule 23(a): (1) It is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims of the named Plaintiffs are typical of the

---

[29] "In general, Rule 23(a) should be liberally construed in order not to undermine the policies underlying the class action rule." *Lessard v. Metrop. Life Ins .Co.*, 103 F.R.D. 608, 610 (D. Me. 1984). *See also In Re Prudential Ins. Co. of America Sales Practices Litigation*, 962 F. Supp. 450, 508 (D.N.J. 1997), *aff'd,* 148 F.3d 283 (3rd Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) ("In a borderline case, the court should allow class certification. . ."; *Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527, 529 (W.D. Pa. 1994).

claims of the class as a whole ("typicality"); and (4) the representative Plaintiffs will fairly and adequately protect the interests of the class ("adequacy").

### a. The Class Members Are So Numerous That Joinder Is Impracticable.

While there is no numerical requirement for satisfying the numerosity requirement, the Eleventh Circuit has generally recognized that a class of more than forty (40) class members is sufficient to satisfy the numerosity requirement of Rule 23(a)(1). *See Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (generally more than forty (40) class members is adequate); *see also Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986) (affirming certification of a class of "at least thirty-one individual class members"); *McLaurin*, 271 F.R.D. at 475; ("Given that the Fourth Circuit has held that a class of eighteen (18) people alone is sufficient to satisfy the numerosity requirement, the court rejects *Prestage's* arguments and concludes that the numerosity requirement has been met.")

Here, the proposed class consists of approximately 1,130 individuals who were employed by Gentiva as Clinicians in North Carolina during the class period and paid pursuant to the PPV practice, including 117 North Carolina Clinicians

who have already opted into the FLSA action.[30]   These employees are dispersed throughout the state, and joinder of their many claims would be impractical. Moreover, as a practical matter, the claims of many Clinicians, particularly those who only worked for Gentiva for a relatively short period of time, would not be large enough to support individual actions, even with the possibility of attorneys' fees shifting on statutory wage claims. The size of the class and these other factors make joinder impracticable.

### b.   There Are Common Questions Of Law Or Fact.

Fed. R. Civ. P. 23(a)(2) requires a determination that there are "questions of law or fact, common to the class" to unite the potential plaintiffs in this case. *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 158 n 13 (1982).   The Eleventh Circuit has interpreted the 23(a)(2) requirement of "questions or law or fact common to the class" to require "that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, (*Mohawk 3*), 568 F.3d 1350 (11th Cir. 2009) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)); *see also*

---

[30] *See* Dkt. Nos. 14, 46, 196, 198, 199, 201, 208, 209, 210, 213, 215, 216, 218, 221, 225, 227, 228, 229, 233, and 237; *see also* Dkt. No. 57- Exhs. 3, 4, 6, 7 and 17, (North Carolina Opt-in Plaintiffs' Declarations).

*Walmart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (U.S. 2011) (commonality is determined by "the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (stating the commonality terms on whether the case will "involve issues that are susceptible to class-wide proof"). Courts have also emphasized that the commonality requirement is not a difficult one, referring to it as a "relatively light burden," *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1257 (11th Cir. 2009) ("commonality does not require that all the questions of law and fact raised by the dispute be common").

The questions of law and fact in this case are common to the class and predominate over any questions affecting only individual class members. Here, this test is satisfied by several overarching factual and legal questions common to the class, including:

- whether Defendant Gentiva failed to pay Plaintiffs and members of the proposed class all unpaid wages, when due, for all hours worked at the regular-rate in violation of NCWHA § 95-25.6;

- whether Plaintiffs are properly classified as non-exempt under the FLSA and thus are owed overtime by Gentiva for hours worked in excess of forty (40) per week;

- whether Defendant Gentiva refused to pay Plaintiffs and members of the proposed class regular-rate and overtime wages for hours worked in excess of forty (40) per week on their regular payday in violation of the NCWHA § 95-25.6;

- whether Defendant Gentiva's refusal to pay such compensation is in violation of the NCWHA and the common law of North Carolina; and

- whether Rule 23 class members may obtain liquidated damages and pre-judgment interest pursuant to § 95-25.22(a1) of the NCWHA.

Because these questions are central to all of Plaintiffs' claims, and are susceptible to common proof and resolution, the commonality requirement is satisfied. *Wal-Mart Stores*, 131 S. Ct. at 2551; *Murray*, 244 F.3d at 811. In addition, the class members are bound by common issues of fact because Gentiva has admitted that the majority of Clinicians in North Carolina (and, indeed, throughout the country) have been paid according to the same primary

compensation plan, the PPV plan. *See supra*.[31]   Moreover, except on those occasions when branch management requests an exception from compensating Clinicians on a PPV basis, all branch offices are subject to the restrictions and guidelines imposed by Gentiva's centralized corporate regime, and therefore, these facts are common to the class for purposes of Rule 23.[32]

### c.   The Claims Of The Named Plaintiffs Are Typical Of A Class.

"Typicality measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Busby v. JRHVW Reality, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) (quotations and internal citations omitted).   Although typicality and commonality may be related, "[t]raditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiff in relation to the class." *Vega*, 564 F.3d at 1275 (quoting *Piazza v. Ebsco, Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001)).   The typicality requirement of Rule 23(a)(3) is established "if the claims and defenses of the class and the class

---

[31] *See* Dkt. No. Ex. 93 ("Earnings Conference Call") at p. 11 to Plaintiffs' Reply Brief in Support of Preliminary Certification; http://files.shareholder.com/downloads/GTIV; *see also* Karr Dep. at 29:6-30:7.
[32] Marrazzo Dep. at 52:10-53:17.

representatives arrive from the same event or pattern or practice and are based on

the same legal theory." *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332,

1337 (11th Cir. 1984); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155

F.3d 331, 344 (4th Cir. 1998); *Haywood*, 109 F.R.D. at 578; *Romero*, 796 F.Supp.

at 714; *see also McLaurin*, 271 F.R.D. at 475; *Mitchell,* No. 4:08-CV-182-(H), slip

op. at 3 ; *Horne*, No.:5:09-CV-42-H, slip op. at 3; *Harris,* No.:4:09-CV-41-(H) slip

op. at 3.

Here, as Gentiva admits, the named Plaintiffs and proposed class members

were compensated according to the same primary compensation practice, the PPV

plan.[33]   Like all other class members, they were classified as exempt and not paid

overtime because of this misclassification.  They suffered the same injury as other

class members for the same reason, and therefore are typical for purposes of Rule

23.

> **d.  North Carolina Plaintiffs And Their Counsel Will Fairly And**
> **Adequately Protect The Interests Of the Proposed Class.**

The final requirement of Rule 23(a) is that the representative parties will

fairly and adequately protect the interests of the class. The adequacy of

---

[33] *See* Karr Dep. 29:6-20.

representation requirements of Rule 23(a)(4) are satisfied where: (1) the representatives' claims are sufficiently inter-related and not antagonistic with the class' claims; and (2) counsel for the plaintiffs possess the qualifications and experience necessary to conduct the litigation and protect the interest of the absent class members. *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2nd Cir. 1968), *vacated on other grounds,* 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974); *Kirkpatrick v. JC Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *Romero*, 796 F.Supp. at 709; *see also McLaurin*, 271 F.R.D. at 746; *Mitchell,* No. 4:08-CV-182-(H), slip op. at 3 ; *Horne*, No.:5:09-CV-42-H, slip op. at 3; *Harris,* No.:4:09-CV-41-(H) slip op. at 3.  The second requirement is generally satisfied by showing that counsel has significant experience representing Rule 23 classes and handling the types of claims presented, and has adequately advanced the case thus far and will commit sufficient resources to continued representation.

There is no conflict or antagonistic interests of the North Carolina named Plaintiffs to the interests of any other putative class members.  The named North Carolina Plaintiffs have the same interests as all other proposed class members: recovering the wages earned and owed for all uncompensated work performed.  The Plaintiffs are prepared to prosecute the action vigorously on behalf of the

class. There is nothing in the personal background or situations of either representative that would give rise to a conflict or interfere with vigorous prosecution. Additionally, Plaintiffs' counsel are trial attorneys with considerable experience in litigating wage and hour complex class actions in various states and nationwide. Plaintiffs and their counsel will fairly and adequately represent the interests of the North Carolina class.[34] Thus, Rule 23(a)(4) is satisfied.

### 2. The Proposed Class Meets Fed. R. Civ. P. 23(b)(3) Criteria.

In addition to the Fed. R. Civ. P. 23(a)(1)-(4) prerequisites, the Plaintiffs must satisfy at least one of the three Rule 23(b) criteria. *Amchem*, 521 U.S. at 623.

### a. The Predominance Prong of Rule 23(b)(3) Is Satisfied Here.

To satisfy the predominance requirement of Rule 23(b)(3), Plaintiffs must show that one or more common issues predominate over individual issues. "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quoting *Klay*, 382 F.3d at 1255) (internal quotations

---

[34] *See* Declarations of Gilda "Jill" Hernandez, Esq. and Christine Webber, Esq. as Exs. 13 and 14 respectively.

and alterations omitted).   Here, the determination of whether Clinicians are properly exempt from the overtime requirements of the FLSA, or whether, as Plaintiffs contend, Gentiva's PPV policy is inconsistent with denial of overtime pay, and hence whether Gentiva has violated North Carolina law requiring payment of wages due, will have such a direct impact on establishing liability for every class member.   Because Plaintiffs challenge a common policy, officially promulgated by Gentiva and followed throughout North Carolina, the determination of whether that policy is lawful or not will be the same for each class member who is subject to that policy.   Thus, there is no risk here that "the resolution [an] overarching common issue [will] break[] down into an unmanageable variety of individual legal and factual issues." *Babineau*, 576 F.3d at 1191 (quoting *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996).

The common questions of law and fact in this action are best resolved by a class action as opposed to the filing and prosecution of hundreds, of other lawsuits by individual employees. The common questions of fact and law in this litigation are centered around Gentiva's primary and uniform compensation practice and the

guidelines placed upon branch offices to across the country, including North Carolina to follow such guidelines. [35]

Common questions of law also predominate because the same operative facts underlying Defendant Gentiva's uniform misclassification of all Clinicians as exempt from overtime results in Gentiva's failure to compensate named Plaintiffs and proposed class members all of their wages earned and accrued, including regular and overtime wages, on their regular pay day pursuant to N.C. Gen. Stat. § 95-25.6.   These common questions of law and fact form the basis of North Carolina Plaintiffs' claims for a violation of the NCWHA.   These claims are a common remedy for all of Gentiva's current and former Clinicians seeking payment of wages for all work performed.

Given Gentiva's reliance upon *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) with respect to discovery issues, Defendant will undoubtedly argue that the decision impacts the Rule 23 analysis here.   The case is entirely inapposite, however.   The plaintiffs in *Dukes* challenged Wal-Mart's policy of giving thousands of managers discretion to make subjective pay and promotion decisions,

---

[35] *See* Karr Dep. at 29:6-20; *see also* Karr Decl. at ¶ 5; *see also* Shanahan Decl. ¶ 11.

alleging that managers disproportionately exercised such discretion in favor of men, resulting in a pattern or practice of discrimination in violation of Title VII. *Dukes*, 131 S. Ct. at 2548. The Supreme Court reversed the district court's certification of a class, holding that plaintiffs had failed to satisfy Rule 23(a)'s commonality requirement because the allegation of local discretion over pay and promotion decisions is "just the opposite of a uniform employment practice that would provide the commonality needed for a class action; it is a policy against having uniform employment practices." *Dukes*, 131 S. Ct. at 2554. Therefore, the Court held that plaintiffs could only establish that their claims were "common" if they could "glue" together the decisions of these managers by demonstrating that a "common mode of exercising discretion pervades the company." *Dukes*, 131 S. Ct. at 2554-55.

Here, in contrast, Plaintiffs challenge the legality of the centrally developed, company-wide PPV Plan because the policy set forth by corporate headquarters dictates that employees be compensated on the basis of time estimates, in violation of the FLSA professional exemption. *See infra pp. 4-9.* Plaintiffs' claims do not depend on individual decisions by, or the subjective intent of, local managers, and there is no question that collective proceedings regarding whether the PPV Plan

abrogates the professional exemption have "the capacity to generate common answers apt to drive" the litigation. *See Dukes*, 131 S. Ct. at 2555. Indeed, many courts have already concluded that *Dukes* is inapplicable to similar wage and hour cases based on such fundamental factual differences.[36]

---

[36] *See, e.g. Mitchell*, No. 4:08-CV-182-(H); slip op. at 3; *Horne*, No. 5:09-CV-42(H) slip op. at 3; *Harris*, No. 4:09-CV-41(H) slip op. at 3; *Ramos v. SimplexGrinnell LP*, 2011 U.S. Dist. LEXIS 65593, at *15-17, (E.D.N.Y. June 21, 2011) (finding that "[t]he relevant facts and circumstances in *Wal-Mart* have little bearing in prevailing wage case because "plaintiffs have come forward with significant proof that defendant routinely failed to account for labor performed on public works projects and pay prevailing wages for covered work" and "there is little discretion or subjective judgment in determining an employee's right to be paid prevailing wages"); *Creely v. HCR ManorCare, Inc.*, 2011 U.S. Dist. LEXIS 77170, at *4-5 (N.D. Ohio July 1, 2011) ("[P]laintiffs' claims in *Dukes* are fundamentally different from those in this case. In *Dukes*, resolution of the plaintiffs'. . . claims depended on the reasons for each particular employment decision. By contrast, the FLSA claims before this Court do not require an examination of the subjective intent behind millions of individual employment decisions; rather, the crux. . .is whether the company-wide policies, as implemented, violated Plaintiffs' statutory rights."); *Nobles v. State Farm Mut. Auto. Ins. Co.*, 2011 U.S. Dist. LEXIS 95379, at *13 (W.D. Mo. Aug. 25, 2011) ("Because Plaintiffs' claim is based on the written policy itself, not any deviant actions by State Farm Mutual's managers, this case does not give rise to the concerns express by the Supreme Court in *Dukes*."); *Bouaphakeo v. Tyson Foods, Inc.*, 2011 U.S. Dist. LEXIS 95814, at *5, 11 (N.D. Iowa Aug. 25, 2011) (finding the "holdings and analysis [in *Dukes*] largely inapplicable" in wage and hour case that "involves a company-wide compensation policy" because "[i]f it is determined that the donning and doffing and/or sanitizing of the PPE at issue constitutes "work" for which plaintiffs are entitled to compensation, then such a determination is applicable to all such situated plaintiff"); *Youngblood v. Family Dollar Stores,*

Finally, the possibility of individual variation in damages does not destroy predominance. "The presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003); *see also Klay*, 382 F.3d at 1273 (explaining that "[i]t is primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification."); *In re Piedmont Office Trust Sec. Litig.*, 264 F.R.D. 693, 701 (N.D. Ga. 2010) (reasoning that although the damages issues could not be presented on a class-wide basis, "given the predominance of common issues related to liability, the individualized issues as to damages is insufficient to preclude class certification"); *In re Scientific-Atlanta, Inc. Secs. Litig,*, 571 F.Supp. 2d 1315, 1342 (N.D. Ga. 2007) (concluding that common

---

*Inc.*, No. 09 Civ. 3176 (RMB), 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) (certifying class composed of 1,560 store managers at 333 stores in New York who were denied overtime pay as they were classified and paid pursuant to common corporate policy); *Troy v. Kehe Food Distributors, Inc.*, No. C09-0785JLR, 2011 WL 4480172, *10 (W.D. Wash. Sept. 26, 2011) (certifying class and collective action of employees of a distributor who were denied overtime pay (common questions such as whether certain position should be considered sales under Washington law, whether the defendant's failure to pay overtime wages was willful, and whether Rule 23 class members could obtain exemplary damages in addition to damages under the FLSA, predominated).

issues of liability predominated over individualized damages concerns, and citing cases certifying classes despite individualized damages issues).   Most importantly, because this Court held that bifurcation of liability and damages is appropriate in this case, it is unnecessary to determine the suitability of damages for class treatment at this point, and certification can be decided here without regard to the issue of damages. *See* Dkt. No. 194.

### b.   The Superiority Prong of Rule 23(b)(3) Is Satisfied.

As a threshold matter, a principal concern regarding "superiority" is whether, in the absence of a class action, most members of the class will be deprived of any legal redress because their claims are relatively modest compared to the cost of litigation. *Phillips Petroleum v. Shutts*, 472 U.S. 797, 809 (1985).   Additionally, "the second prong of Rule 23(b)(3) requires a court to determine whether 'a class action is superior to other available  methods for fairly and efficiently adjudicating the controversy.'" (*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Services, Inc.,* 601 F.3d 1159, 1183 (11th Cir. 2010) (quoting Fed. R. Civ. P. 23(b)(3)).   "The focus of this analysis is on 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'" *Id.* at 1184 (quoting *Klay*, 382 F.3d at 1269); *McLaurin*, 271

F.R.D. at 479; *see also Mountaire Farms*, 796 F.Supp.2d at 716; *Mitchell,* No. 4:08-CV-182-(H), slip op. at 3 ; *Horne*, No.:5:09-CV-42-H, slip op. at 3; *Harris,* No.:4:09-CV-41-(H) slip op. at 3.

Here, even if the putative class members were inclined to pursue individual actions, there is no doubt this would be more burdensome on the class members, and it would likely be a less efficient use of judicial resources. *Romero*, 796 F.Supp.2d at 716. The relatively small damages available also would make it likely that a number of Plaintiffs would not bring the matter and individual actions for reasons other than the merits of their claims. This is particularly so because many of the class members still work for Gentiva, and it would take a brave Plaintiff to sue his or her current employer individually with the expectation of a relatively minor return. Not surprisingly, therefore, no other actions are currently pending in North Carolina or have been brought on the class claims in this case.

As set forth below, the additional non-exclusive factors of Rule 23(b) prove the superiority of class action, *i.e.*, the interest of members of the class in separate

litigation, the extent of any pending litigation, any potential management difficulties, <u>all</u> weigh in favor of certifying the proposed class.[37]

### i.   Interest In The Case

This factor addresses whether the interests of most Clinicians in conducting separate lawsuits is so different as to require denial of class certification.  In the instant case, Clinicians all seek a common finding that Defendant Gentiva has violated the NCWHA, specifically N.C. Gen. Stat. § 95-25.6 under the pay day statute for failing to pay them for all work performed on their regular pay day.  There is no conflict within the class, and there are no individual aspects to render the parties within the class adverse to one another.

Considerations relevant to this inquiry include:

- The degree of cohesion among class members;

- Whether the amounts at stake for individuals … [are] so small that separate suits would be impracticable; and

- The extent to which "separate suits would impose … [burdens] on the party opposing the class, or upon the courts calendar …"

---

[37] The factors "pertinent" to class certification under Rule 23(b)(3) are non-exclusive. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998); *Cannon v. Cherry Hill Toyota*, 184 F.R.D. 540, 546 (D.N.J. 1998); *In Re Towers Financial Corp. Noteholders Litig.*, 177 F.R.D. 167, 171 (S.D.N.Y. 1997); *In Re Prudential Ins. Co. of America Sales Practices Litigation, 962 F.*Supp. 450, 522 (D. N.J. 1997);

*See A*dvisory Committee Notes to 1966 amendments to Rule 23, 39 F.R.D. 69, 104 (1966).

The class is estimated to encompass over a thousand members consisting of Gentiva's current and former Clinicians who have worked in various North Carolina branch offices. Most of the Clinicians in this case have little incentive to prosecute their claims against Gentiva, which is a billion dollar corporation, in an individual action. Additionally, the high cost of litigating each claim separately, including the likely need for expert testimony on time keeping issues, will serve as a substantial obstacle to pursuing individual litigation. *See Shutts*, 472 U.S. at 808-10. In short, the vast majority of North Carolina Gentiva Clinicians would have no ability to prosecute separate lawsuits against Gentiva.

    ii. **This Court Is A Desirable Forum**

Rule 23(b) also concerns itself with the desirability or undesirability of concentrating a litigation of the claims in a particular forum. The United States District Court for the Northern District, Atlanta Division, of Georgia will provide an excellent forum for this matter because Defendant's corporate headquarters is located within this district and this court can simultaneously oversee the aspects of both plaintiffs' FLSA claims and North Carolina claims within the relevant time

period. Because individual adjudications could take up the dockets of several judges within this Court or the North Carolina courts, there is no reason to further burden overloaded court systems when one adjudication will simply and efficiently satisfy the claims of hundreds, if not thousands of Clinicians. Moreover, because the central question being adjudicated in the FLSA collective action before this Court – whether Plaintiffs were improperly classified as exempt from overtime – is also common to Plaintiffs' NCWHA claims, it is preferable to try all of the claims together in a single proceeding. The Court must seek to effectuate the policy expressed in Rule 23 in favor of having all similar cases "disposed of where feasible, in a single lawsuit." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 n.11 (1981).

### iii. **Manageability**

Finally, the class action approach in this case is eminently manageable. The liability case will be proven principally by representative testimony and the testimony of Defendant's own managers. In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688 (1946), the Supreme Court held that employers should not benefit by failing to keep accurate records of hours worked and, therefore, employees can prove liability and damages in unpaid overtime cases based on a

reasonable approximation. Following *Mt. Clemens*, wage and hour claims have routinely been proven on a collective and class action basis using representative evidence. *See Guerrero v. Pro Klean, Inc.*, No. 09 CVS 29529 (Mecklenburg Co. Super. Ct. Dec. 9, 2011);[38] e.g., *Riech v. Waldbaum, Inc.*, 833 F.Supp. 1037 (S.D.N.Y. 1993), *aff'd.* 52 F.3d 35 (2d Cir.1995) (off-the-clock work at 20 supermarkets); *Reich v. IBP, Inc.*, 820 F.Supp. 1315, 1318 (D. Kan. 1993), *aff'd.* 38 F.3d 1123 (10th Cir. 1994) (liability for 23,580 slaughter house workers at 11 plants decided in 7 trial days). "Courts have frequently awarded damages to non-testifying employees based on the representative testimony of a small percentage of employees." *Donovan v. Bel-Loc Diner*, 780 F.2d 1113, 1115-16 (4th Cir. 1985).

In North Carolina, Martin & Jones, co-counsel, for the Plaintiffs in this case, have tried an NCWHA class action case to verdict on the basis of representative evidence in just the past six weeks. In *Guerrero*, Judge Beverly T. Beal, instructed the jury on the propriety of proof by representative evidence in a NCWHA case. [39]

---

[38] *See* 13 NCAC 12.0103 – Federal Law as a guide.

[39] *See* Ex. 17 (*Guerrero* jury instruction).

Therefore, Rule 23 class actions can be tried on the basis of representative testimony.

Several considerations support the use of representative evidence as an appropriate and manageable approach to the class action here. First, the size of the class is small, with homogenous job duties and compensation. Second, the relevant issues – the applicability of the professional exemption and pay day statute under the NCWHA are more prone to common proof and less subject to individual variation than many other wage and hour cases.

Third, it is clear that both the FLSA collective and Rule 23 class action in this case may proceed on the basis of representative evidence under *Mt. Clemens*. Thus, judicial economy would be served by trying the claims together on a similar evidentiary basis.

Additionally, the claims in this action are particularly suited for class action treatment because hundreds, if not thousands of Gentiva's Clinicians have been similarly affected, and Gentiva possesses all of the information concerning the identity of the North Carolina class members and the precise information as to how and to what extent the members of the class have been damaged.

Furthermore, discovery relating to Gentiva's PPV compensation policy in North Carolina should be resolved in a single action, thus obviating the need for each class member to conduct duplicative discovery concerning Defendant's policies and practices; good or bad faith defenses in the implementation of these policies; and the poor use of judicial resources by separately litigating the same evidence and legal issues of Gentiva's alleged violations of the NCWHA in multiple proceedings. *See Chiang v. Venman*, 213 F.R.D. 256, 263 (D. VI. 2003); *Upshaw v. Georgia Catalog Sales, Inc.*, 206 F.R.D. 694, 701-02 (N.D. Ga. 2002); *Warnell v. Ford Motor Co.*, 189 F.R.D. 383, 388 (N.D. Ill. 1999). Further, forced to proceed one by one, many Plaintiffs may be deterred by the costs and risks entailed in suing their employer.[40]

Assuming, *arguendo*, for purposes of this Motion, that Defendant Gentiva has violated the NCWHA, specifically, N.C. Gen. Stat. § 95-25.6 by misclassifying its Clinicians as exempt, and not paying them for all of their earned and accrued

---

[40]   *See Upshaw*, 206 F.R.D. at 701-02; *Scott v. Aetna Services*, 210 F.R.D. 261, 267-68 (D. Sonn. 2002); *Warnell*, 189 F.R.D. at 388; *CF. Deposit Guar. Nat.'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980) (class action superior where economically infeasible for claimants to successfully file individual suits); *Wilson v. United Int'l Investigative Services 401(k) Sav. Plan,* CIV.A. 01-CV-6126, 2002 WL 734339, *7 (E.D. Pa. Apr. 23, 2002); *Shaw v. Toshiba*, 91 F.Supp.2d 942, 952 (E.D. Tex. 2000).

wages for all time worked, including time and one-half for hours over forty (40) on their regular pay day, the proof of causation and liability on this PPV compensation practice are not different – they are identical.  Defendant Gentiva may assert commonly applicable affirmative defenses – but cannot assert individual ones.  No individual proofs are necessary for damages because damages can be calculated by a simple formula using all of the relevant information including, name, social security number, rates of pay, and date and times worked included in Gentiva's business records and computer systems.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully move this Court to grant their Motion for Class Certification of an NCWHA class action, and direct that appropriate notice be sent to the potential class members.

Respectfully submitted this _____ day of January, 2012.

_____

Sam S. Starks, GASB #  676515
Gilda A. Hernandez, NCSB # 36812
H. Forest Horne, Jr., NCSB # 16678
MARTIN & JONES, PLLC
410 Glenwood Ave.
Suite 200
Raleigh, NC 27603
Phone:  (919) 821-0005
Fax:  (919) 863-6083
sls@m-j.com
gah@m-j.com
hgh@m-j.com

Christine E. Webber
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, NW
Suite 500
Washington, DC  20005
Phone: (202) 408-4600
Fax:  (202) 408-4699
cwebber@cohenmilstein.com

**ATTORNEYS FOR PLAINTIFFS**

## FONT CERTIFICATION

The undersigned hereby certifies that this pleading complies with the font requirements of LR. 5.1B because the document has been prepared in Times New Roman, 14 point.

## CERTIFICATE OF SERVICE

I do hereby certify that on this 20th day of January, 2012, I served a true and correct copy of **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION** in the above-captioned action upon all other parties to this case by first class U.S. Mail and hand-delivery, addressed as follows:

LITTLER MENDELSON, P.C.
Michael A. Spinola
Lisa A. Schreter
Littler Mendelson, PC
3344 Peachtree Road, NE
Suite 1500
Atlanta, GA  30326-4803
Tel. (404) 233-0330
Fax  (404) 233-2361
lschreter@littler.com
aspinola@littler.com

Michael Weber, Esq.
Littler Mendelson, PC
900 Third Avenue
New York, New York 10022-3298
(212) 583-9600
mweber@littler.com

*Counsel for Defendant*

_____
Sam L. Starks