IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| LISA RINDFLEISCH, TIFFANY MELENDEZ, MICHAEL GENTILE, LAURIE BAKER, and CHRISTINA NELMES, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GENTIVA HEALTH SERVICES, INC., <br><br> Defendant. | CIVIL ACTION FILE <br> NO. 1:10-CV-3288-SCJ |

## ORDER

THIS MATTER is before the Court on Plaintiffs' Motion to Certify Class [Doc. No. 272]. For reasons given below, Plaintiffs' motion is **DENIED**.

**BACKGROUND**

Plaintiffs bring this action against their former employer, Gentiva Health Services, Inc. ("Gentiva") [Doc. No. 1, ¶ 1]. This matter has been conditionally certified as a collective action under section 16(b) of the Fair Labor Standards Act (the "FLSA"), as such, the five name plaintiffs represent a class of opt-in plaintiffs [Doc. No. 167, p. 1]. Two of the five named plaintiffs, Laurie Baker and Christina Nelmes (collectively, " Plaintiffs"), worked for Gentiva in North Carolina [Doc. No.

1

1]. In addition to their FLSA claim, Plaintiffs filed a claim under the North Carolina Wage and Hour Act ("the NCWHA") and hope to proceed on behalf of a class under Rule 23 of the Federal Rules of Civil Procedure [Doc. No. 1].

Gentiva provides home healthcare services to patients in thirty-nine states [*id.* at ¶ 20]. Plaintiffs and the other Clinicians are former and current Gentiva registered nurses, physical therapists, and occupational therapists (the "Clinicians") who provided the home healthcare services in the state of North Carolina [*see, e.g., id.* at ¶ 24-75].

Gentiva pays the majority of its Clinicians, including Plaintiffs, using a pay per-visit plan (the "PPV Plan") [Doc. No.272-1, p. 15]. There may be roughly 1,130 Clinicians who are subject to the PPV Plan. Under the PPV Plan, Clinicians are paid a flat fee for each visit to a patient's home [*id.* at pp. 16-17]. In order to calculate the visit fees, Gentiva devised a "visit rate" system based upon a "visit unit," whereby a visit unit is worth a preset dollar amount, and each patient visit is worth a defined number of units based on the care provided [*id.* at p. 17]. For "non-visit" work—such as conferences, training time, staff meetings, and orientations— Clinicians receive a "flat rate" [*id.* at p. 17-18]. Under the model PPV Plan, the flat rate is itself a function of visit units and the amount of time dedicated to the non-visit work [*id.*].

Because Plaintiffs' NCWHA depends on proof of an FLSA violation, the Court will discuss the PPV Plan in terms of the FLSA. Pursuant to the PPV Plan, Gentiva treats the Clinicians as professional employees who are exempt from the FLSA's overtime compensation requirements [*id.* at p. 13]. Plaintiffs allege that the that the PPV Plan abrogates their professional overtime exemption; therefore, Gentiva owes overtime back-wages (and possibly minium wages) to Plaintiffs and a class of the Clinicians [*id.* at pp. 10, 18]. Under the FLSA, an employer can pay an exempt professional employee on a "fee basis" without compromising the exemption; however, the exemption is abrogated if an employer pays that employee on both a fee basis and an hourly basis. 29 C.F.R. § 541.605. Plaintiffs allege that through the PPV Plan, Clinicians are paid on both a fee basis and hourly basis, which results in an unlawful hybrid plan that abrogates the Clinicians' professional exemption [Doc. No. 272, p. 10]. Gentiva also uses compensation plans—other than the PPV Plan—to pay a minority of its Clinicians [*id.* at p. 27].

Plaintiffs' NCWHA claim—which is the subject of this motion for class certification—alleges that "by misclassifying Clinicians as exempt from overtime under the FLSA, [Gentiva] has failed to pay its North Carolina Clinicians for all of their wages due on their regular pay day pursuant to N.C. Gen. Stat. § 95-25.6 "

[Doc. No. 272-1, pp. 10-11]. Plaintiffs now seek certification of the following class pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> All Registered Nurses, Physical Therapists, or Occupational Therapists who were, are or will be employed by Defendant Gentiva Health Services in the state of North Carolina from two years prior to the date of commencement of this action through the date of judgment in this action, who were paid pursuant to the PPV policy and neither properly compensated for all of their hours worked nor paid time and one-half for hours in excess of forty on their regular pay day.

[Doc. No. 272-1, p. 11].

**DISCUSSION**

A member of a class may file suit as a representative party of behalf of all class members if she meets the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the prongs in Rule 23(b). Fed. R. Civ. P. 23. In this case, Plaintiffs wish to pursue an action under Rule 23(b)(3) [Doc. No. 272-1, p. 11]. Because Plaintiffs' motion for class certification fails to satisfy Rule 23(b)(3), the Court need not address Rule 23(a).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P.23(b)(3). Respectively, these are referred to as the "predominance" and "superiority" requirements. *Babineau v. Fed. Exp. Corp.*, 576

4

F.3d 1183, 1190 (11th Cir. 2009). The Court will first address Plaintiffs' inability to show predominance and then discuss why Rule 23 is an inferior mechanism for remedying the alleged FLSA violations.

## I. Predominance

"Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Babineau*, 576 F.3d at 1191 (internal quotation marks omitted). Conversely, common issues do not predominate when "as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996). "In other words, the issues in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Nichols v. Mobile Bd. of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir. 1982).

A fundamental issue in this action that must be addressed through generalized proof, lest this issue overwhelm the class action, is the degree to which the Clinicians worked more than forty hours per week. Plaintiffs' NCWHA claim, which they wish to certify as a Rule 23 class action, is contingent upon a finding that

Gentiva misclassified the Clinicians as exempt under the FLSA and thereby failed to pay all the wages owed on payday [Doc. No. 272-1, p. 10]. Essentially, Plaintiffs must show that each Rule 23 class member is owed backwages under the FLSA. A plaintiff who wishes to prove that under the FLSA she is entitled to unpaid minimum wages or unpaid overtime compensation bears the burden of showing that she performed work for which she was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87, 66 S. Ct. 1187, 1192, 90 L. Ed. 1515 (1946). With few exceptions,in a claim for unpaid overtime wages, liability and damages are predicated on the plaintiff showing that she worked more than forty hours per week. *See id.* And to the extent a plaintiff's minimum-wage claim depends on enlarging the hourly denominator used to divide her weekly wage, liability hinges upon the number of hours she worked. *See id.*

The hours worked by the Clinicians are in dispute. Plaintiffs argue that Gentiva's time records do not adequately reflect the Clinicians' work hours and therefore the hours can be proven "as a matter of just and reasonable inference" [Doc. No. 351, p. 23 (quoting *Mt. Clemens*, 328 U.S. at 687, 66 S. Ct. at 1192)]. Plaintiffs propose using the following to establish such an inference: Gentiva's productivity requirements, Gentiva's rules requiring employees to average forty hours a week to maintain their benefits, evidence of the time generally needed to do

their work, and "other common evidence" [Doc. No. 351, p. 23]. It appears that much of Plaintiffs' evidence will be in the form of "representative testimony" [*see, e.g.*, *id.* at p. 35]. Gentiva, in turn, asserts that if the trier of fact must look beyond the time records to determine the hours worked (and liability), then individual issues will predominate. Thus, the issue is whether "representative testimony" regarding work hours serves as generalized proof in a Rule 23(b)(3) class action, not just in a section 216(b) collective action. For, if each class member's hours cannot be established through representative testimony, individual issues of liability could overwhelm the action and common issues would no longer predominate.

The use of "representative testimony" is rooted in the *Anderson v. Mt. Clemens*, a case that addressed an issue akin to one faced by this Court: the need to calculate the hours worked by the employees in an off-the-clock FLSA collective action when the employer's time records were inaccurate. *Mt. Clemens*, 328 U.S. at 687-88, 66 S. Ct. at 1192. The *Mt. Clemens* Court was acutely aware of "[t]he remedial nature of [the FLSA] and the great public policy which it embodies." *Id.* at 687, 66 S. Ct. at 1192. Thus, the Court refused "to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Id.* After all, such a penalty "would place a premium on an employer's failure to keep proper records in conformity with his statutory duty; it

would allow the employer to keep the benefits of an employee's labors without paying due compensation as contemplated by the [FLSA]." *Id.*

*Mt. Clemens* addressed the above evidentiary problem by allowing an employee to prove his hours as "a matter of just and reasonable inference." *Id.* Specifically, when the employer's records are inaccurate or inadequate, an employee carries "his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 687, 66 S. Ct. at 1192. The employer then bears the burden of coming "forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687-88, 66 S. Ct. at 1192. If the employer does not satisfy this burden, "the court may then award damages to the employee, even though the result be only approximate." *Id.* at 688, 66 S. Ct. at 1192.

It also appears *Mt. Clemens* allowed the hours of non-testifying opt-in plaintiffs to be proven by "just and reasonable inference"; that is, through the representative testimony of similarly situated employees. *See id.* at 993, 66 S. Ct. at 1195 ("Unless the employer can provide accurate estimates, it is the duty of the trier of facts to draw whatever reasonable inferences can be drawn from the employees'

evidence as to the amount of time spent in these activities in excess of the productive working time."). At the very least, courts have interpreted *Mt. Clemens* as allowing the use of "representative testimony" in a section 216(b) collective action to prove the number of hours worked by non-testifying employees, *inter alia*, when the testifying and non-testifying employees perform "substantially similar work." *Sec'y of Labor v. DeSisto*, 929 F.2d 789, 793 (1st Cir. 1991); *see Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1278-80 (11th Cir. 2008) ("[S]ome employees [may] testify about the number of hours they worked and how much they were paid so that other non-testifying plaintiffs could show the same thing by inference.").

Representative testimony does not necessarily provide generalized proof of an element at issue in a Rule 23 class action. Contrary to Plaintiffs' position, in order to prove how many hours were worked by the class members, Plaintiffs must do so through generalized proof that satisfies the predominance requirement, rather than through mere representative testimony, lest individual issues overwhelm the action.[1] The use of representative testimony comes with several costs: for example, the damages calculations will be less precise, and a defendant may be prevented from making individualized inquiries into the claims of non-testifying opt-in plaintiffs. *Monroe v. FTS USA, LLC*, 763 F. Supp. 2d 979, 995-96 (W.D. Tenn. 2011);

---

[1] Some instances of representative testimony may in fact amount to generalized proof, but the two categories are not coextensive.

*see Mt. Clemens*, 328 U.S. at 686-87, 693; 66 S. Ct. at 1192, 1195. Indeed, it has been noted that "a collective action under § 216(b) is not held to the same rigors as either a typical lawsuit or a class action under Rule 23 precisely because the FLSA contemplates that representative testimony may be used to adjudicate the claims of nontestifying plaintiffs and thereby arrive at an approximation of damages." *Monroe*, 763 F. Supp. 2d at 996. Ultimately, Plaintiffs are trying to prove classwide FLSA violations using Rule 23; accordingly, they cannot rely on section 216(b)'s less rigorous collective action mechanisms, including the use of representative testimony that falls short of generalized proof.

Plaintiffs have not provided sufficient legal support for their argument that mere representative testimony can be used to prove that they and the class members worked more than forty hours per week. Plaintiffs rely on a string of inapposite and unpersuasive cases [Doc. Nos. 272; 351]. For example, Plaintiffs cite the following cases that merely stand for the uncontroversial rule that representative testimony can be used in an FLSA collective action: *Mt. Clemens Pottery Co.*, 328 U.S. at 687-88, 66 S. Ct. at 1192; *Morgan*, 551 F.3d at 1278-80 ; *Donovan v. Hamm's Drive Inn*, 661 F.2d 316 (5th Cir. 1981); *Donovan v. New Floridian Hotel*, 676 F.2d 468 (11th Cir. 1982); and *McLaughlin v. DialAmerica Mktg., Inc.*, 716 F. Supp. 812, 825-27 (D.N.J. 1989) [Doc. No. 351, pp. 35-36]. In other instances, Plaintiffs cite unpublished North Carolina

district court cases in which the plaintiffs were allowed to pursue a Rule 23 class action on their NCWHA off-the-clock, donning-and-doffing claims, but in those cases, the courts did not examine whether representative testimony can serve as generalized proof per Rule 23's predominance requirement, nor did the courts perform a rigorous predominance analysis [Doc. No. 272-1, p. 28 n.36 (citing *Harris v. Smithfield Packing Co.*, 4:09-CV-41-H, 2011 U.S. Dist. LEXIS 108976, at *8-10 (E.D.N.C. Sept. 23, 2011); *Home v. Smithfield Packing Co. Inc.*, 5:09-CV-42-H 1, 2011 WL 4443034, at *3 (E.D.N.C. Sept. 23, 2011); *Mitchell V. Smithfield Packing Co. Inc.*, 4:08-CV-182-H, slip op. at 7 (E.D.N.C. Sept. 23, 2011)].

In fact, Plaintiffs' proposed representative testimony does not rise to the level of classwide, generalized proof on the issue of liability (not to mention damages). As discussed above, in order to prove liability, Plaintiffs must show that they worked more than forty hours per week. There can be little dispute that Gentiva's records of the Clinicians' work hours show that they generally worked less than forty hours a week [Doc. Nos. 301, p. 25 ("In fact, 84.3% of the total class weeks were below 40 hours.")]. Plaintiffs argue that those records are inadequate in several respects, but most importantly, because much of Plaintiffs' substantial charting time was never recorded or entered into Gentiva's records [Doc. Nos. 27-2, pp14-15; 351, pp. 21, 26, 28-29]. Plaintiffs plan to prove their work hours by relying on Gentiva's

productivity requirements, Gentiva's rules requiring employees to average forty hours a week to maintain their benefits, evidence of the time generally needed to do their work, and "other common evidence" [Doc. No. 351, p. 23].

First, Plaintiffs have given no indication regarding the level of specificity that can be shown by Gentiva's productivity requirements or benefits requirements [*see, generally*, Doc. Nos. 272-1; 351].[2] For example, even if a Clinician must average forty hours a week to keep her benefits, if the average is computed using her hours over a one-month period, it will be difficult (if not impossible) to identify the weeks in which she worked more than forty hours: for example, a Clinician could average more than forty hours per week despite working less than forty hours during each of the four full weeks in a month. Moreover, assuming the benefits were contingent on a Clinician maintaining her full-time status, Plaintiff Nelmes and others have admitted that they could maintain their status by averaging 36 hours a week [*see, e.g.*, Doc. Nos. 27-1, p. 15; 27-2, pp. 3, 12, 15]. It is doubtful the averages could give a clear picture of which weeks a given Clinician worked at least 40 hours, and thus the averages would not provide generalized proof of liability.

---

[2] Plaintiffs have not described the details of the productivity policy or benefits policy, nor have they cited to any evidence that such policies even exist [Doc. Nos. 272-1; 351]. It appears Plaintiffs may have attached the productivity policy as an exhibit to there motion to certify class [Doc. No. 272-11, p. 1-22].

As for the productivity policy, Clinicians have testified to a range of requirements, from 22 visit points per week to 30 points, or in terms of hours, 32 hours to 40 hours per week [Doc. Nos. 57, pp. 27-73; 300-5, p. 61].  And in some instances the ratio between a Clinician's target visit points and hours could be as high as 1.5 [Doc. No. 57, pp. 52, 70], or as low as 1.0 [*id.* at p. 58].  Given this variability, the Court is unsure how the productivity policy could provide generalized proof of the class members' work hours.

Second, Plaintiffs have not shown that both their evidence of the time generally needed to do their work and their "other common evidence" sufficiently address the variations among the Clinicians' work hours.[3]  Plaintiffs have done little to fill-in the details about their evidence [Doc. No. 351, pp. 23, 35].  The Court assumes that Plaintiffs would rely heavily upon the ostensibly representative testimony of some small fraction of the Clinicians [*id.*].  But Plaintiffs do not explain how the trier of fact could extrapolate from the testimony of a limited number of Clinicians in order to determine which weeks the non-testifying Clinicians worked more than forty hours [*see, generally*, Doc. Nos. 272-1; 351] .

---

[3] For instance, one Clinician declared that she spent 43% of her work hours charting at home [Doc. No. 57, p. 54], while another spent as little as 14% of her hours charting at home [*id.* at p. 48], another spent 30% [*id.* at p. 39], and another spent 23% [*id.* at p. 42].  Thus, a given Clinician might, on average, dedicate nearly three times more of her work time to charting at home than another Clinician [*compare id.* at p. 54 *with id.* at p. 48].

In contrast to a donning-and-doffing case in which there are only so many ways an employee can put-on and take-off her protective gear, here, the hours worked are a function of a multitude of visit types and patient types, and there is no clear indication that the amount of time it takes one Clinician to chart patient information can fairly be extrapolated to establish the time it takes each individual class member to fulfill her charting responsibilities [*see infra* n.2]. Indeed, even if the testimony of a subset of the Clinicians could establish the hours of each class member as "a matter of just and reasonable inference," *Mt. Clemens* explicitly permits Gentiva to come "forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens,* 328 U.S. at 686-87; 66 S. Ct. at 1192. That is, Gentiva could come forward with evidence about the hours worked by each class member and thereby show that the representative testimony does not provide generalized evidence of the class members' work hours.[4] Ultimately, the

---

[4] The burden shifting framework established by *Mt. Clemens* in this respect seems to cut against the use of representative testimony as a means of establishing the hours worked by non-testifying opt-in plaintiffs. That is, if defendants are given carte blanche to provide evidence of the precise amount of work performed by each 216(b) opt-in, many collective actions could devolve into individual mini-trials. Thus, at least in the context of an FLSA collective action, a court can limit the extent to which a defendant can challenge the representative testimony by limiting the rebuttal to the individuals who provide representative testimony. *See, e.g., Monroe*, 763 F. Supp. 2d at 995-96. Although this approach seemingly prejudices defendants, it is a compromise born of the FLSA's remedial nature. *See id.*

variations among the class members might not prove fatal to a section 216(b) collective action, which is not held to the same rigors as a Rule 23 class action when it comes to representative testimony. *See Monroe*, 763 F. Supp. 2d at 995-96. But when relied upon for the Rule 23 aspect of this action, the representative testimony of some small fraction of the Clinicians can quickly lose its character as generalized proof, and open the door to individualized inquiries into each class members' hours that will overwhelm the class action.

Because Plaintiffs failed to show that they can adduce generalized proof of their weekly work hours, Plaintiffs have not met Rule 23(b)(3)'s predominance requirement.

## II.   Superiority

Finally, Plaintiffs have not satisfied the superiority prong of Rule 23(b)(3). Under Rule 23(b)(3), a class action cannot proceed unless it would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In making this determination, the Eleventh Circuit has examined "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). Courts should also consider the "likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(D).

This NCWHA class action is simply an alternative means of obtaining backwages allegedly owed under the FLSA [*see* Doc. No. 272-1, pp. 10-11]. Thus, to the extent the class members' FLSA rights were violated, the class members could have realistically pursued other forms of litigation, such as a single-plaintiff FLSA action or an FLSA collective action.

Under the facts of this case, when compared to an FLSA collective action, a Rule 23 class action is not a superior means to assert an FLSA violation. The main advantages of a Rule 23 class action that Plaintiff identified is that the class members who are still employed by the defendant can be spared the fear of retaliation, *McLaughlin v. Liberty Mut. Ins. Co.*, 224 F.R.D. 304, 309 (D. Mass. 2004). Moreover, because a Rule 23 is an opt-out action as opposed to a 216(b) opt-in action, Rule 23 can generally bring relief to a larger number of claimants. But Rule 23 comes with a serious disadvantage: the predominance requirement—which in turn generally necessitates that liability be a matter of generalized proof—calls for a level of rigor that is absent in an FLSA collective action. *See Monroe*, 763 F. Supp. 2d at 995-96.

Indeed, in this action, Plaintiffs have been unable to show that they could rely upon their representative testimony to establish classwide liability. On the other hand, in a section 216(b) collective action, representative testimony is widely accepted as a means for establishing the plaintiffs' prima facie case. *Morgan*, 551

F.3d at 1278-79 (collecting cases across the circuits). Thus, a section 216(b) collective action would be superior to a Rule 23 class action.

A district court should also consider issues of manageability, including "the effect of possible class certification on the judicial system itself." *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977); *see also* Fed. R. Civ. P. 23(b)(3)(D). "[W]here the issue of damages and impact does not lend itself to . . . a mechanical calculation, but requires separate 'mini-trials' of an overwhelming large number of individual claims, courts have found that the staggering problems of logistics thus created make the damage aspect of the case predominate, and render the case unmanageable as a class action." *Id.* at 68-69 (internal quotation marks and citations omitted). In such a case, the "economies of time, effort, and expense" that are the aim of Rule 23 are lost. *Id.* at 69.

Here, the Rule 23 class action portion of Plaintiffs' claims neither lends itself to generalized proof of liability or damages nor to mechanical calculations of each class members' damages: as discussed above, liability and damages largely depend on the hours the class members spent charting at home, and the degree to which a given Clinician spent her time charting is highly variable. Thus, in order to determine liability and damages, the court may have to resort to "mini trials" that will create "staggering problems of logistics" that could render this case

unmanageable. *See Windham*, 565 F.2d at 69. These concerns further militate against this Court finding that a Rule 23 class action would be superior.

In light of the relative advantages of a 216(b) collective action, and issues of manageability, a Rule 23 class action is not "superior to other available methods for fairly and efficiently adjudicating" this controversy. Fed. R. Civ. P. 23(b).

**CONCLUSION**

For reasons given above, Plaintiffs' Motion to Certify Class [Doc. No. 272] is **DENIED**.

**IT IS SO ORDERED**, this 29th day of August, 2012.

                                      s/Steve C. Jones
                                      STEVE C. JONES
                                      UNITED STATES DISTRICT JUDGE