**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

LISA RINDFLEISCH; TIFFANY
MELENDEZ; MICHELLE GENTILE;
LAURIE BAKER; and CHRISTINA
NELMES, on behalf of themselves
and others similarly situated,

    Plaintiffs,

        v.

GENTIVA HEALTH SERVICES, INC,

    Defendant.

CIVIL ACTION
No. 1:10-cv-03288-SCJ

**O R D E R**

    This matter is before the Court on Gentiva Health Services, Inc.'s ("Gentiva")

Motion to Exceed Page Limits for Dispositive Motions [Doc. No. 497], Plaintiffs'

Motion to Strike the Expert Report and Testimony of Alfred H. Perry, or, in the

Alternative, Notice of Objection to the Same [Doc. No. 578], Plaintiffs' Motion to

Strike the Declaration and Testimony of Alfred B. Robinson, Jr., or, in the

Alternative, Notice of Objection to the Same [Doc. No. 621], Gentiva's Motion to

Strike Plaintiffs' Response to Gentiva's Statement of Supplemental Facts in

Opposition to Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 623],

Gentiva's Request for Oral Argument on its Motion for Partial Summary Judgment

on the Lawfulness of its Fee Payments [Doc. No. 572], Gentiva's Motion for Partial Summary Judgment on the Lawfulness of its Fee Payments [Doc. No. 512], Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 502], and Gentiva's Motion for Summary Judgment on the "Uniqueness" of Class Members' Duties Under the FLSA's "Fee Basis" Regulation [Doc. No. 511]. For the reasons explained in this order, Gentiva's motion to exceed page limits is **GRANTED**, Plaintiffs' motion to strike the expert report of Alfred H. Perry, Plaintiffs' motion to strike the declaration Alfred B. Robinson, Jr., and Gentiva's motion to strike Plaintiffs' response to Gentiva's supplemental facts are **DENIED**, Gentiva's request for oral argument is **DENIED**, Gentiva's motion for partial summary judgment on the lawfulness of its fee payments is **DENIED**, Plaintiffs' motion for partial summary judgment is **GRANTED**, and Gentiva's motion for summary judgment on the "uniqueness" of class members' duties is **DISMISSED AS MOOT**.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

        Gentiva provides home healthcare services to patients throughout the United States[Doc. No. 508, 1].[1] To provide these services, Gentiva employs registered

---

[1] The Court acknowledges that Plaintiffs' statement of material facts has been filed under seal. However, the Court's orders are not generally sealed. Therefore, the Court considers itself free to refer, in this unsealed order, to any matters identified in the sealed materials.

nurses and physical or occupational therapists to provide in-home healthcare to Gentiva's patients (collectively "Clinicians") [Doc. No. 508, 1]. Since December of 2008, Gentiva pays the majority of its Clinicians on a pay per-visit plan (the "PPV Plan") [Doc. No. 586, 4-5].[2] Under the PPV Plan, Clinicians are paid a set fee for a "routine visit" to a patient's home ("visit fees") [Doc. No. 586, 14]. These visit fees do not vary based on the time it takes Clinicians to complete a specific in-home visit [*id.* at 15]. In addition, Clinicians under the PPV Plan are also paid on what Gentiva describes as a "flat rate" for non-visit related work ("non-visit fees") [*id.* at 19]. In setting the amount of non-visit fees, Gentiva factors in the amount of time it takes Clinicians to perform a specific non-visit related activity [*id.*].

---

[2] Gentiva responds to Plaintiffs' statement of fact that 59.9% of Gentiva's Clinicians were switched over to the PPV Plan by the end of December 2008 as follows: "[s]ubject to and without waiving the foregoing objections, [Gentiva] does not dispute that the source to which [p]laintiffs refer in paragraph 5 *suggests* that 59.9% of Gentiva's [Clinicians] were compensated on a PPV basis as of December 2008 [*id.*] (emphasis added). Local Rule 56.1(B), which governs statements of material fact attached to a summary judgment motion, states "[t]he [C]ourt will deem the movant's citations supportive of its facts unless the respondent specifically informs the [C]ourt to the contrary in the response." LR 56.1(B)(2)(a)(3), NDGa. Again, Gentiva does not admit to Plaintiffs' statement of fact, but merely concedes that Plaintiffs' citation *suggests* Plaintiffs' statement of fact is accurate. As Gentiva does not inform the Court that Plaintiffs' citation is inaccurate, the Court accepts as fact Plaintiffs' statement that 59.9% of Gentiva's Clinicians were compensated under the PPV Plan by December 2008.

Gentiva maintains that the PPV Plan constitutes a "fee basis" payment under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* [*id.* at 14]. Therefore, Gentiva classifies all of its Clinicians compensated under the PPV Plan as professional employees exempt from overtime compensation under the FLSA [*id.* at 10].

On May 10, 2010, former Clinicians Lisa Rindfleisch, Tiffany Melendez, Michelle Gentile, Laurie Baker, and Christina Nelmes (collectively "named plaintiffs") filed this action, on behalf of themselves and other similarly situated individuals, against Gentiva seeking overtime wages under the FLSA [Doc. No. 1, 1].[3] In support of their FLSA claim, named plaintiffs assert that the PPV Plan, because the amount of the non-visit fees incorporates the time it takes Clinicians to complete a specific non-visit activity, constitutes payment on both a fee basis and hourly basis [Doc. No. 502-1, 12-14]. Based on this allegation, named plaintiffs assert that the PPV Plan is a "hybrid compensation system" and, therefore, is not a valid fee basis payment that would exempt them or other Clinicians from receiving overtime pay [*id.*]. Therefore, named plaintiffs assert that Gentiva owes all former

---

[3] The complaint also asserts claims under New York and North Carolina law [*id.*]. These state law claims are no longer a part of this action.

and current Clinicians paid under the PPV Plan overtime compensation under the FLSA [Doc. No. 1, 22]. On April 13, 2011, this action was conditionally certified as a collection action under the FLSA, with the class consisting of all Clinicians employed three years prior to April 13, 2011[Doc. No. 167, 11-13].

On May 26, 2011, in order to expedite this proceeding, this Court bifurcated this case into a liability phase and a damages phase [Doc. No. 194, 6]. This action is currently in the liability phase, which concerns whether the PPV Plan is unlawful under the FLSA [*id.* at 6-7]. The damages phase, if the PPV Plan is found to be unlawful, will address which Plaintiffs (meaning the named plaintiffs and the Clinicians who have opted into this action) were improperly denied overtime compensation by Gentiva [*id.* at 7]. In summary, the only issue for the Court to determine at this stage of the litigation process is whether or not the PPV Plan is unlawful under the FLSA.

As discovery in the liability phase has concluded, Plaintiffs have filed a motion for partial summary judgment regarding the legality of the PPV Plan [Doc. No. 502, 1]. Likewise, Gentiva has filed the following motions regarding this action's core liability issue: 1. A motion for partial summary judgment on the lawfulness of its fee payments [Doc. No. 512, 1]; and 2. A motion for summary judgment on the

"uniqueness" of class members' duties under the FLSA's "fee basis" regulation [Doc. No. 511, 1]. In connection with these motions for summary judgment on the liability issue, the following motions have also been filed: 1. Gentiva's motion to exceed page limits for dispositive motions [Doc. No. 497, 1]; 2. Plaintiffs' motion to strike the expert report and testimony of Alfred H. Perry, or, in the alternative, notice of objection to the same [Doc. No. 578, 1]; 3. Plaintiffs motion to strike the declaration and testimony of Alfred B. Robinson, Jr., or, in the alternative, notice of objection to the same [Doc. No. 621, 1]; 4. Gentiva's motion to strike Plaintiffs' response to Gentiva's statement of supplemental facts in opposition to Plaintiffs' motion for partial summary judgment [Doc. No. 623, 1]; and 5. Gentiva's request for oral argument on its motion for partial summary judgment on the lawfulness of its fee payments [Doc. No. 572, 1].[4] As each is ripe for adjudication, the Court addresses the aforementioned motions below.

## II.    GENTIVA'S MOTION TO EXCEED PAGE LIMITS FOR DISPOSITIVE MOTIONS

Local Rule 7.1(D) states that "briefs filed in support of a motion or in response to a motion are limited in length to twenty-five (25) pages." LR 7.1(D), NDGa. In this

---

[4]  While styled as a "request," the Court construes this filing as a motion.

action, Gentiva has filed two motions for summary judgment on the liability issue, attaching with each motion a brief in support that greatly exceeds the 25 page limitation.[5] However, before filing its motions for summary judgment, Gentiva filed a separate motion requesting "leave of this Court to file briefs in support of its two motions for summary judgment on class-wide liability that exceed the 25-page limitation set forth in Rule 7.1D of the Local Rules of this Court" [Doc. No. 497, 1]. In support of this motion, Gentiva argues "both motions require a detailed presentation and analysis of the extensive evidentiary record in this case and how that establishes Gentiva's entitlement to summary judgment" [*id.* at 4]. Plaintiffs oppose Gentiva's motion, arguing "[t]he issues in this case are straightforward and limited in number; they entail neither the complexity nor the range that would warrant such a colossal extension" [Doc. No. 500, 1].

The Court agrees that the significant number of pages Gentiva provides in its attached briefs appear excessive. This is particularly true in light of the fact that this action's liability phase only concerns the legal issue of whether the PPV Plan violates

---

[5]  Specifically, Gentiva's brief in support of its motion for summary judgment on the "uniqueness" of class members' duties is 39 pages, thereby exceeding the page limitation by 14 pages. Gentiva's brief in support of its motion for partial summary judgment on the lawfulness of its fee payments is 65 pages, thereby exceeding the page limitation by 40 pages.

the FLSA. However, the Court acknowledges that Gentiva's motions for summary judgment must synthesize over two years of discovery. Further, the Court notes that Plaintiffs were awarded leave to file a response to Gentiva's summary judgment motion on the lawfulness of its fee payments that exceeded the 25 page limitation [Doc. No. 577, 1]. Therefore, in its discretion, the Court accepts and considers Gentiva's motions for summary judgment in their current form. Accordingly, Gentiva's Motion to Exceed Page Limits for Dispositive Motions [Doc. No. 497] is hereby **GRANTED**.

III.    **PLAINTIFFS' MOTION TO STRIKE THE EXPERT REPORT AND TESTIMONY OF ALFRED H. PERRY, OR, IN THE ALTERNATIVE, NOTICE OF OBJECTION TO THE SAME; PLAINTIFFS' MOTION TO STRIKE THE DECLARATION AND TESTIMONY OF ALFRED B. ROBINSON, JR., OR, IN THE ALTERNATIVE, NOTICE OF OBJECTION TO THE SAME; GENTIVA'S MOTION TO STRIKE PLAINTIFFS' RESPONSE TO GENTIVA'S STATEMENT OF SUPPLEMENTAL FACTS IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

A motion to strike is governed by Federal Rule of Civil Procedure 12(f), which states "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Pursuant to Federal Rule of Civil Procedure 7(a), "pleading" is a term of art that is limited to: a complaint; a third-party complaint; an answer to a complaint,

counterclaim, crossclaim, or a third party complaint; and, if one is ordered by the Court, a reply to an answer. Fed. R. Civ. P. 7(a)(1)-(7).

Plaintiffs have filed a motion to strike the expert report of Alfred H. Perry, which is attached as an exhibit to Gentiva's motion for summary judgment on the lawfulness of its fee payments [Doc. No. 578, 1]. Plaintiffs have also filed a motion to strike the declaration of Alfred B. Robinson, Jr., which is attached to Gentiva's reply brief in support of its summary judgment on the lawfulness of its fee payments [Doc. No. 621, 1]. Also, Gentiva has filed a motion to strike Plaintiffs' response to Gentiva's statement of supplemental facts attached with its response to Plaintiffs' motion for summary judgment [Doc. No. 623, 1]. None of the documents the parties seek to strike are pleadings and, therefore, are not subject to a motion to strike. *See Jeter v. Montgomery Cnty.*, 480 F. Supp. 2d 1293, 1296 (M.D. Ala. 2007) ("The terms of Rules 12(f) and 7(a) make clear that only material included in a 'pleading' may be subject of a motion to strike and that motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike.") (internal quotation marks, alterations, and citation omitted).

However, the Court will construe each motion to strike filed by the parties'
as a notice of objection.[6] Therefore, the Court takes notice of these objections in
reviewing the parties' motions for summary judgment and considers each of the
challenged documents to the extent they are relevant and properly before the Court.
A specific ruling on each objection is unnecessary, as the emphasis placed on each
of the challenged documents is implicit in the Court's ruling on the parties' motions
for summary judgment. The Court is capable of reviewing the relevant evidence, as
required by the summary-judgment standard, without resorting to an exclusionary
process. Further, based on the number of motions to strike already filed by the
parties, the Court finds it necessary to guard against this action becoming merely a
battle of motions to strike.  Accordingly, in the interest of maintaining clarity in the
record, Plaintiffs' Motion to Strike the Expert Report and Testimony of Alfred H.
Perry, or, in the Alternative, Notice of Objection to the Same [Doc. No. 578],
Plaintiffs' Motion to Strike the Declaration and Testimony of Alfred B. Robinson, Jr.,
or, in the Alternative, Notice of Objection to the Same [Doc. No. 621], and Gentiva's
Motion to Strike Plaintiffs' Response to Gentiva's Statement of Supplemental Facts

---

[6] In fact, all of the parties' motions to strike are alternatively styled as notices of objections.

in Opposition to Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 623] are

hereby **DENIED**.

## IV.    GENTIVA'S REQUEST FOR ORAL ARGUMENT ON ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE LAWFULNESS OF ITS FEE PAYMENTS

Gentiva requests oral argument on its motions for summary judgment based

on "the complexity of the record" [Doc. No. 572, 2]. Plaintiffs do not oppose this

request [Doc. No. 575, 2]. However, as discussed more fully *infra*, this action's

liability phase centers on the legal interpretation of two regulations issued by the

Secretary of Labor: 29 C.F.R. § 541.605 and 29 C.F.R. § 541.604. As the parties have

submitted sufficient briefing regarding the interpretation of these two regulations,

the Court believes oral argument is unnecessary. *See St. James Entm't LLC v. Crofts*,

837 F. Supp. 2d 1283, 1287 (N.D. Ga. 2011) (holding oral argument on summary

judgment motions is unwarranted when said motions are sufficiently briefed).

Accordingly, Gentiva's Request for Oral Argument on its Motion for Partial

Summary Judgment on the Lawfulness of its Fee Payments [Doc. No. 572] is hereby

**DENIED**.

## V.   GENTIVA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE LAWFULNESS OF ITS FEE PAYMENTS; PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

### A.   Legal Standard

Federal Rule of Civil Procedure 56 provides "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."Fed. R. Civ. P. 56(a).[7]

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

---

[7] On December 1, 2010, an amended version of Rule 56 of the Federal Rules of Civil Procedure became effective. The amendments to Rule 56 "are intended to improve the procedures for presenting and deciding summary-judgment motions" and "are not intended to change the summary-judgment standard or burdens." Committee on Rules of Practice and Procedure, Report of the Judicial Conference, page 14 (Sept. 2009).; *Farmers Ins. Exchange v. RNK, Inc.*, 632 F.3d 777, 782 n.4 (1st Cir. 2011). "[B]ecause the summary judgment standard remains the same, the amendments 'will not affect continuing development of the decisional law construing and applying' the standard now articulated in Rule 56(a). Adv. Comm. Notes to Fed. R. Civ. P. 56 (2010 Amends.). Accordingly, while the Court is bound to apply the new version of Rule 56, the undersigned will, where appropriate, continue to cite to decisional law construing and applying prior versions of the Rule." *Murray v. Ingram*, No. 3:10-CV-348-MEF, 2011 WL 671604, at *2 (M.D. Ala. Feb. 3, 2011).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case."*Celotex Corp.*, 477 at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996). Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. *Id.* (citations omitted). All reasonable doubts, however, are resolved in the favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

**B.     Discussion**

As a general rule, the FLSA provides that an employee is entitled to overtime compensation in an amount at least one and one-half times his regular compensation rate for each hour worked in excess of forty in a given week. 29 U.S.C. § 207(a)(1). However, the FLSA exempts from this overtime payment requirement "any employee employed in a bona fide executive, administrative, or professional capacity" 29 U.S.C. § 213(a)(1). Here, Gentiva argues all Clinicians paid under the PPV Plan are professional employees and, therefore, are exempt from overtime pay under the FLSA [Doc. No. 512-1, 11]. The Court notes that Gentiva carries the burden of proving the professional exemption applies to Clinicians paid under the PPV Plan, and that the overtime provision of 29 U.S.C. § 207 is narrowly construed against Gentiva. *See Hogan v. Allstate Ins. Co.*, 361 F.3d 621, 625 (11th Cir. 2004).

The Secretary of Labor, as tasked by Congress, has issued regulations interpreting the statutory language of the FLSA's executive, administrative, and professional exemptions (the "DOL regulations"), 29 C.F.R. § 541.0 *et seq. Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1299 (11th Cir. 2011). As 29 U.S.C. § 213(a)(1) does not define employment in a "professional capacity" for purposes of the overtime exemption, this Court must look to the definition provided by the DOL

regulations. *See id.* ("We defer to [the DOL] regulations when the statutory language [of the FLSA] is ambiguous or the statutory terms are undefined."). The DOL regulations define a professional employee, for the purposes of the overtime exemption articulated in § 213(a)(1) of the FLSA, as an individual: 1. "[c]ompensated on a salary or fee basis at a rate of not less than $455 per week;" and 2. whose primary work related duty requires knowledge of "an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or . . . [r]equiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor." 29 C.F.R. § 541.300(a). In essence, in order to determine if an employee satisfies the professional exemption from overtime pay, the DOL has established two separate tests: a "salary basis" test and a "primary duties" test. *Hancock v. Woodson Incorporation*, Civil Action No. 3:10-cv-687HTW-LRA, 2012 WL 845249, at *3 (S.D. Miss. Mar. 12, 2012). Here, Plaintiffs concede that they satisfy the "primary duties" test [Doc. No. 417, 7]. Therefore, this Court must determine whether the PPV Plan satisfies the professional exemption's "salary basis" test.

The DOL regulations state that, in order to satisfy the salary basis test, a professional employee can be paid "on a fee basis, as defined in § 541.605." 29 C.F.R.

§ 541.600(a). Section 541.605 states an employee can be paid on a "fee basis" that satisfies the salary basis test if "the employee is paid an agreed sum for a single job regardless of the time required for its completion." 29 C.F.R. § 541.605(a). Subsection (b) of section 541.605 states that, in order for a particular fee payment to satisfy the salary basis test, "the amount paid to the employee will be tested by determining the time worked on the job and whether the fee payment is at a rate that would amount to at least $455 per week if the employee worked 40 hours." 29 C.F.R. § 541.605(b).

In the alternative, the DOL regulations, under section 541.604, allow an employee exempt from overtime pay to receive "extra" compensation that does not satisfy the salary basis test. Specifically, section 541.604 allows two forms of "extra" payment, articulated respectively in subsections (a) and (b). *Anani v. CVS RX Servs., Inc.*, 788 F. Supp. 2d 55, 66 (E.D.N.Y. 2011). Subsection (a) of section 541.604 allows an employee to receive "additional compensation," that does not satisfy the salary basis test, "based on hours worked for work beyond the normal workweek." 29 C.F.R. § 541.604(a). Subsection (b) allows an employee to receive payment on an hourly, daily, or shift basis without losing the overtime exemption, so long as he is guaranteed weekly payment of at least $455 and there is a "reasonable relationship"

between the guaranteed weekly payment and the employee's usual weekly earnings. 29 C.F.R. § 541.604(b).

In its motion for partial summary judgment, Plaintiffs argue that the PPV Plan, because the non-visit fees vary based on the amount of time it takes a Clinician to complete a non-visit activity, violates the salary basis test. Therefore, Plaintiffs argue the PPV Plan violates the FLSA and, as a result, that they are owed overtime compensation. In its response to Plaintiffs' motion, as well as in its own motion for partial summary judgment on the lawfulness of its fee payments, Gentiva asserts the following two arguments: 1. Pursuant to subsection (b) of section § 541.605, the non-visit fees can vary based on the time it takes Clinicians to complete a non-visit activity and still satisfy the salary basis test; and 2. Even if Gentiva's non-visit fees improperly consider time, Gentiva's visit fees properly satisfy the salary basis test and, therefore, the non-visit fees constitute "extra" payments under section 541.604. The Court will discuss each of Gentiva's arguments below.

### 1.    Gentiva's non-visit fees do not satisfy the salary basis test under 29 C.F.R. § 541.605

Subsection (a) of § 541.605 clearly states that a fee for an activity, in order to satisfy the salary basis test, cannot be based on "the time required for [the activity's] completion." 29 C.F.R. § 541.605(a). Subsection (a) further states that "[p]ayments

based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis." *Id.* Based on this clear and unambiguous language, a "fee" that varies based on the amount of time it takes to complete a specific activity does not satisfy the DOL regulation's salary basis test. *See Bread Political Action Comm. v. Fed. Election Comm'n*, 455 U.S. 577, 580 (1982) (stating that, in the absence of clearly expressed legislative intention, the plain language of a statute controls its construction and must be considered conclusive); *see also Evenson v. Hartford Life & Annuity Ins. Co.*, 244 F.R.D. 666, 667 (M.D. Fla. 2007) ("As a general rule of interpretation, the plain meaning of a regulation governs.").

Gentiva argues that subsection (b) of § 541.605 allows it to alter the amount of its non-visit fees based on the time it takes Clinicians to complete a non-visit activity. Subsection (b) of § 541.605 provides that, in order for a fee to satisfy the salary basis test, the fee must "amount to at least $455 per week if the employee worked 40 hours." 29 C.F.R. § 541.605(b). To illustrate this point, subsection (b) provides the following example: "[t]hus, an artist paid $250 for a picture that took 20 hours to complete meets the minimum salary requirement for exemption since earnings at this rate would yield the artist $500 if 40 hours were worked." *Id.* Based on this language, Gentiva argues that subsection (b) allows an employer to alter the

amount of a fee based on the time it takes an employee to complete a specific activity, so long as the fee is not set on a straight hourly basis.

In essence, Gentiva argues that it can consider the amount of time it takes Clinicians to perform certain non-visit activities *prospectively*, thereby allowing its non-visit fees to vary based on time. Specifically, Gentiva argues that its non-visit fees factor in time "for the purpose of accommodating the clinician for missed visits that she would have otherwise performed" [Doc. No. 512-1, 25]. In support of this argument, Gentiva provides the following example:

> in accordance with one of its conversion charts, Gentiva may pay a visit rate equivalent of $30 for a training that lasted 45 minutes and a rate of $60, equivalent to two visits, for a different training that lasted 3 hours. If, however, Gentiva simply set a flat rate for all trainings at the visit rate equivalent of $30, the training that took 3 hours would not qualify as a bona fide fee ($30 ÷ 3=$10 an hour or $400 over a 40-hour work week)

[*id.* at 54]. In comparison, Plaintiffs argue that subsection (b) of § 541.605 "describes how to evaluate the payments *after* the job is completed to determine whether the clinician has been compensated sufficiently to meet the exemption or is instead overtime eligible" [Doc. No. 584, 13]. In summary, Gentiva argues that subsection (b) is in place to allow an employer, in setting a fee for a specific activity, to vary the fee based on the amount of time it takes to complete said activity *before* it is

-19-

complete. In contrast to Gentiva's position, Plaintiffs argue subsection (b) is in place for the purpose of determining if a set fee satisfies the $455/40 hour requirement *after* the specific activity is complete.

The 2003 version of the fee basis regulation, former 29 C.F.R. § 541.313, is persuasive authority on this point. In the preamble to rule 29 C.F.R. § 541.605, the Department of Labor (the "DOL") states that "[p]roposed section 541.605 simplified the fee basis provision in the current rule, but made no substantive change." Dep't of Labor, *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 Fed. Reg. 22122, 22184 (Apr. 23, 2004). Based on the lack of substantive change, it can be inferred that 29 C.F.R. § 541.605 is consistent with the language of former 29 C.F.R. § 541.313. *See Belt v. Emcare, Inc.*, 444 F.3d 403, 414 (5th Cir. 2006) ("The amendments effectively adopted § 541.314 after notice and comment, without substantive change,[ ] thereby tending to show that the text of § 541.3(e) does not contradict the former § 541.314.").

Former 29 C.F.R. § 541.313 provides that "[t]he adequacy of a fee payment . . . can ordinarily be determined *only after the time worked on the job has been*

*determined*." 29 C.F.R. § 541.313(c) (2003) (emphasis added). To illustrate this point, 29 C.F.R. § 541.313 provides the following example: [8]

> An illustrator is assigned the illustration of a pamphlet at a fee of $150. When the job is completed, it is determined that the employee worked 60 hours. If the employee worked 40 hours at this rate, the employee would have earned only $100. The fee payment of $150 for work which required 60 hours to complete therefore does not meet the requirement of payment at a rate of $170 per week and the employee must be considered nonexempt.

29 C.F.R. § 541.313(d)(3) (2003). Based on this language, the Court agrees with Plaintiffs that 29 C.F.R. § 541.605(b) articulates how to determine a fee for a specific activity satisfies the salary basis test *after* the activity is completed. Therefore, 29 C.F.R. § 541.605(b) does not authorize an employer to prospectively alter a fee based on the amount of time it takes an employee to perform a specific work activity.

Without question, Gentiva's non-visit fees vary based on the amount of time it takes Clinicians to complete a specific non-visit activity. Therefore, the non-visit fees violate the clear language of 29 C.F.R. § 541.605(a), which specifies a fee only satisfies the salary basis test when it is "an agreed sum for a single job regardless of the time required for its completion." Subsection (b) of 29 C.F.R. § 541.605 merely

---

[8] In the 2003 version of the DOL regulations, a fee for a professional employee satisfied the salary basis test if it would amount to a rate of at least $170 per week if the employee worked forty hours. *Id.*

provides a basis for determining whether or not a fee for a specific activity satisfies the salary basis test after the activity is complete. Therefore, Gentiva cannot rely on subsection (b) as justification for varying its non-visit fees based on the amount of time it takes Clinicians to complete a non-visit activity. Such a reading of subsection (b) would completely contradict and negate the clear and unambiguous language of subsection (a). Therefore, Gentiva's non-visit fees do not satisfy the salary basis test under 29 C.F.R. § 541.605.

### 2.   Gentiva's non-visit fees do not constitute an "extra" payment under 29 C.F.R. § 541.604

Section 541.604 provides that "[a]n employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount [$455] paid on a salary basis." 29 C.F.R. § 541.604(a). Gentiva argues that, because its visit fees satisfy the salary basis test, its non-visit fees constitute extra payments under section 541.604. The Court does not find this argument persuasive under either subsection (a) or subsection (b) of section 541.604.[9]

---

[9] Gentiva does not articulate the proper subsection under which its non-visit fees constitute "extra" payment. Therefore, the Court will analyze the non-visit fees, as well as Gentiva's arguments that they constitute "extra" compensation, under both subsection (a) and

### a.    Gentiva's non-visit fees are not "extra" payment under subsection (a)

Subsection (a) of section 541.604 allows an exempt employee to receive "extra" payment as "additional compensation . . . paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off." *Id.* However, such "extra" or "additional" compensation is only available under subsection (a) for "extra" or "additional" work, meaning "hours worked for work beyond the normal workweek." *Id.* Under subsection (a), "beyond the normal workweek" signifies hours worked in excess of forty. *See Anani*, 788 F. Supp. 2d at 67 (stating "common sense as well as the purpose of the FLSA supports the interpretation that the words 'the normal workweek' clearly contemplate a forty (40) hour workweek because the FLSA itself generally establishes the right to overtime for hours worked in excess of forty (40) hours.") (internal quotation marks, alterations and citation omitted).[10]

---

subsection (b).

[10] Gentiva incorrectly argues that the phrase "beyond the normal workweek" in subsection (a) constitutes work "not included in hours compensated by the base fee (or salary) arrangement" [Doc. No. 617, 25]. This interpretation of subsection (a) makes little sense when applied to a scenario, such as the one presented here, where a portion of an employee's forty hour workweek consists of work that is not compensated by a form of payment that satisfies the salary basis test. Under such a scenario, payment that does not satisfy the salary basis test would not be "extra" payment for "additional" work. Instead,

Here, Gentiva does not designate non-visit activities as additional work only performed after Clinicians have completed forty hours of in-home visits [Doc. No. 586, 34-35]. Instead, in the weeks non-visit activities are performed, non-visit fees are a part of the Clinicians' compensation for a normal forty hour workweek. Therefore, non-visit fees are not a form of compensation separate from the Clinicians' forty hour workweek, but are instead a part of the Clinicians' compensation for a forty hour workweek that includes non-visit activities. Because non-visit activities, and by extension the non-visit fees, are not designated as separate from the Clinicians' normal workweek, it is irrelevant that Gentiva's visit fees satisfy the salary basis test. The visit fees do not encompass the complete form of payment for a Clinicians' normal workweek and, therefore, do not justify payment of the non-visit fees which do not satisfy the salary basis test. As a result, the non-visit fees cannot be considered "extra" payment under subsection (a) of 29 C.F.R. § 541.604.

Subsection (a) of 29 C.F.R. § 541.604 does not allow an employee to receive two forms of payment, with one form failing to satisfy the fee basis test, for two forms of activities completed as part of an employee's forty hour workweek. An additional form of payment that does not satisfy the salary basis test can only be

---

such compensation would simply be improper payment for a forty hour workweek.

awarded for work outside of an employee's normal workweek. As Gentiva's non-visit fees are a part of the Clinicians' compensation for a normal workweek that includes non-visit activities, they do not constitute an "extra" payment under subsection (a) of section 541.604.

> **b.     Gentiva's non-visit fees are not "extra" payment under subsection (b)**

Subsection (b) of section 541.604 allows an employer to pay its employee on an hourly, daily or shift basis without negating the overtime exemption "if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis [$455] regardless of the number of hours, days or shifts worked, and a *reasonable relationship* exists between the guaranteed amount and the amount actually earned." 29 C.F.R. § 541.604 (emphasis added). In summary, subsection (b) allows an employee to be paid on an hourly, daily, or shift basis without losing the overtime exemption, so long as the "reasonable relationship" test is met. *Anani*, 788 F. Supp. 2d at 62. Subsection (b) provides that "[t]he reasonable relationship test will be met if the weekly guarantee is roughly equivalent to the employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek." 29 C.F.R. § 541.604(b).

In its reply brief regarding its motion for summary judgment on the lawfulness of its fee payments, Gentiva appears to concede that the visit fees do not guarantee Clinicians paid under the PPV Plan even $455 in a given week [Doc. No. 617, 24-25]. Based on this concession, Gentiva argues that "fee-based employees need not be guaranteed pay of at least $455 per week to be eligible for extras under section 541.604, they only need to be guaranteed fees that pay them at a rate that would result in at least $455 if they were to work a full 40-hour week performing those fee-compensated tasks" [*id*. at 25]. This argument, when applied to Clinicians and their usual weekly earnings, supports the very form of payment scheme that the reasonable relationship test of subsection (b) is attempting to guard against.

To illustrate the need for the reasonable relationship test, the DOL has stated that, without said test, "an employer could establish a pay system that calculated exempt employees' pay based directly upon the number of hours they work multiplied by a set hourly rate of pay; employees could routinely receive weekly pay of $1,500 or more and yet be guaranteed only the minimum required $455 (thus effectively allowing the employer to dock the employees for partial day absences)." Dep't of Labor, 69 Fed. Reg. at 22184. According to the DOL "[s]uch a pay system

would be inconsistent with the salary basis concept and the salary guarantee would be nothing more than an illusion." *Id.*

Here, Gentiva argues in favor of a compensation framework, without even establishing a set amount of "guaranteed" weekly payment, that allows an even greater discrepancy between the Clinicians' normal weekly earnings and their "guaranteed" weekly payment. Specifically, Gentiva argues that Clinicians can receive one visit fee in a given week and still meet the guarantee requirement of subsection (b), so long as that single fee satisfies the fee basis test under section 541.605. However, under that scenario, Clinicians would have to receive an amount of non-visit fees that is significantly greater than the amount received from the *one* visit fee. For example, Gentiva asserts "the more productive opt-in clinicians in this action were able to earn more than $150,000 per year, and one plaintiff earned over $240,000" [Doc. No. 512-1,15].[11] To earn this amount of compensation in a given year, Clinicians have to receive a weekly amount of earnings that greatly exceeds $455, let alone an undetermined amount that is less than $455. Therefore, under the

---

[11]  Plaintiffs concede that some Clinicians may have received yearly compensation in this amount [Doc. No. 587, 14]. However, Plaintiffs assert that, on average, their "annualized PPV earnings were $74,649.70" [*id.*]. Even under this amount, Clinicians would have to receive weekly earnings significantly higher than $455, let alone a lesser amount. Therefore, even with yearly compensation totaling $74,649.70, there is no reasonable relationship between Clinicians' weekly earnings and a "guaranteed" weekly payment of $455 or less.

compensation framework put forth by Gentiva, Clinicians' "guaranteed" payment is an illusion, having no reasonable relationship to the amount of pay that Clinicians usually receive in a given week. *See* Dep't of Labor, 69 Fed. Reg. at 22184 (stating "if an employee is compensated on an hourly basis, or on a shift basis, there must be a reasonable relationship between the amount guaranteed per week and the amount the employee typically earns per week. Thus, if a nurse whose actual compensation is determined on a shift or hourly basis usually earns $1,200 per week, the amount guaranteed must be roughly equivalent to $1,200; the employer could not guarantee such an employee only the minimum salary required by the regulation."). Therefore, Gentiva's non-visit fees do not constitute an "extra" payment under subsection (b) of 29 C.F.R. §541.604.[12]

In summary, Gentiva's non-visit fees under the PPV Plan do not satisfy the salary basis test under 29 C.F.R. § 541.605, nor do they constitute extra payments

---

[12] The Court does not need to make a determination on Gentiva's generalized argument that subsection (b) of section 541.604 only requires an employee to be "guaranteed" a single fee that satisfies the salary basis test articulated in section 541.605. Here, Clinicians weekly earnings have no reasonable relationship to either $455 or a smaller amount that would equal or exceed $455 if expanded to forty hours of work. Therefore, the Court determines Gentiva's non-visit fees are not "extra" payments under subsection (b) regardless of whether the Clinicians are "guaranteed" $455 or a lesser amount. As a result, the Court does not need to determine in this action whether an employee paid on a fee basis can receive a "guaranteed" amount less than $455 and still earn "extra" payments under subsection (b) of section 541.604.

under either subsection of 29 C.F.R. § 541.604. Therefore, as the non-visit fees are improperly based on the time it takes to complete a non-visit activity, Gentiva's PPV Plan violates the FLSA. Accordingly, Gentiva's Motion for Partial Summary Judgment on the Lawfulness of its Fee Payments [Doc. No. 512] is hereby **DENIED** and Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 502] is hereby **GRANTED**.

The Court recognizes that, by granting Plaintiffs' motion for partial summary judgment, this action now moves into the damages phase specified in the Court's May 26, 2011 order [Doc. No. 194, 6-7]. This damages phase will address which Plaintiffs were actually deprived of overtime compensation under a PPV Plan. Accordingly, the parties are hereby **DIRECTED** to file a **JOINT PRELIMINARY REPORT AND DISCOVERY PLAN** regarding this action's damages phase within **30 days** from the date of this order.

## VI.   GENTIVA'S MOTION FOR SUMMARY JUDGMENT ON THE "UNIQUENESS" OF CLASS MEMBERS' DUTIES UNDER THE FLSA'S "FEE BASIS" REGULATION

29 C.F.R. § 541.605 states that, in order for a fee to satisfy the salary basis test, it must constitute payment "for the kind of job that is *unique* rather than for a series of jobs repeated an indefinite number of times and for which payment on an

identical basis is made over and over again." 29 C.F.R. § 541.605(a) (emphasis added). In addition to its motion for summary judgment regarding the lawfulness of its fee payments, Gentiva has filed a motion for summary judgment arguing that its Clinicians' "duties are sufficiently unique withing the meaning of the [FLSA's] 'fee basis' regulation —29 C.F.R. §541.605(a)" [Doc. No. 511, 1]. However, for the reasons explained above, Gentiva's non-visit fees do not satisfy the salary basis test. Based on the non-visit fees' failure to satisfy the salary basis test under section 541.605, the Court does not need to address the sub-issue of whether the Clinicians' job duties satisfy the uniqueness requirement established in subsection (a) of section 541.605. Accordingly, Gentiva's Motion for Summary Judgment on the "Uniqueness" of Class Members' Duties Under the FLSA's "Fee Basis" Regulation [Doc. No. 511] is hereby **DISMISSED AS MOOT**.

## VII.   <u>CONCLUSION</u>

For the above stated reasons, Gentiva's Motion to Exceed Page Limits for Dispositive Motions [Doc. No. 497] is hereby **GRANTED**. Plaintiffs' Motion to Strike the Expert Report and Testimony of Alfred H. Perry, or, in the Alternative, Notice of Objection to the Same [Doc. No. 578], Plaintiffs' Motion to Strike the Declaration and Testimony of Alfred B. Robinson, Jr., or, in the Alternative, Notice of Objection

to the Same [Doc. No. 621], and Gentiva's Motion to Strike Plaintiffs' Response to Gentiva's Statement of Supplemental Facts in Opposition to Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 623] are hereby **DENIED**. Gentiva's Request for Oral Argument on its Motion for Partial Summary Judgment on the Lawfulness of its Fee Payments [Doc. No. 572] is hereby **DENIED**.

Gentiva's Motion for Partial Summary Judgment on the Lawfulness of its Fee Payments [Doc. No. 512] is hereby **DENIED.** Plaintiffs' Motion for Partial Summary Judgment [Doc. No. 502] is hereby **GRANTED**. Gentiva's Motion for Summary Judgment on the "Uniqueness" of Class Members' Duties Under the FLSA's "Fee Basis" Regulation [Doc. No. 511] is hereby **DISMISSED AS MOOT**.

As this action now enters the damages phase, the parties are hereby **DIRECTED** to file a **JOINT PRELIMINARY REPORT AND DISCOVERY PLAN** regarding this action's damages phase within **30 days** from the date of this order.

IT IS SO ORDERED, this 25th day of July, 2013.

s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT COURT