IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| LISA RINDFLEISCH, TIFFANY MELENDEZ, LAURIE BAKER, and CHRISTINA NELMES, | : : : | |
| Plaintiffs, | : | CIVIL ACTION FILE |
| v. | : : | NO. 1:10-CV-3288-SCJ |
| GENTIVA HEALTH SERVICES, INC., | : | |
| Defendant. | : : | |

## ORDER

This matter is before the Court on Defendant's motion to seal exhibits supporting Defendant's motion for summary judgment on calculation of potential overtime liability [733]; Defendant's motion for summary judgment on calculation of potential overtime liability [739]; and Plaintiffs' motion for leave to file matters under seal with respect to their response to Defendant's motion for summary judgment on calculation of potential overtime liability [758].

I. **Background**

A. **Procedural History**

Plaintiffs, Lisa Rindfleisch, Tiffany Melendez, Laurie Baker, and Christina Nelmes, filed suit against Defendant Gentiva Health Services, Inc., contending that the manner in which Defendant compensated them violated the Fair Labor

Standards Act ("FLSA") because Gentiva improperly claimed a professional exemption for clinicians working as registered nurses, physical therapists, and occupational therapists. The Court granted Plaintiffs' motion for conditional certification. See Doc. No. [167]. The Court ruled on the parties' cross-motions for summary judgment addressing certain matters of liability, including the pay-per-visit or "PPV Plan" Defendant used to pay certain clinicians. See Doc. No. [631]. The Court then granted Defendant's motion to decertify the collective action. See Doc. No. [674]. As a result, the instant litigation involves only the above-named four Plaintiffs.

Since the decertification order, the parties have filed numerous motions. In an order dated October 28, 2015, the Court granted Defendant's motion for summary judgment as to the applicable statute of limitations and the good faith defense to the imposition of liquidated damages. In an order dated December 23, 2015, the Court granted Defendant's Daubert motion to exclude the testimony of Dr. Dwight Steward. The Court now turns to the question of the manner in which Plaintiffs' potential overtime damages should be calculated.

**B.   Facts**

Gentiva classified Plaintiffs as "exempt" under the FLSA. DSUMF, ¶ 1. The parties agree for the purposes of this motion that Plaintiffs were paid under

2

Gentiva's pay-per-visit ("PPV") compensation plan.  Id., ¶ 2.  As the Court has explained in several prior orders, the PPV plan did not calculate compensation on a traditional hourly rate. Rather, clinicians were paid a set fee or "flat rate" for each patient visit they completed, and were also compensated for other "non-visit" activities.  Id., ¶¶ 3-4.  Over Gentiva's objections, the Court previously concluded that Gentiva determined compensation for these "non-visit" activities at least in part based on the time it took to complete those activities, and for that reason, the PPV Plan violated the FLSA. See Doc. No. [631].

Gentiva paid a specified fee to clinicians for each patient visit. DSUMF, ¶ 5. The fee included payment for all visit-related activities including travel to the patient's home, time spent caring for the patient, charting related to the patient visit, and telephone calls and conferences with the patient's physicians and caregivers. Id. In this case, for example, Plaintiffs have argued that Defendant instructed them not to document their charting time at home because this activity was considered part of the patient visit.  Id., ¶ 7. Plaintiffs understood that visit-related activities were included in their agreed visit rate. Id., ¶ 8. There is no dispute that Plaintiffs were paid for all of their visits and visit-related activities because the individual visit rate compensates them for all activities associated with the visit. Id., ¶ 10.

3

AO 72A
(Rev 8/82)

Moreover, the four Plaintiffs in this case each testified that no matter how much time each of those activities took for any particular patient visit, they were paid the same specified fee. Id., ¶ 5 (citations to Plaintiffs' depositions at Exs. G, R, S, and T). For example, Plaintiff Nelmes testified that the "pay-per-visit structure's not based on an hourly rate" and "there's a huge discrepancy between how many units and how many hours." See Nelmes Depo., at 14-15 and 48-49. Plaintiff Melendez agreed that the visit fees were "not hourly rates." See Melendez Depo., at 63-67. Plaintiff Rindfleisch stated that "[e]verything was thrown into one unit according to Gentiva. If it was a routine visit, whether your charting was done after you left the patient's home and went inside the office to do it, whether you sat in your car to do it, whether you had to go home and do it because your day ended, they didn't care. It was one unit, was one unit, was one unit is what they said." See Rindfleisch Depo., at 45-46. The Court has previously held that "visit fees do not vary based on the time it takes Clinicians to complete a specific in-home visit." See Doc. No. [631], at 3; see also DSUMF, ¶ 9.

Under the PPV, Plaintiffs also received a separate payment for each non-client or non-visit activity that is not directly related to a specific patient visit. See DSUMF, ¶¶ 11-12. Gentiva compensated Plaintiffs via this separate payment for non-client in-service training and education, non-client interdisciplinary or staff

4

case conferences, and non-client activities of auditing or quality reviews of peers' patient charts. Id., ¶¶ 13-15. Plaintiffs also agree that they were paid at their regular rate for these non-visit activities. Id., ¶¶ 13-16. Plaintiffs did raise complaints to their supervisors that they were not being compensated enough for the time they spent doing required charting. See PASF, ¶ 29.

During the Department of Labor investigation of Gentiva's Westbury, New York branch, the Department approved Gentiva's self-audit where the company calculated overtime at a rate equal to an additional one-half of the clinician's regular rate as opposed to an additional time-and-a-half of the regular rate. Id., ¶ 18.

### C. Contentions

Defendant argues that its pay structure is akin to a piece-work compensation plan under which an employee is entitled to half-time rate for overtime damages. Because Plaintiffs have already received the "regular rate" component of their compensation for all hours they have worked (even those above forty), Plaintiffs would only be entitled to half-time for overtime damages. Defendant further avers that there is no evidence to support Plaintiffs' contention that they were paid on an hourly basis.

Plaintiffs respond that the visit fees set by Gentiva were really proxies for hourly payments and that as hourly employees, Plaintiffs should be paid overtime

5

compensation at the time-and-a-half rate. Plaintiffs also contend that if an employer misclassifies an employee as exempt, the employer is barred from relying on a half-time calculation for overtime damages. Finally, Plaintiffs aver that there are disputes of fact which preclude summary judgment.

## II.   Discussion

### A.    Measure of Damages

Section 7(a)(1) of the FLSA requires that employers compensate their employees for hours worked in excess of forty "at a rate not less than one and one-half times the regular rate at which [they are] employed." 29 U.S.C. § 207(a)(1). If the employer does not do so, it is liable to employees for their "unpaid overtime compensation." Id., § 216(b). The term "regular rate" is not defined under the Act, but it is the "keystone" of Section 7(a). See Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 424 (1945) ("On that depends the amount of overtime payments which are necessary to effectuate the statutory purposes. The proper determination of that rate is therefore of prime importance.").

The Court finds Urnikis-Negro v. American Family Property Services, 616 F.3d 665 (7th Cir. 2010), to be instructive on the method of calculating overtime damages in a case where an employer misclassifies a non-hourly employee as exempt. There, at a bench trial, the district court held that the employer misclassified the plaintiff as exempt. The district court then used the "fluctuating

6

work week" method (as set forth in 29 C.F.R. § 778.114(a)) to calculate the overtime damages owed to the plaintiff.

On appeal, the Seventh Circuit discussed what "regular rate" meant under the Act. Citing to regulations, the court found that "an employee's regular rate of pay is the amount of compensation he received per hour." Id. at 673 (citing 29 C.F.R. § 778.109). Further, "although the regular rate of pay is expressed in terms of an hourly wage, employees may, in practice, be paid in a variety of other ways: 'their earnings may be determined on a piece-rate, salary, commission or other basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek." Id. For the purposes of overtime calculation, the "weekly salary must be . . . divided 'by the number of hours which the salary is intended to compensate.'" Id. (citing 29 C.F.R. § 778.113(a)).

In Urnikis-Negro, however, the plaintiff was not hired to work a specific numbers of hours per week. Her hours were indeterminate and "routinely" exceeded forty. Id. at 674. The Seventh Circuit found that in Overnight Motor Transportation Co. v. Missel, 316 U.S. 572 (1942), superseded on other grounds by statute as stated in Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 128 n.22

7

(1985), the Supreme Court held that "when an employee is, by agreement, paid a fixed weekly wage for hours that fluctuate from week to week, the proper way to calculate the employee's regular rate of pay is to divide the weekly wage by the number of hours actually worked in a particular week." Id. (citing Missel, 316 U.S. at 580).

The Urnikis-Negro court further explained that

> [n]otably, the approach taken by the Court in Missel treats the fixed weekly wage paid to the employee as compensation at the regular rate for all hours that the employee works in a week, including overtime hours. The employer will separately owe the employee a premium for the overtime hours, but because he has already been compensated at the regular rate for the overtime hours by means of the fixed wage, the employer will owe him only one-half of the regular rate for those hours rather than time plus one-half.

Id. at 675 (emphasis in original). Because the employee works a variable number of hours per week, the regular rate of pay will also vary per week. The greater number of hours the employee works, the less his regular rate of pay will be. The overtime premium also "rises and falls" with the total number of hours worked each week. Id.

The Seventh Circuit further noted that Missel's method of calculating overtime pay for employees with a fixed salary but whose work hours fluctuate was "incorporated" into an "interpretive rule promulgated by the Department of Labor." Id. (citing 29 C.F.R. § 778.114). Section 778.114 describes under what

8

circumstances an employer might use the fluctuating work week method of compensation. Urnikis-Negro, however, rejected the retrospective application of § 778.114 to misclassification cases, finding that the rule was not meant to be remedial and that in misclassification cases, certain elements of the rule would not have been satisfied. Id. at 677-78. Nonetheless, the court found that it "still must ascertain the employee's regular rate of pay and calculate an appropriate overtime premium based on that rate." Id. at 679.

Although the court noted that some courts assumed a weekly fixed salary was intended to cover solely forty hours, that "presumption cannot be irrebuttable" and "where the employee and the employee have in fact agreed that a fixed weekly salary will constitute payment at the regular rate for any and all hours worked – which Missel recognizes they are free to do . . . – there is no factual basis for deeming the salary to constitute straight-time compensation for 40 hours alone." Id. at 680. The fact that the employer has failed to comply with the FLSA in not paying overtime does not "alter the employee's regular rate of pay, which under Missel turns on what the parties agreed the employee would be paid for the hours he actually worked." Id.

Once the court determines that the employer and employee agreed that the weekly wage was intended to compensate the employee for any and all hours she

9

worked in that week, <u>Missel</u> controls how the regular rate of pay must be calculated. <u>Id.</u> at 681. <u>Missel</u> holds that "the employee's regular rate of pay for a given week is calculated by dividing the fixed weekly wage by the total number of hours worked in that week. . . . The employee is then entitled to an overtime premium of one-half that rate." <u>Id.</u>

In addition to <u>Urnikis-Negro</u>, several other circuits have approved the one-half rate for overtime damages under similar circumstances. <u>See</u>, <u>e.g.</u>, <u>Desmond v. PNGI Charles Town Gambling, L.L.C.</u>, 630 F.3d 351, 357 (4th Cir. 2011); <u>Clements v. Serco, Inc.</u>, 530 F.3d 1224, 1230-31 (10th Cir. 2008); <u>Valerio v. Putnam Assocs. Inc.</u>, 173 F.3d 35, 39 (1st Cir. 1999); and <u>Blackmon v. Brookshire Grocery Co.</u>, 835 F.2d 1135 (5th Cir. 1988).[1]

Although the Eleventh Circuit has not directly addressed this specific question,[2] it, too, has recognized that the key factor in determining the "regular

---

[1] In the face of this authority from various Courts of Appeal, the Court finds Plaintiffs' assertion – that when employers misclassify employees as exempt, they are barred from relying on the half-time calculation – to be patently incorrect. The Court does not find Plaintiffs' citation to various district court cases to be persuasive. <u>See</u> Doc. No. [763], at 12-13. This is particularly true where those courts hold that the employer is not entitled to retroactively apply any fluctuating work week justification to their failure to pay overtime. As the Court explained above, <u>Urnikis-Negro</u> makes that same finding, but nonetheless concludes that based on <u>Missel</u>, the overtime rate is still one-half.

[2] In <u>Lamonica v. Safe Hurricane Shutters, Inc.</u>, 711 F.3d 1299 (11th Cir. 2013), the Eleventh Circuit cited the reasoning of <u>Urnikis-Negro</u> with approval but noted

rate" is what the employer and employee agree the pay was intended to compensate. See Rodriguez v. Farm Stores Grocery, Inc., 518 F.3d 1259, 1269 (11th Cir. 2008) (citing to Department of Labor interpretative bulletin 29 C.F.R. § 778.113(a) explaining "regular rate" of pay). In the "regular rate" ratio, the "divisor" is "the number of hours the employee's pay is intended to compensate – not necessarily the number of hours he actually works." Id. As such, in Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299 (11th Cir. 2013), where it was possible for the jury to determine that the employees' salaries were "intended to compensate all hours worked," the jury "should have determined that [the employees] were already partially compensated for their overtime hours at their regular rate of pay and merely awarded an overtime premium at half that rate." Id. at 1312.

Conceptually, Missel and its progeny, explain that an employee is not entitled to time-and-a-half for overtime when the salary that he has already received has compensated him (albeit with no overtime premium) for all of the hours that he has worked. Under those circumstances, the employee is entitled only to the one-half premium for any hours that he worked in excess of forty.

_____

that the fluctuating workweek method was "not the only or even the default method for calculating damages." Id. at 1311. The court then referred to the method of calculation used in Missel.

11

These cases would quickly end the matter here but for the fact that technically, Plaintiffs did not receive a fixed salary. They received a fixed visit rate (with supplements for non-visit activity) but their pay each week could vary depending on the number of visits they completed. For the reasons discussed below, however, the Court finds that this distinction does not vitiate the conceptual underpinnings of Missel.

Plaintiffs first assert that the Court should apply the time-and-a-half overtime premium because Plaintiffs were essentially "hourly" workers. Plaintiffs assert that the visit fees set by Gentiva are "a type of hourly pay." See Doc. No. [763], at 1.[3]

---

[3]Plaintiffs point to the Employee Profile of Plaintiff Laurie Baker lists her "wage class" as "hourly," her "frequency" as "hourly," and her "hourly equivalent" to be 24.75. See PSAF, ¶ 28, Ex. 1. The Employee Profile of Plaintiff Tiffany Melendez lists her "wage class" as "hourly," her "frequency" as "hourly," and her "hourly equivalent" to be 24.044. See id., Ex. 3. Plaintiff Melendez's routine visit rate is $35.62. Id., Ex. 4. Her routine visit rate, times her expected productivity of 27 times 52 weeks out of the year, divided by 2080 hours equals her "hourly equivalent" of 24.044. Id. The Employee Profile of Plaintiff Christina Nelmes lists her "wage class" as "hourly," and her "frequency" as "hourly." Id., Ex. 5. Plaintiff Nelmes's routine visit rate is $37.00 and her expected productivity is 30 visits per week. Id., Ex. 6. Her routine visit rate, times her expected productivity of 30 times 52 weeks out of the year, divided by 2080 hours equals her "hourly equivalent" of $27.75, which is used to calculate benefits such as PTO (paid time off). Id. The Employee Profile of Plaintiff Lisa Stillman Rindfleisch lists her "wage class" as "hourly" and her "frequency" as "hourly." Id., Ex. 7. Plaintiff Rindfleisch's routine visit rate is $32.06. Id., Ex. 8. Her routine visit rate, times her expected productivity of 30 times 52 weeks out of the year, divided by 2080 hours would equal an "hourly equivalent" of 24.045, which is used to calculate PTO (paid time off). Id. (although this figure is not noted on Plaintiff Rindfleisch's records in particular, this formula is used for the other Plaintiffs).

12

Because Gentiva assigned different "units" to different types of patient treatment, Plaintiffs assert this is another example of Gentiva factoring time into the compensation rates for visit fees.[4]

Significantly, however, the Court has previously held that "visit fees do not vary based on the time it takes Clinicians to complete a specific in-home visit." See Doc. No. [631], at 3. And even assuming Plaintiffs could demonstrate Gentiva did consider "time" in fashioning visit rates, such a fact would not make Plaintiffs "hourly" employees because there is no dispute in the record that Plaintiffs were

---

But Cathy Hieber, a lead payroll specialist for Gentiva, testified that the "wage class" box on the Employee Profile Sheet does not affect pay. See Doc. No. [344], Hieber Depo., at 77-78, and 84. The "frequency" box lists "hourly" as a means of ensuring that a clinician would receive hourly pay for benefit time, such as PTO. Id. at 87. This calculation along with "hourly equivalent" and "base salary" were only used to calculate benefit time based off of targeted annual compensation. Id. at 85, 87. All employees regardless of their pay type have an "hourly equivalent" listed. Id.

Plaintiffs also assert that the "hourly rate" is equal to the employee's visit rate divided by one-and-one-third because a single visit or unit was expected to be completed in one hour and twenty minutes or one and one-third hours. See PSAF, ¶ 28. However, this formula does not fit for the "hourly rate" of Plaintiff Melendez for whom the productivity target was only 27 visits.

[4]Plaintiffs note that Gentiva generally operated on a model in which 30 visits/units per week was the "norm" for a full-time clinician and that at some point, Gentiva had attempted to look at time estimates to establish productivity values. See PSAF, ¶¶ 19-20, 22-25. Plaintiffs also argue that the specific visit fees were based on estimates of how much time it would take a clinician to perform certain tasks. Id., ¶ 21.

13

paid the same visit fee regardless of how much time it took to complete that visit.[5] Plaintiffs' argument fails because it conflates whether an employer can claim an exemption for an employee with the manner in which overtime damages should be calculated.[6]

Moreover, Plaintiffs' argument throughout the entire case has been that Gentiva did not compensate them for hours they worked charting patient visits. Plaintiffs aver that the "units" established by Gentiva for visits did not take into account the amount of time that the clinician had to spend doing visit-related activities such as charting. Such a theory is entirely inconsistent with a contention that Plaintiffs were hourly employees. The Court finds there is nothing in the

---

[5]Plaintiffs assert that there are "disputes of fact" as to whether time estimates were used in setting visit rates. But the Court has found that even if it determined that time was a factor in setting rates, clinicians still could not be considered "hourly" employees because they were paid those visit rates regardless of how long any particular task took to accomplish.

[6]For this reason, Plaintiffs' citation to Elwell v. Univ. Hosp. Home Health Care Servs., 276 F.3d 832, 839 n.3 (6th Cir. 2002), is unpersuasive. Elwell is an exemption case and did not address the proper manner in which to calculate damages. Plaintiffs contend that Elwell determined that the plaintiff should have received time-and-a-half for hours in excess of forty. See Doc. No. [763], at 11 (citing Elwell, 287 F.3d at 836). Plaintiffs' citation is to the procedural history and background of the case. There is nothing in the court's ruling that discusses the rate of overtime compensation. Plaintiffs' speculation (self-described as "not a precise match") about what kind of calculations the jury must have made are wholly conjectural and irrelevant because the proper method of calculation is question of law for the court to decide.

14

record of the case from which it could be determined that Plaintiffs were paid on an hourly basis. Therefore, there is no basis for applying a time-and-a-half overtime premium.

Plaintiffs next argue (briefly) that Missel is not applicable because clinicians were not paid on a "salary" basis. See Doc. No. [763], at 14 n.7. Again, there is a difference between what is a "salary" for the purpose of determining exemptions and what is a "salary" – or at least akin to a salary – for the purposes of calculating overtime damages. Each clinician was paid a specific sum based on the number of visits she made during the pay period.[7] But the visit fees were the same regardless of the amount of hours worked by Clinicians. As such, the payment was more like a "salary" as described in Missel than an "hourly" payment.

Finally, as Defendant asserts, even if Plaintiffs did not receive a fixed salary, their work is analogous to "piece-work" and Department of Labor regulations establish that overtime damages in "piece-work" cases should be calculated in the same manner as that described in Missel for fixed salary cases. The Department of Labor, in fact, recognizes that employees paid on a fee basis are akin to piece-work employees. Title 29 C.F.R. § 541.605 provides:

---

[7]Clinicians were then given additional payments for non-visit activities such as orientations or in-services.

15

Administrative and professional employees may be paid on a fee basis, rather than on a salary basis. An employee will be considered to be paid on a "fee basis" within the meaning of these regulations if the employee is paid an agreed sum for a single job regardless of the time require for its completion. These payments resemble piecework payments with the important distinction that generally a "fee" is paid for the kind of job that is unique rather than for a series of jobs repeated an indefinite number of times and for which payment on an identical basis is made over and over again. Payments based on the number of hours or days worked and not on the accomplishment of a given single task are not considered payments on a fee basis.

Id. Plaintiffs, here, repeatedly were paid a fee for the accomplishment of a single

task.

Calculation of overtime payment for piecework employees is on a half-time

basis. Title 29 C.F.R. § 778.111(a) provides:

When an employee is employed on a piece-rate basis, the regular hourly rate of pay is computed by adding together total earnings for the workweek from piece rates and all other sources (such as production bonuses) and any sums paid for waiting time or other hours worked (except statutory exclusions). This sum is then divided by the number of hours worked in the week for which such compensation was paid, to yield the pieceworker's "regular rate" for that week. For overtime work the pieceworker is entitled to be paid, in addition to the total weekly earnings at this regular rate for all hours worked, a sum equivalent to one-half this regular rate of pay multiplied by the number of hours worked in excess of 40 in the week. . . . Only additional half-time pay is required in such cases where the employee has already received straight-time compensation at piece rates or by supplementary payments for all hours worked. Thus, for example, if the employee has worked 50 hours and has earned $491 at piece rates for 46 hours of productive work and in addition has been compensated at $8.00 an hour for 4 hours of waiting time, the total compensation, $523.00, must be divided by the total hours of work, 50,

16

> to arrive at the regular hourly rate of pay — $10.46. For the 10 hours of overtime the employee is entitled to additional compensation of $52.30 (10 hours at $5.23). For the week's work the employee is thus entitled to a total of $575.30 (which is equivalent to 40 hours at $10.46 plus 10 overtime hours at $15.69).

Id. (emphasis added).

This makes sense given the conceptual framework that underpins non-hourly cases. In non-hourly cases – whether piece-work or fixed salary or the like – the employer and the employee have resolved that the agreed-upon compensation covers all hours worked by the employee. In fixed salary cases, the agreed-upon compensation is a salary that remains the same each week. In piece-work cases, the agreed-upon compensation is a certain sum for each "task" completed so that the more tasks an employee completes the higher his compensation goes. Similarly, here, Plaintiffs received a fixed rate for each patient visit, but their compensation increased the more patient visits they complete in a week. Regardless, then, of the precise mechanism of the payment, the salient facts are that the payment is not "hourly" and the employer and the employee have agreed that the payment covers all hours worked by the employee.

With this background, the Court turns to the instant matter. Determining the calculation of unpaid overtime is a mixed question of law and fact. See Ransom v. M. Patel Enterprises, Inc., 734 F.3d 377, 381 (5th Cir. 2013). The determination of the

17

regular rate of pay is a question of fact, while the appropriate methodology to calculate the total amount owed is a question of law.  Id.

Significantly, it is clear that there is no dispute of fact concerning the "regular rate" of pay. Gentiva and the clinicians agreed that the visit fees would compensate them for all of their hours worked.  Plaintiffs were paid based on the number of visits that they made in a workweek no matter how many hours they actually worked.[8]  There is no dispute that Gentiva and Plaintiffs both understood that various tasks were included in the specific visit fee, such as travel time, care for patient, charting, and telephone and conference time.  For this reason, Plaintiffs' assertion that "there is ample evidence to go to the jury here, to support a finding that the fee-based payments were intended to cover 40 hours of work per week," see Doc. No. [763], at 15, is without any support in the record.  The only evidence in the record – including the testimony of Plaintiffs themselves – is that "Gentiva intended to compensate Plaintiffs for all time associated with patient visits by means of the visit fee." See DSUMF, ¶ 5.

Plaintiffs certainly believed that the specific visit fee set by Gentiva did not adequately compensate them for the time spent doing all of these tasks, in particular for their charting. But Plaintiffs do not dispute that the fee was intended

_____

[8]They also received other payments for non-visit related work.

18

to cover all of these tasks. For the purposes of this motion, that concession is dispositive. Because Plaintiffs admit that they have already been compensated for work above forty hours, the overtime premium can only be one-half.

Plaintiffs' essential argument is that they should be treated like hourly employees for the purposes of the calculation of overtime damages. But there is no basis in the record at all for such treatment. Plaintiffs were never paid on the basis of how long it took them to complete a task; rather, they were paid for how many patient visits they completed, regardless of the time it took them to complete all activities associated with the visits. In fact, Plaintiffs' complaint about their pay is precisely that it did not recognize the number of hours it took them to complete all of the tasks associated with each patient visit. It is wholly inconsistent with their theory of the case to now allege that they were compensated on an hourly basis.

Since Plaintiffs were clearly not hourly employees, the Court looks to the manner in which the Department of Labor and the Supreme Court have approved the calculation of overtime damages for non-hourly employees. Whether the Court looks to the example of fixed salary or piecework employees, the most important consideration is whether there was an agreement between employer and employee that the amount of compensation received by the employee would cover all hours worked by the employee. There is no dispute of fact here based on all of the

19

evidence in the record – and most significantly Plaintiffs' own testimony – that their compensation was indeed intended to cover all of the hours they worked. As such, because Plaintiffs understood that they already received compensation for all hours worked, the only possible manner in which overtime compensation can be calculated is half-time.

The Court finds, therefore, that if it is determined that any Plaintiff must be treated as a non-exempt employee for any given workweek and that Plaintiff did work hours in excess of forty for that workweek, the overtime damages are to be computed by dividing Plaintiff's weekly total earnings by the number of hours worked in that particular workweek to determine Plaintiff's "regular rate" of pay for that week. Then, the number of hours Plaintiff worked in excess of forty in that workweek is multiplied by one-half her "regular rate" to determine the overtime damages for that workweek.

## B.    Materials Filed Under Seal

As the Court has previously noted, the amount of information filed under seal in this case causes the Court a great deal of concern. Courts are open to the public.    Information upon which the Court relies in making dispositive determinations should be available to the public. This case has moved far past the stage of discovery where the Court might have more discretion with respect to

20

confidentiality. Again, the Court's present intention is that after the Court has ruled on the remaining pending motions in this case, the Court will direct the parties to unseal any piece of evidence on which the Court explicitly relied in its orders on the various motions for summary judgment. The Court recognizes this is a burden on the parties, but the volume of material submitted under seal in this case far exceeds any reasonable amount and indicates a lack of effort by the parties to carefully consider whether it is truly necessary to file material under seal.

## III.     Conclusion

The Court GRANTS IN PART AND DENIES IN PART Defendant's motion to seal exhibits supporting Defendant's motion for summary judgment on calculation of potential overtime liability [733]; GRANTS Defendant's motion for summary judgment on calculation of potential overtime liability [739]; and GRANTS IN PART AND DENIES IN PART Plaintiffs' motion for leave to file matters under seal with respect to their response to Defendant's motion for summary judgment on calculation of potential overtime liability [758].

IT IS SO ORDERED this 7th day of January 2016.

HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

21